**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>JLM COUTURE, INC.,<br><br>                    Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. _____ |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 345(b), 363(c)(1), 364(a), 364(a), AND 503(a)(1), BANKRUPTCY RULES 6003 AND 6004 AND LOCAL RULE 2015-2, (A) AUTHORIZING DEBTOR TO USE EXISTING CASH MANAGEMENT SYSTEM, (B) AUTHORIZING AND DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS, (C) WAIVING REQUIREMENTS OF SECTION 345(b) OF BANKRUPTCY CODE AND (D) AUTHORIZING DEBTOR TO USE EXISTING BANK ACCOUNTS AND EXISTING BUSINESS FORMS**

The above-captioned debtor and debtor in possession (the "Debtor") hereby moves (the "Motion") for entry of interim and final orders, substantially in the forms attached as Exhibit A and Exhibit B (respectively, the "Proposed Interim Order" and the "Proposed Final Order," and, collectively, the "Proposed Orders"): (i) authorizing the Debtor to continue to utilize its prepetition cash management system, including by authorizing the Debtor's bank to honor certain transfers and charge certain fees, including credit card processing fees and bank fees, and other amounts; (ii) authorizing use of prepetition bank accounts, account control agreements, and payment methods; (iii) authorizing the Debtor to maintain and continue to use its existing business forms; (iv) extending the Debtor's time to comply with the requirements of section 345(b) of the Bankruptcy Code (defined below); (v) scheduling a final hearing (the "Final Hearing") to consider entry of the Proposed Final Order, to the extent necessary; and (vi) granting related relief. In support of the Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtor consents pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. The bases for the relief requested herein are sections 105(a), 345(b) and 363(c)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), Rules 2015, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2015-2 and 9013-1(m).

## BACKGROUND

4. On the date hereof (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. No trustee, examiner, or official committee has yet been appointed in this case. The Debtor is operating its businesses as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. Additional information about the Debtor and its operations can be found in the *Declaration of Joseph L. Murphy in Support of First-Day Motions* (the "First Day Declaration")[1], which the Debtor relies upon and incorporates by reference.

## THE CASH MANAGEMENT SYSTEM

6. The Debtor maintains an integrated, centralized cash management system (the "Cash Management System") to collect, transfer, manage and disburse funds generated and used in its operations. The Cash Management System facilitates cash monitoring, forecasting and reporting and enables the Debtor to administer its bank accounts (collectively, along with any bank accounts the Debtor may open in the ordinary course of business, the "Bank Accounts"), which are maintained at Wells Fargo Bank, Bank of America, Webster Bank formerly Sterling National Bank, and PayPal (collectively, the "Banks"). The Debtor maintains daily oversight and control of the Cash Management System and implements controls for collecting, concentrating and disbursing funds.

7. The Debtor holds the following accounts:

| Account Holder | Bank Name | Last Four Digits of Account #s |
|---|---|---|
| **JLM Couture, Inc.** | **Wells Fargo** | 4383<br>4458<br>9889<br>2686 |
| **JLM Couture, Inc.** | **Sterling National Bank** | 9962<br>0544 |
| **JLM Couture, Inc.** | **Bank of America** | 9787<br>0226 |

---

[1] Capitalized terms not defined herein are defined in the First Day Declaration.

8.      Sterling National Bank account ending in 9962 is primarily used to accept credit card payments from customers, which make up the bulk of the Debtor's receivables. Funds from such account are then transferred to Sterling National Bank account ending in 0544 to pay the Debtor's payroll obligations. Any excess funds are transferred to the Wells Fargo operating account (ending in 4383) to pay vendors, suppliers and other expenses.[2] All payments received by customers that are not paid by credit card (i.e. payments received by check or wire) are deposited into the Wells Fargo operating account. Any funds that the Debtor receives from its collections agencies is deposited into Wells Fargo account ending in 9889 and eventually transferred to the Wells Fargo operating account. Occasionally, funds from the Wells Fargo operating account are transferred to various holding accounts (Wells Fargo accounts ending in 4458 and 2686 or Bank of America accounts ending in 9787 and 0226) to hold for potential refunds to customers, however, over time, the Debtor has wound down its Bank of America accounts that are now mostly dormant.

