## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JLM COUTURE, INC., | Case No. 23-11659-JKS |
| Debtor. | **Hearing Date: February 28, 2024 at 11:00 a.m. (ET)**<br>**Obj. Deadline: February 1, 2024 at 4:00 p.m. (ET)** |

**MOTION BY LANDLORD FOR AN ORDER: (A) DIRECTING IMMEDIATE PAYMENT OF POST-PETITION STIPULATED DAMAGES PURUSANT TO 11 U.S.C. § 365(d)(3), (B) ALLOWING AND DIRECTING IMMEDIATE PAYMENT OF STUB PERIOD STIPULATED DAMAGES PURSUANT TO § 503(b), AND (C) GRANTING RELIEF FROM THE AUTOMATIC STAY TO CONTINUE THE LANDLORD-TENANT ACTION**

JLJ Bricken LLC ("Landlord"), by and through its undersigned counsel, hereby moves this Court for entry of an order: (a) directing immediate payment of Post-Petition Stipulated Damages pursuant to § 365(d)(3), (b) allowing and directing immediate payment of Stub Period Stipulated Damages pursuant to § 503(b), and (c) granting relief from the automatic stay to continue the Landlord-Tenant Action.  In support of this Motion, Landlord respectfully states as follows:

### PRELIMINARY STATEMENT

1.          Landlord's Lease with the Debtor for the 5th Floor Premises at 225 W. 37th Street, NYC, NY expired in January 2022.  Debtor refused to vacate the space and became a holdover. Since that time, Debtor has continued to conduct its business there, including post-petition.  That is 24 months of Debtor failing to pay rent in New York's storied Garment District.  Landlord has sought either a settlement agreement with or an eviction against the Debtor.  Landlord commenced a Landlord-Tenant Action in Civil Court against Debtor in July 2023.  Debtor commenced its Chapter 11 Subchapter V before a warrant of eviction issued.

2.    The Debtor's chapter 11 game plan is transparent – file its subchapter V before Landlord could secure and execute upon a warrant of eviction; post-petition, sell off existing inventory at the 5th Floor Premises; accrue but pay no post-petition rent; and then either vacate the 5th Floor Premises and seek to reorganize at a new location or convert the case to chapter 7.  Section 365(d)(3) is intended to prevent exactly that course of action.   Rent free or rent deferred reorganizations are not permitted by the Bankruptcy Code.  At the same time that the Debtor is not paying rent, it is paying substantial salaries and other benefits to its officers.  The Court should not countenance this behavior or let the Debtor continue to run an administratively insolvent chapter 11 estate.

3.    The 5th Floor Premises is part of a NY property that is the subject of a lease entered into by Landlord and Debtor in NY; and NY law should govern. The Bankruptcy Courts in NY have addressed the precise issue that is before the Court.  In fact, the Second Circuit addressed the application of section 365(d)(3) to a holdover in NY in the *Super Nova* case discussed *infra.*  There, the Second Circuit found the lease was an unexpired lease for purposes of section 365(d)(3) because a warrant of eviction had not been *executed* at the time of the bankruptcy filing.  Given that a warrant of eviction was never issued regarding the subject Lease, the Court should apply the *Super Nova* rationale to the facts presented here by enforcing section 365(d)(3).  Specifically, this Court should enforce Article 50 of the Lease and direct immediate payment of Post-Petition Stipulated Damages.  The Court should also enforce Article 51 of the Lease and require the Debtor to pay Landlord's attorney fees.  Finally, this Court should modify the automatic stay to permit the Landlord-Tenant Action to proceed.  The Debtor is unable either to assume or to assume and assign the Lease; and the Debtor should not be permitted to "reorganize" with substantial post-petition amounts due, owing and further accruing.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Landlord consents to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The predicates for the relief sought herein are 11 U.S.C. §§ 105, 362(d), 365(d)(3), 503(b)(1) and 507(a)(2).