9.      The Cash Management System is generally similar to the systems commonly used by businesses of similar size in similar industries. As described in more detail below, the Cash Management System comprises checking and savings accounts at the Bank to receive incoming customer payments, deposit checks, concentrate funds and make disbursements in the ordinary course of the Debtor's business. Generally, funds are received into the Debtor's checking account and transferred to the savings account if the Debtor has excess funds beyond its operating costs .

---

[2] Any weekly payroll shortfalls are made up by transfers back from the Wells Fargo operating account to Sterling National Bank account ending in 0544 to cover payroll.

10. The Debtor is also party to separate credit card processing agreements (the "Processing Agreements") with Authorize.net, a subsidiary of Visa (the "Credit Card Processor").

11. In the ordinary course of business, the Bank charges, and the Debtor pays, honors or allows deduction from the appropriate account, certain service charges, fees and other costs and expenses associated with maintaining the accounts in accordance with the applicable agreements or schedules of fees governing the Bank Accounts (collectively, the "Bank Fees"). On average, the Debtor incur approximately $9,000 - $11,000 per month in Bank Fees.

12. Credit card processing fees are debited from Webster formerly Sterling National Bank the first week of the month. Such Credit Card Fees are on average approximately 3.5% per transaction. The Debtor derives a substantial majority of its sales from credit and debit card transactions. If the Debtor failed to pay the Credit Card Fees, and, as a result, the Credit Card Processor held back some or all of the Debtor's credit card receipts or refused to continue to work with the Debtor, the Debtor would be immediately and likely irreparably damaged. Therefore, the ability to continue to accept credit cards and receive payment from the Credit Card Processor, net of Credit Card Fees per the applicable arrangements, on an uninterrupted basis is essential to maintaining the Debtor's cash flows and business operations generally.

13. The Debtor estimates that there are approximately $9,920 of accrued but unpaid Service Charges outstanding as of the Petition Date. As the final numbers may vary, however, based on actual receipts, and out of an abundance of caution and in recognition of the critical importance of maintaining the ability to continue to use the Bank Accounts and the services of the Credit Card Processor, the Debtor requests authority, but not direction, to honor and pay prepetition Services Charges in an amount not to exceed $10,000, and to allow the Debtor to pay

the Credit Card Processor such undisputed amounts in the ordinary course of business without interruption or delay.

14. The Debtor uses a variety of business forms in the ordinary course of business, including, among others, checks, invoices and letterhead (the "Business Forms"). To minimize expenses and disruption, the Debtor seeks authority to continue to use all Business Forms in substantially the form used immediately before the Petition Date, without reference to the Debtor's status as debtor in possession. The Debtor will communicate with the various vendors and counterparties with whom the Debtor conducts business to notify them of the commencement of this case, which the Debtor believes will provide adequate notice of the Debtor's status as debtor in possession. In accordance with Local Rule 2015-2(a), to the extent the Debtor exhausts its existing supply of checks during this case and requires new checks, the Debtor will order checks with a notation indicating the designation "debtor in possession" and the case number of this case.

**RELIEF REQUESTED**

15. By this Motion, the Debtor seeks entry of the Proposed Orders, substantially in the forms attached as Exhibit A and Exhibit B, granting the following relief: (i) authorizing, but not directing, the Debtor to (a) continue to use the Cash Management System, (b) continue to use all Bank Accounts with existing account numbers, (c) implement any changes to the Cash Management System as the Debtor deems necessary or appropriate, including, without limitation, opening new bank accounts or closing existing Bank Accounts and (d) continue to use existing account control agreements and payment methods; (ii) authorizing the Debtor to maintain and continue to use existing Business Forms without reference to its status as debtor in possession; (iii) extending the Debtor's time to comply with the requirements of section 345(b) of the Bankruptcy Code on an interim basis to the extent that the Bank Accounts do not strictly comply with such requirements; (iv) scheduling a Final Hearing to consider entry of the Proposed Final Order, to the

extent necessary; and (v) granting any related relief that is necessary to carry out the foregoing or continued operation of the Cash Management System, or is otherwise appropriate under the circumstances.

16. In connection with this relief, the Debtor is seeking a waiver of certain of the operating guidelines (the "U.S. Trustee Guidelines") established by the Office of the United States Trustee (the "U.S. Trustee"), including the requirement that the Debtor close all prepetition bank accounts and open new accounts designated as debtor in possession accounts.