## RELEVANT BACKGROUND

### A.      The Leases.

6.      Landlord owns real property located at 225 West 37 Street, New York, NY 10018 (the "Building") in which Tenant leased the entire 5th and 14th floors (respectively, the "5th Floor Premises" and the "14th Floor Premises").  The Building is located near Seventh Avenue a/k/a "Fashion Avenue" in the Garment District of NYC.  On February 26, 2003, Landlord[1] and Debtor entered into two leases (the "Leases") for the respective Premises. Only the lease for the 5th Floor Premises (the "Lease") is relevant to the relief sought here because Debtor surrendered possession of the 14th Floor Premises in or about May 2022.  A true and correct copy of the Lease, as amended, for the 5th Floor Premises is attached hereto as **Exhibit A** (the "Lease").

---

[1] The Lease was originally between 3738 West LLC, Landlord's predecessor, and JLM Couture, Inc.

**B.    The Lease for the 5th Floor Premises.**

7.    The Lease requires the Debtor to make annual payments of rent to Landlord, with rent increasing over the term of the Lease.  The original term was set to expire on February 28, 2013 but was extended to January 14, 2022.  Immediately prior to the time that the Lease was set to expire in January 2022, the base rent under the Lease was $25,335.50 monthly.

**C.    The Debtor's Decision to Holdover at the 5th Floor Premises has Caused Landlord Substantial Liquidated Damages.**

8.    The Debtor's agreement to surrender the 5th Floor Premises at the end of the Lease term was an especially important provision for Landlord.  To compensate Landlord if the Debtor breached that provision and became a holdover, Landlord requested, and Debtor agreed, to make Landlord whole via a formula for liquidated damages, as follows:

> Tenant acknowledges that possession of the demised Premises must be surrendered to landlord at the expiration or sooner termination of the term of this lease. Tenant agrees to indemnify and save Landlord harmless against costs, claims, loss or liability resulting from delay by Tenant in so surrendering the demised Premises, including without limitation, any claims made by any succeeding Tenant founded on such delay. The parties recognize and agree that the damage to Landlord resulting from any failure by Tenant timely to surrender possession of the demised Premises as aforesaid will be extremely substantial, will exceed the amount of monthly rent theretofore payable hereunder, and will be impossible of accurate measurement. **Tenant therefore agrees that if possession of the demised Premises is not surrendered to Landlord within seven (7 ) days after the date of the expiration or sooner termination of the term of this lease, then Tenant agrees to pay Landlord as liquidated damages for each month and for each portion of any month during which Tenant holds over in the Premises after expiration or termination of the term of this lease, a sum equal to three times the average rent and additional rent which was payable per month under this Lease during the last six months of the term thereof. The aforesaid provisions of this article shall survive the expiration or sooner termination of the term of this lease**.

Lease at Article 50 (**emphasis** added).  Debtor's refusal in January 2022 to surrender the 5th Floor Premises to Landlord triggered Article 50.  The sum of three times the average rent and additional

rent which was payable per month under the Lease during the last six months of the Lease term equals $91,709.74 per month (the "Stipulated Damages").    To date, Debtor has accrued $2,251,326.08 in Stipulated Damages, plus Debtor has accrued other substantial unpaid additional rent charges for legal fees including, but not limited to, $10,000.00 for the period of Oct. 2 through January 16, 2024.

      9.    Further, the Lease provides:

> If Landlord, as a result of a default by Tenant of any of the provisions of this lease, including the covenants to pay rent and/or additional rent, makes any expenditures or incurs any obligations for the payment of money, including but not limited to attorney's fees, in instituting, prosecuting or defending any action or proceeding, such sums so paid or obligations so incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Landlord within five ( 5) days of rendition of any bill or statement to Tenant therefore, and if Tenant's lease term shall have expired at the time of making such expenditure or incurring such obligations, such sum shall be recoverable by Landlord as damages.

Lease at Article 51.    Post-petition, Landlord has incurred attorney's fees in connection with enforcing the Lease.