17. The Debtor further requests that the Court authorize the Banks to: (i) continue to maintain, service and administer the Bank Accounts as accounts of the Debtor as debtor in possession and provide related treasury, account and cash management services, all without interruption and in the ordinary course of business; (ii) receive, process, honor and pay, to the extent of available funds, any and all checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items presented, issued or drawn on the Bank Accounts; provided, however, that any check, draft or other notification that the Debtor advises the Banks to have been drawn, issued or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court; (iii) accept and honor all representations from the Debtor as to which checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items presented, issued or drawn should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items are dated before or after the Petition Date; and (iv) debit or charge the Bank Accounts for all undisputed Bank Fees, whether arising before, on or after the Petition Date.

18. Additionally, the Debtor requests that the Court authorize the Debtor to otherwise honor and pay all undisputed Credit Card Fees in the ordinary course of business, whether arising before, on or after the Petition Date.

19. Finally, the Debtor requests that any relief granted pursuant to this Motion be effective immediately without regard to any stay provided in the Bankruptcy Rules.

## BASIS FOR RELIEF

**I. The Court should approve the Debtor's request to continue to utilize its Cash Management System, including authorizing continued use of existing Bank Accounts and existing account control agreements and payment methods, and implementing changes to the Cash Management System.**

20. The U.S. Trustee Guidelines require debtors in possession to, among other things:

   a. establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes;

   b. close all existing bank accounts and open new debtor in possession accounts;

   c. maintain a separate debtor in possession account for cash collateral; and

   d. obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks.

21. These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. Considering, however, that the Debtor's business and financial affairs require the collection, disbursement and movement of funds through its Bank Accounts, enforcement of the provisions of the U.S. Trustee Guidelines during this chapter 11 case would severely disrupt the Debtor's operations. Accordingly, the Debtor respectfully requests that the Court allow it to operate each

of its Bank Accounts as they were maintained in the ordinary course of business before the Petition Date.

22. Continuing the Cash Management System is permitted pursuant to section 363(c)(l) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." Additionally, courts in this and other districts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

23. Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In *In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtor and 43 of its subsidiaries "to continue to consolidate the management of their cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtor." *Id*. at 620. The Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing debtors to utilize their prepetition "routine cash

management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id*. at 621. Indeed, in chapter 11 cases, bankruptcy courts in this district routinely grant chapter 11 debtors similar authority to continue using existing cash management systems.

24. Here, the Debtor utilizes the Cash Management System in its current form as part of its ordinary and usual business practices, and as such, the Debtor believes the continued use of the Cash Management System falls within the purview of ordinary course transactions permitted under section 363(c)(1) of the Bankruptcy Code. Moreover, appropriate circumstances exist for the Court to authorize the Debtor's continued use of the Cash Management System under sections 363(b)(1) and 105(a) of the Bankruptcy Code. Furthermore, the Debtor has in place internal controls and procedures to prohibit payments on account of prepetition debts within its Cash Management System and Bank Accounts. Decentralizing cash management and creating new bank accounts would unnecessarily complicate such controls and procedures. In light of existing protective measures, the Debtor submits that maintaining the Cash Management System will benefit parties in interest and is in the best interests of the Debtor's estate and creditors.

25. Additionally, the relief requested in this Motion will help minimize any disruption in the Debtor's business operations during this chapter 11 case, and preserve the value of the Debtor's estate. Indeed, any disruptions in the Cash Management System could lead to delays in satisfying the Debtor's obligations to its vendors and suppliers. To avoid the potential erosion of value that could ensue from any such interruptions in the Debtor's ordinary course business operations, the Debtor believes it is imperative that it be authorized to continue the Cash Management System and use of the Bank Accounts.

26. Strict adherence to the U.S. Trustee Guidelines would be exceptionally burdensome to the Debtor and its management, and reduce efficiencies and cause unnecessary

expense. The delays that would result from opening the new accounts and revising cash management procedures would disrupt the Debtor's business operations at this critical time, have little or no benefit to the Debtor's estate, and erode the value of the Debtor's enterprise to the detriment of all stakeholders.

27. For these reasons, the Debtor should be allowed to continue using the Cash Management System and Bank Accounts consistent with historical practice.