      10.    Pursuant to Article 50 of the Lease, the Stipulated Damages for the post-petition period between October 2 and October 31, 2023 (the "Stub Period") is an amount not less than $88,751.36 (the "Stub Period Stipulated Damages").    The Stipulated Damages for the period between November 1, 2023 – January 1, 2024 is an amount not less than $275,129.22 (the "Post-Petition Stipulated Damages").    In addition, Landlord asserts legal fees in an amount not less than $10,000 pursuant to paragraph 51 of the Lease.

     **D.    Landlord Commenced a Landlord-Tenant Action Against Debtor.**

      11.    Debtor has refused to surrender the 5th Floor Premises to Landlord and has continued to use and occupy the 5th Floor Premises in conducting its business without paying rent or additional rent for over two years.    The Debtor's refusal to surrender the 5th Floor Premises in

accordance with the Lease triggered the protections of Lease ¶¶ 50 & 51.

12.     On July 27, 2023, Landlord filed a Business Notice of Petition /Holdover action styled *JLJ Bricken, LLC v. JLM Couture, Inc*. in the Civil Court of the City of New York, Case No. 314768/23 with respect to the 5th Floor Premises (the "Landlord -Tenant Action"). A copy of Landlord -Tenant Action is attached hereto as **Exhibit B**.

     **E.**    **Debtor's Verified Answer in the Landlord -Tenant Action Acknowledges it is a Holdover Tenant at the 5th Floor Premises**.

13.     On August 29, 2023, Debtor filed its Verified Answer in the Landlord -Tenant Action, a copy of which is attached hereto as **Exhibit C**. As part of its Affirmative Defenses, Debtor contended, "The Tenant occupied the space with the permission of Landlord on a month to month basis … Petitioners [Landlord] Notice of Termination is defective and void in light of Tenants subsequent payment and consensual occupancy." *See id.* at ¶¶12 and 14. Significantly, the Civil Court never issued a warrant of eviction against Debtor for the 5th Floor Premises because Debtor stayed such case by filing Debtor's bankruptcy petition.

     **F.**    **The Debtor's Bankruptcy Case**.

14.     The Debtor commenced its voluntary chapter 11 petition under subchapter V on October 2, 2023 (the "**Petition Date**"). The Voluntary Petition lists the Debtor's principal place of business and only address as the 5th Floor Premises. *See* DI 1 at p.1. The List of the Debtor's Largest Unsecured Creditors mistakenly shows Landlord's managing agent Olmstead Properties, Inc. as the top creditor owed over $840,000 if partially secured.[2] *See* [D.I. 1] at p. 53. The *Declaration of Joseph L. Murphy in Support of First-Day Motions* states: "The Debtor's landlord has asserted that the Debtor owes approximately $840,072.37 to such landlord pursuant to the

---

[2] Landlord drew down fully on the security deposit in March 13, 2023 and now holds no security.

expiration of the Debtor's lease agreement **and the Debtor's holding over**. The Debtor disputes this purported amount. Pre-petition, the Debtor's landlord initiated an action in the Civil Court of the City of New York, seeking possession of the Debtor's Premises, back rent, and other amounts." *See* DI 3 at ¶17 (**emphasis** added).

15.     Certain disclosures required in connection with the bankruptcy filing evidence the lack of belt-tightening measures that often accompany a bankruptcy filing.  For example, the Debtor's bankruptcy case Form 1125-E at [D.I. 1] at p. 21 shows that—at the same time the Debtor was refusing to pay Landlord any amount—the Debtor paid Mr. Murphy $468,801in salary and leased a luxury car.