28. The Debtor further request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtor to make all disbursements by check. In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement. In the ordinary course of business, the Debtor conducts transactions through ACH, wire transfer, credit card payment and other similar methods. If the Debtor's ability to conduct transactions according to historical practice is impaired, the Debtor may be unable to timely perform under certain contracts, the Debtor could incur penalties and fines with taxing authorities, its business operations may be unnecessarily disrupted, and the estate will incur additional costs. Accordingly, the Debtor submits that it should be allowed to continue utilizing all existing payment methods.

**II.    The Court should authorize the Debtor to continue using its existing Business Forms.**

29. The U.S. Trustee Guidelines require a debtor in possession to immediately obtain new checks printed with the designation "debtor in possession" and the corresponding number of the lead bankruptcy case. To avoid unnecessary expense and further disruption of the Cash Management System, the Debtor requests authorization to continue to use its existing Business Forms substantially in the forms existing immediately before the Petition Date, without reference to its status as debtor in possession. The Debtor will communicate with the various vendors and counterparties with whom the Debtor conducts business to notify them of the

commencement of this case, which the Debtor believes will provide adequate notice of the Debtor's status as debtor in possession. Furthermore, in accordance with Local Rule 2015-2(a), to the extent the Debtor exhausts its existing supply of checks during this case and requires new checks, the Debtor will order checks with a notation indicating the designation "debtor in possession" and the case number of this case. In light of these steps, the Debtor submits that parties in interest will not be prejudiced if the Debtor is authorized to continue to use its Business Forms substantially in the form existing immediately before the Petition Date.

**III.   The Court should extend the Debtor's time to comply with the requirements of section 345(b) of the Bankruptcy Code on an interim basis.**

30. Section 345(a) of the Bankruptcy Code authorizes deposit or investment of the money of the estate, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). While section 345(a) requires that with respect to deposits and investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the Unites States," the estate must require a bond in favor of the United States secured by the undertaking of a U.S. Trustee-approved corporate surety, section 345(b) permits the court to dispense with this undertaking "for cause." 11 U.S.C. § 345(b); *see also In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (quoting the 1994 amendments to the Bankruptcy Code which explained that the new amendments to the Code would allow the courts to approve investments other than those permitted by section 345(b) for just cause).

31. In *Service Merchandise*, the court identified the following factors for determining whether cause to waive the requirements of section 345(b) exists: (i) the sophistication of the debtor's business; (ii) the size of the debtor's business operations; (iii) the

amount of investments involved; (iv) the bank ratings of the financial institutions where the debtor's funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business for insuring the safety of the funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor of current practices; (ix) the harm, if any, to the estate; and (x) the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case. *Serv. Merch.*, 240 B.R. at 896–97.

32. The Debtor believes that it is in compliance with the requirements of section 345(b) because all of the Bank Accounts are located at a U.S. Trustee-approved depository institution.

33. Nevertheless, out of an abundance of caution, the Debtor request (i) a 30-day extension of time to comply with the deposit and investment requirements of section 345(b) to the extent that such requirements are inconsistent with the Debtor's current practices, without prejudice to the right to seek a further extension, (ii) that applicable institutions be authorized and directed to accept and hold or invest such funds at the Debtor's direction, and (iii) that applicable institutions be authorized and directed to honor the Debtor's direction with respect to the opening and closing of any Bank Account.

34. In light of the foregoing, the Debtor submits that cause exists for an extension of time to comply with the requirements of Bankruptcy Code section 345(b) to the extent that those requirements are inconsistent with the Debtor's current deposit and investment practices. In accordance with Local Rule 2015-2, the Debtor request a 30-day extension of time to comply with the section 345 requirements.

**IV.    The Court should authorize the Banks to continue to maintain, service and administer the Debtor's Bank Accounts in the ordinary course of business.**

35.     The Debtor submits that parties in interest will not be prejudiced or injured by the Debtor's maintenance of the Bank Accounts in the ordinary course of business. As discussed above, the Debtor strongly believes that replacing the Bank Accounts with new accounts pursuant to the U.S. Trustee Guidelines would fruitlessly disrupt its operations and derail the Debtor's efforts to preserve and maximize the value of its estate.