16.     The Debtor filed a *Motion of the Debtor Pursuant to Sections 361, 363(c) and 363(e) of the Bankruptcy Code, Rules 4001(b) and (d) of the Bankruptcy Rules and Local Rule 4001-2 for: (A) Entry of Interim Order (i) Approving Interim Use of Cash Collateral, (ii) Providing for Adequate Protection, (iii) Scheduling Final Hearing on Use of Cash Collateral, and (iv) Approving Form and Manner of Notice of the Final Hearing; and (B) Entry of Final Order Approving Use of Cash Collateral and Providing Adequate Protection. See* [D.I. 9].  Exhibit A to the Cash Collateral Motion is a 13-week budget estimate, a copy of which is attached hereto as **Exhibit D**.  The Budget shows a total of $60,000 for post-petition "rent" through the end of December 31, 2023.  That amount is obviously far less than the actual amount of Stipulated Damages owed to Landlord.  In any event, to date no amount of Stipulated Damages has been paid to or received by Landlord.

17.     On October 16, 2023 [D.I. 49], the Debtor filed its Schedules.  The Debtor lists a security deposit of $189,314 with Olmstead Properties.  *See* DI at p. 2.[3]  In response to questions

---

[3] As noted, the security deposit was applied fully in March, 2013.

54 and 55, Debtor claims it has an interest in real property at 525 Seventh Ave., NY, NY. *See* DI

49 at p. 7. Olmstead Properties is listed on Schedule F as the holder of a contingent, unliquidated

disputed claim in the amount of $840,072.37. *See* [D.I. 49] at p. 27.   The Statement of Financial

Affairs ("SOFA") lists *JLJ Bricken, LLC v. JLM Couture, Inc*. as a pending Landlord/Tenant

matter in the Civil Court of the City of New York, Case No. 314768/23. The SOFA lists two

wholly-owned subsidiaries of the Debtor – JLM North America, Inc. and JLM UK – both located

at the 5th Floor Premises. The Debtor's books and records are stored at the 5th Floor Premises. *Id*.

at 54.

G.     **Post-Petition, the Debtor Operates its Business at the 5th Floor Premises**
       **but has Not Paid Any Post-Petition Stipulated Damages**.

18.     Post-petition, the Debtor continues to use and occupy the 5th Floor Premises by,

among other things, operating its business and managing its properties as a debtor in possession

at that location pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Post-petition,

however, the Debtor has failed to pay either the Stub Period Stipulated Damages or the Post-

Petition Stipulated Damages.[4]

## RELIEF REQUESTED

19.     By this Motion, Landlord seeks an Order from this Court: (a) directing immediate

payment of Post-Petition Stipulated Damages pursuant to § 365(d)(3), (b)  allowing and directing

immediate payment of Stub Period Stipulated Damages  pursuant to § 503(b), and (c) granting

relief from the automatic stay to continue the Landlord-Tenant Action.

---

[4] Landlord reserves the right to adjust both the amount of Stub Period Stipulated Damages and Post-Petition Stipulated Damages.  Landlord also reserves the right to seek attorney's fees and costs as set forth in ¶51 of the Lease.  *See In re Crown Books Co.,* 269 B.R. 12, 15 (Bankr. D. Del. 2001) (attorneys' fees are recoverable as part of a cure claim if the lease specifically so provides); *Elkton Assocs. v. Shelco, Inc.*, 107 B.R. 483, 487 (Bankr. Del. 1989).

## ARGUMENT

**A.      The Debtor's Possessory Holdover Interest in the Lease is Property of the Estate.**

20.      Section 541 of the Bankruptcy Code defines "property of the estate" to include "all legal and equitable interests of the debtor in property as of the commencement of the case. *See* §541(a)(1). Courts interpret §541(a)(1) broadly. The Second Circuit ruled that a lease that expired by its terms pre-petition but where a warrant of eviction had not issued is an unexpired lease and therefore property of the estate. *See Brattleboro Hous. Auth. v. Stolz (In re Stolz)*, 197 F.3d 625, 629 (2d Cir. 1999) ("*Stolz*") ("Unexpired leasehold interests . . . constitute property of the estate.") (citation omitted).