36.     To further implement continued use of its existing Cash Management System and Bank Accounts, the Debtor respectfully requests that the Court authorize and direct the Banks to: (i) continue to maintain, service and administer the Bank Accounts as accounts of the Debtor as debtor in possession and provide related treasury, account and cash management services, all without interruption and in the ordinary course of business; (ii) receive, process, honor and pay, to the extent of available funds, any and all checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items presented, issued or drawn on the Bank Accounts; <u>provided</u>, <u>however</u>, that any check, draft or other notification that the Debtor advises the Banks to have been drawn, issued or otherwise presented before the Petition Date may be honored by the Bank only to the extent authorized by order of the Court; (iii) accept and honor all representations from the Debtor as to which checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items presented, issued or drawn should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items are dated before or after the Petition Date; and (iv) debit or charge the Bank Accounts for all undisputed Bank Fees, whether arising before, on or after the Petition Date.

37. In addition, to protect the Bank, the Debtor also requests that, to the extent the Bank honors a prepetition check or other item drawn on any account that is the subject of the Motion: (a) at the direction of the Debtor; or (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, such Bank will not be deemed to be liable to the Debtor or to its estate on account of such prepetition check or other item honored postpetition. The Debtor respectfully submits that such relief is reasonable and appropriate because the Bank is not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

38. The Debtor represents that if the relief requested herein is granted, it will implement appropriate mechanisms to ensure that no payments will be made on account of debts incurred before the Petition Date (other than those authorized by the Court). To prevent the inadvertent, unauthorized payment of prepetition claims, the Debtor will work closely with the Bank to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without Court approval.

**V.    The Court should authorize the payment of all undisputed Service Charges.**

39. Payment of the prepetition Service Charges is in the best interests of the Debtor and all parties in interest in this chapter 11 case, as it will prevent unnecessary disruptions to the Cash Management System and ensure that the Debtor's receipt of funds is not delayed. Payment of prepetition Service Charges will not prejudice any parties in interest. Indeed, because the Bank and Credit Card Processors likely have setoff rights for the Service Charges, payment of prepetition Service Charges should not alter the rights of unsecured creditors in this chapter 11 case. Even if such Service Charges were unsecured in whole or part, the cost of any disruption or delay in being able to accept, process and receive credit card payments, or being able to utilize the

Cash Management System far outweighs the cost of paying the Service Charges and justifies the payment of the fees under the "doctrine of necessity."

40. Accordingly, the Debtor requests authority, but not direction, to honor and pay all undisputed Service Charges, including prepetition Service Charges in an amount not to exceed $10,000, and to allow the Bank and Credit Card Processors to debit, charge or deduct, as applicable, such undisputed amounts in the ordinary course of business without interruption or delay.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

41. As described above, the Debtor is seeking authority pursuant to the Proposed Interim Order to continue to operate the Cash Management System during the first 21 days of this case. Under Bankruptcy Rule 6003, this Court may authorize the relief requested herein within the 21-day period after the Petition Date because such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate. *See* Fed. R. Bankr. Proc. 6003(b) and (c). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n. 2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

42. Any disruption to the Cash Management System would greatly harm the Debtor and its estate. Without the Cash Management System, the Debtor would be unable to timely monitor revenues or make on-time payments, precluding the Debtor from, among other things, adequately assessing its liquidity. This, along with the possibility that third parties would refuse to provide essential services in the event the Debtor failed to remit payment, could cause a diminution in the value of the Debtor's estate to the detriment of all parties in interest. Consequently, immediate and irreparable harm would result without the relief requested herein

being granted on an interim basis. Accordingly, the Debtor respectfully submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003(b) and (c) and seek authority to continue to operate the Cash Management System.

## WAIVER OF BANKRUPTCY RULE 6004(h)

43. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise for all of the reasons described above.

## NOTICE

44. Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) the Securities and Exchange Commission; (iv) the Delaware Secretary of State; (v) the Delaware Secretary of the Treasury; (vi) the Debtor's twenty (20) largest unsecured creditors; (vii) the Debtor's pre-petition secured lender; and (viii) all parties requesting notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. In light of the nature of the relief requested herein, the Debtor submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE the Debtor respectfully requests entry of the Proposed Orders granting the relief requested herein on interim and final bases and granting such other relief as is just and proper.

Dated: October 2, 2023           **CROSS & SIMON, LLC**

*/s/ Kevin S. Mann*
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
302-777-4200
csimon@crosslaw.com
kmann@crosslaw.com

*Proposed Counsel to the Debtor and Debtor in Possession*