21.      The *Stolz* court further remarked, "[t]he term "unexpired" is not defined in the Bankruptcy Code itself or in its legislative history. Instead, because property interests are created and defined by state law, federal courts have looked to state law to determine a debtor's interests, including leasehold interests, in the bankruptcy estate." *Stolz*, 197 F.3d at 629 (citations omitted). There is no dispute that the Debtor remains in possession of and has the use and enjoyment of the 5th Floor Premises. *See* SOFA at 54 and 55 [D.I. 49 at p. 7] (Debtor claims it has an interest in the 5th Floor Premises). The Debtor's interest in the 5th Floor Premises is property of the estate. *See* **Exhibit E (**the Debtor filed a Notice of Suggestion in the Civil Court to protect that interest).

**B.      New York Law Governs the Determination of the**
**Debtor's Interest in the 5th Floor Premises.**

22.      New York State law governs the terms of the Lease under the well-established doctrines of *lex rei sitae* (governing real estate-related disputes by the law of the place where the property is situated) and *lex loci contractus* (holding leases controlled by the place that the lease contract is formed) despite the absence of a choice of law provision in the Lease. *See Montgomery v. Samory*, 99 U.S. 482, 483 (1878) (declaring, "Courts and jurists everywhere agree that the title

to real estate is governed by the laws of the place where it is situated…."); *Mallory Associates, Inc., v. Barving Realty Co.*, 300 N.Y. 297, 301 (N.Y. 1949) (NY State law governs under *lex loci contractus* doctrine where, as in this case, lease made, parties maintained offices and engaged in business in NY).  Although Landlord is a NY LLC and Tenant is a Del. Corporation, the Lease repeatedly references NYC and NY State law, the Lease was executed and formed in New York, the parties to the Lease both maintained offices and conducted their businesses in New York, and the Debtor deposited its security deposit in New York and agreed to pay rent to Landlord in New York. Moreover, the 5th Floor Premises are located in NY.  The federal courts have long recognized and given effect to state property law under *lex rei sitae.  See Parker v. Dacres*, 130 U.S. 43, 48 (1889); *Metro. Nat. Bank v. Conn. Mut. Life Ins. Co.*, 131 U.S. 162, 162 (1878); *Segal v. Greater Valley Terminal Corp.*, 83 N.J. Super. 120, 124 (N.J.Super.Ct., 1964) ("[T]he law of the state where land is situated controls its title, transfer, and disposition.").

      **C.**    **Because No Warrant of Eviction was Executed,
the Lease is "Unexpired" for purposes of  Section 365.**

   22.    In *Stolz*, "the  bankruptcy court denied Stoltz's motion to assume a lease on the ground that the Lease **had expired** before she filed her Chapter 13 petition, the district court reversed … The district court ruled that while a debtor's residential lease may be terminated under Vermont law, it is not "expired" for purposes of Chapter 13 until the writ of possession is executed . . .  Where, as here, a debtor continues physically to occupy the leased Premises, the [district court ruled that the] debtor possesses an unexpired lease that may be assumed pursuant to 11 U.S.C. § 365(d)(2)." *Stolz*, 197 F.3d 628.  The Second Circuit affirmed the decision of the District Court.

    22.    In *Super Nova 330 LLC v. Gazes ("Super Nova")*, the Second Circuit addressed the same issue in the context of §365(d)(3).  693 F.3d 138 (2d Cir. 2012).  There, the landlord

appealed a decision from the district court that affirmed the bankruptcy court's ruling that denied landlord's §365(d)(3) claim for post-petition rent.  In *Super Nova*, the landlord's warrant of eviction *issued* pre-petition before the debtor's chapter 7 petition was filed.  Stay relief was granted, and landlord thereafter *executed* the warrant of eviction post-petition and re-gained possession of the property.  *Id*. at 141.  Nearly two years later, landlord moved under §365(d)(3) "for unpaid rent, attorneys' fees, and prejudgment interest."  *Id*.  The Bankruptcy Court denied §365(d)(3) relief because the warrant of eviction *issued* pre-petition and therefore there was no unexpired lease at the time of the bankruptcy filing.  *Id*. at 140.  The district court affirmed and an appeal to the Second Circuit ensued.

     **D**.     **Section 365(d)(3) Requires the Debtor to Pay Immediately the Post-Petition Stipulated Damages**.

23.     The Second Circuit reversed the lower courts noting that,

> "[u]nder New York law … while the issuance of a warrant of eviction cancels any existing lease and seemingly terminates the landlord-tenant relationship, the tenant, in fact, retains a residual interest in the lease until the execution of the warrant. Prior to such execution, the state court may vacate the warrant of eviction for good cause and thereby reinstate the lease.  *See, e.g., In re Sweet N Sour 7th Ave. Corp*., 431 B.R. 63, 70 (Bankr. S.D.N.Y. 2010) (lifting automatic stay to permit debtor to move in New York state court to vacate warrant of eviction)."

*Super Nova*, 693 F.3d at 142.  The Second Circuit continued,

> "[b]ut in New York, until the execution of the warrant of eviction, a tenant who demonstrates good cause may obtain vacatur of the warrant, and in that way avoid eviction and reinstate the lease even though it was previously terminated when the eviction warrant was issued. The automatic stay, moreover, effectively prevents a landlord from <u>executing</u> a warrant of eviction once a bankruptcy petition is filed, and thereby preserves the tenant's right to pursue this state court post-petition statutory remedy."

*Id*. at 142-143.

24.     The Second Circuit held that,

> "a lease is "unexpired" for purposes of the Bankruptcy Code where the tenant has the power to revive the lease under applicable state law. Because in New York it is the execution, and not the issuance, of the warrant of eviction that extinguishes the tenant's interest in a lease, until the warrant is executed, the lease is "unexpired" for purposes of Section 365(d)(3)."

*Id*. at 145.

25.    It is black letter law that the Bankruptcy Code *requires* a debtor post-petition to comply with lease obligations first arising after the petition date but prior to assumption or rejection of a non-residential lease of real property.   Section 365(d)(3) of the Bankruptcy Code provides in part:

> The trustee shall timely perform all the obligations of the debtor … arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

Accordingly, the Debtor must remain *current* on all lease obligations as they become due until the effective date of assumption or rejection of an unexpired lease of commercial real property. For the purpose of section 365(d)(3), an obligation arises under a lease, when the legally enforceable duty to perform arises under the lease.  *See Centerpoint Properties v. Montgomery Ward Holding Corp.*, (*In re Montgomery Ward Holding Corp.*), 268 F.3d 205 (3d Cir. 2001).  Paragraphs 50 and 51 create enforceable contractual obligations under the Lease that expressly survive the expiration or sooner termination of the Lease.

26.    This Court should apply the rationale and holding of *Super Nova* to the facts presented here.  The Civil Court has not issued the warrant of eviction.  Based on the foregoing, the Court should find the Lease is unexpired, §365(d)(3) applies, and direct the immediate payment of all Post-Petition Stipulated Damages and legal fees.

**E.    The Landlord is Entitled to Payment of Stub Period**
**Stipulated Damages as an Expense of Administration.**

27.    Section 503 of the Bankruptcy Code provides that, after notice and a hearing, there

shall be allowed administrative expenses, including the "actual, necessary costs and expenses of

preserving the estate."  11 U.S.C. § 503(b)(1)(A).  Bankruptcy courts in the Third Circuit have

consistently granted landlords allowed administrative claims under the § 503(b) for stub rent.  The

payment of rent for the use and occupancy of real estate is an 'actual, necessary' cost of preserving

the estate.  *See Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 627 (3d Cir. 1990)

("There is no question, of course, that the payment of rent for the use and occupancy of real

estate . . . is clearly an 'actual, necessary' cost of preserving the estate.").  Rent that accrues from

and after the petition date is entitled to allowance and payment as an administrative expense claim;

*In re Goody's Family Clothing,* 392 B.R. 604, 614 (Bankr. D. Del. 2008) (allowing administrative

claim for stub rent that included real estate taxes under section 503(b)(1)); *In re DVI, Inc.*, 308

B.R. 703, 708 (Bankr. D. Del. 2004); *In re ZB Co., Inc.,* 302 B.R. 316, 319 (Bankr. D. Del. 2003).

As stated by the Court in *ZB Co., Inc.*:

> That proration of rent is not permitted under section 365(d)(3) does not
> leave the Landlords without a remedy, however.  Section 503(b)(1)(A)
> grants an allowed administrative claim for "the actual, necessary costs and
> expenses of preserving the estate …."  Section 503(b)(1)(A) fills the stub
> period gap created by section 365(d)(3).
>
> It is beyond dispute that all of the Debtors' landlords whose properties are
> occupied and used post-petition have valid administrative claims.  The only
> issues to be decided are the amount of the claims and when the section
> 503(b)(1)(A) claims of the landlords should be paid.

*ZB Co.*, 302 B.R. at 319.

28.    Here, the Debtor is using the 5th Floor Premises post-petition in the operation of its

business. Such use and occupancy qualifies as an "actual, necessary" cost of preserving the estate.

*See Zagata Fabricators v. Superior Air Products*, 893 F.2d 624, 627 (3d Cir. 1990). "There is a presumption that the lease rate is the fair market value unless there is evidence to the contrary." *Id.* (citing *ZB Co.*, 302 B.R. at 319). Here, the Landlord and Debtor already agreed that the "lease rate" is the Stipulated Damages for such use following expiration of the Lease. Landlord's claim for Stub Period Stipulated Damages is entitled to an allowed expense of administration pursuant to section §§ 503(b) and 507(a)(2) of the Bankruptcy Code. Unless the Debtor can demonstrate that the immediate payment of the Post-Petition Stipulated Damages does not render the Debtor's estate administratively insolvent, the Stub Period Stipulated Damages should also be remitted immediately.

### F. Stipulated Damages Should Be Enforced Under New York Law.

29. New York courts routinely enforce treble rent as liquidated damages for a Tenant's holding over in possession after expiration of the term under a lease. *See Victoria's Secret Stores, LLC v. Herald Square Owner LLC*, 211 A.D.3d 657, 658 (1st Dept. 2022) (declaring liquidated damages provisions "have routinely been held to be enforceable, and plaintiffs failed to meet their burden that such relief should not be enforced among sophisticated parties.") (citing *Federal Realty Ltd. Partnership v. Choices Women's Med. Ctr., Inc.*, 289 A.D.2d 439, 442, 735 N.Y.S.2d 159 (2d Dept. 2001); *Glaze Teriyaki LLC v. MacArthur Props. I LLC*, 206 A.D.3d 513, 168 N.Y.S.3d 687 (1st Dept. 2022)).

30. Especially given that the Lease was negotiated between Debtor and Landlord as sophisticated parties in a commercial lease, the treble rent Liquidated Damages provision under Lease ¶50 should be enforced. *Id.* Debtor is an especially sophisticated party given, among other things, its high profile in the bridal wear industry and its ownership of various labels, including but not limited to, Hayley Paige and related business Instagram, snapchat, and TikTok and

Pinterest accounts with over one million followers.  *See JLM Couture, Inc. v. Gutman*, 24 F.4th

785 (2d Cir. 2022).

> **G.**    **Relief From the Automatic Stay for Cause is Warranted.**

31.    Section 362(d)(1) provides that a court may terminate or modify the automatic stay

upon the request of a party in interest "for cause."  11 U.S.C. § 362(d)(1). "Cause" is not defined

in the Bankruptcy Code and whether it exists must be "determined on a case by case basis."  *In re*

*Makarewicz*, 121 B.R. 262, 265 (Bankr. S.D. Fla. 1990).

32.    Section 362(d) of the Bankruptcy Code permits a court to grant relief from the

automatic stay and specifically provides:

> On request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of this
> section, such as by terminating, annulling, modifying or conditioning
> such stay—
>
> (1) for cause, including the lack of adequate protection of any interest in
> property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of
> this section, if –
>
>> (A) the debtors does not have an equity in such property; and
>>
>> (B) such property is not necessary for an effective reorganization.

11 U.S.C. § 362(d).

33.    This Court has applied the following three-part balancing test for determining

whether "cause" exists for granting relief from the automatic stay to continue litigation in another

forum: (a) Whether any great prejudice to either the bankrupt estate or the debtor will result from

continuation of the civil suit; (b) Whether the hardship to the non-bankrupt party by maintenance

of the stay considerably outweighs the hardship to the debtor; and (c) Whether the creditor has a

probability of prevailing on the merits of his case.  *Izzarelli v. Rexene Prods. Co. (In re Rexene*

*Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).  Here, application of these factors weighs in favor of granting relief from stay.

34.     **The Continuation of the Landlord – Tenant Action will not greatly prejudice Debtor or its bankruptcy estate.** The Lease expired by its own terms 2 years ago.  As result, and because of the accrual of unpaid Stipulated Damages, the Debtor cannot either assume or assume and assign the Lease.  Nor can the Debtor be permitted to remain at the 5th Floor Premises without complying fully and immediately with section 365(d)(3).  There is no surprise here.  The Landlord – Tenant action has been pending since July 2023 and the parties have tried but repeatedly failed to settle this matter.  Landlord should not be required to involuntarily finance the Debtor's Subchapter V.  The case belongs in chapter 7.

35.     **The hardship to Landlord caused by the continuation of the automatic stay considerably outweighs any hardship to Debtor.** The Landlord owns the 5th Floor Premises for the purpose of its business which is leasing the space in exchange for rent payments.  The space is located in NYC on Fashion Avenue.  The Landlord has been out of possession of the 5th Floor Premises for 2 years.  During that time, the Debtor has used and occupied the space rent free, and continues to do so post-petition.

36.     The Debtor cannot cure the large arrearage due under the Lease and therefore can neither assume nor assume and assign the Lease for value.  Further, the Debtor cannot reasonably expect to continue to use and enjoy the 5th Floor Premises because it cannot comply with section 365(d)(3).  Because the Debtor cannot comply with the Bankruptcy Code, it cannot  propose a plan in good faith or in compliance with 11 U.S.C. §1129(a)(1)-(3).  The Debtor's continued efforts to delay Landlord's rightful possession of the space will continue to cause hardship to Landlord as set forth in Article 50 of the Lease.

37.      **Landlord has a strong probability of prevailing on the merits in the Landlord – Tenant Action**.  Landlord has a strong probability of prevailing on the merits in the Landlord – Tenant Action because Debtor has not paid any amount to Landlord in two years and lacks the resources to do so.

## REQUEST FOR WAIVER OF STAY

38.      Landlord requests that the Court to waive the fourteen-day stay provided in Bankruptcy Rule 4001(a)(3) and allow the Landlord to proceed with continuing and completing the Eviction Action immediately.

## RESERVATION OF RIGHTS

39.      Landlord expresses reserves all other rights in law or equity, including any additional amounts owed under the Lease (*e.g.*, attorneys' fees, costs and interest).

## NO PRIOR REQUEST

40.      No previous motion for the relief sought herein has been made to this or to any other court.

**WHEREFORE**, Landlord respectfully requests that this Court enter an order, substantially in the form of the proposed order annexed hereto as **Exhibit F:** (a) directing immediate payment of Post-Petition Stipulated Damages pursuant to § 365(d)(3), (b) allowing and directing immediate payment of Stub Period Stipulated Damages  pursuant to § 503(b), and (c) granting relief from the automatic stay to continue the Landlord-Tenant Action, and granting such other and further relief as is just and proper.

Dated: January 18, 2024
Wilmington, Delaware                          **THE ROSNER LAW GROUP LLC**

                                                     */s/ Frederick B. Rosner*
                                                     Frederick B. Rosner (DE 3995)
                                                     824 N. Market Street, Suite 810

Wilmington, Delaware 19801
Telephone: (302) 777-1111
Email: rosner@teamrosner.com

*Counsel for Landlord*