Exhibit 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| | (Subchapter V) |
| JLM COUTURE, INC., | |
| | Case No. 23-11659 (JKS) |
| Debtor. | |

## SUBCHAPTER V DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

Dated: January 22, 2024

CROSS & SIMON, LLC
Kevin S. Mann (No. 4576)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
(302) 777-4200
kmann@crosslaw.com

*Counsel to the Debtor and Debtor in Possession*

## SUBCHAPTER V DEBTOR'S PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the Plan for restructuring the debts of JLM Couture, Inc.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments. To assist you in your review, please note that a list of definitions and a section of frequently asked questions are at the end of this document. Capitalized terms used in this Plan and not otherwise defined are defined in the definitions section the end of the Plan.

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR FEBRUARY 28, 2024 AT 11:00 A.M. (ET) IN COURTROOM NO. 6, 5th FLOOR, AT THE U.S. BANKRUPTCY COURT, DISTRICT OF DELAWARE, 824 N. MARKET STREET, WILMINGTON, DELAWARE 19801.**

**Parties wishing to participate must make arrangements with the Bankruptcy Court in advance. Please consult the Bankruptcy Court's website for details.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Dated: January 22, 2024

CROSS & SIMON, LLC
Kevin S. Mann (No. 4576)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
(302) 777-4200
kmann@crosslaw.com

*Counsel to the Debtor and Debtor in Possession*

# TABLE OF CONTENTS

ARTICLE 1.  HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR....................1

1.1 Nature and history of the Debtor's business ...............................................1

1.2 Filing of the Debtor's Chapter 11 Case ...................................................1

1.3. Legal structure and ownership .................................................................2

1.4 Debtor's assets .........................................................................................2

1.5 Debtor's liabilities....................................................................................3

1.6. Current and historical financial conditions .............................................3

1.7. Events leading to filing the chapter 11 case............................................3

1.8 Significant Events During the Chapter 11 Case .......................................4

1.9 Projected recovery of avoidable transfers................................................4

ARTICLE 2.  THE PLAN  ...............................................................................5

2.1 Unclassified claims ..................................................................................5

2.2 Classes of Claims and Equity Interests....................................................9

2.3 Claim Objections ...................................................................................11

2.4 Treatment Of Executory Contracts and Unexpired Leases......................11

2.5 Means For Implementation Of The Plan ................................................12

2.6 Payments................................................................................................12

2.7 Post-Confirmation Management.............................................................12

2.8 Tax Consequences Of The Plan..............................................................12

2.9 Projections In Support Of Debtor's Ability to Make Payments under the Proposed
Plan ..............................................................................................................12

ARTICLE 3.  FEASIBILITY OF PLAN  .......................................................13

3.1 Ability To Initially Fund Plan  ..............................................................13

3.2 Ability To Make Further Plan Payments And Operate Without Further
Reorganization ..............................................................................................13

ARTICLE 4.  LIQUIDATION ANALYSIS.................................................................. 13

ARTICLE 5.  DISCHARGE  ................................................................................... 14

    5.1 Discharge ....................................................................................................... 14

ARTICLE 6.  GENERAL PROVISIONS ................................................................. 14

    6.1 Title to Assets ................................................................................................ 14

    6.2 Binding Effect ............................................................................................... 15

    6.3 Severability .................................................................................................. 15

    6.4 Retention of Subject Matter Jurisdiction ..................................................... 15

    6.5 Captions ........................................................................................................ 15

    6.6 Modification of Plan ..................................................................................... 15

    6.7 Final Decree ................................................................................................. 16

    6.8 Default; Accelerated Judgment ..................................................................... 16

    6.9 Compromise and Settlement of Claims and Controversies .......................... 16

    6.10 Releases by the Debtor................................................................................ 16

    6.11 Releases by Holders of Claims and Equity Interests ................................. 17

    6.12 Exculpation ................................................................................................. 17

    6.13 Injunction Related to Third Parties  .......................................................... 18

    6.14 Term of Injunctions or Stays ...................................................................... 18

ARTICLE 7.  ATTACHMENTS  ........................................................................... 19

ARTICLE 8.  FREQUENTLY ASKED QUESTIONS............................................. 19

ARTICLE 9.  DEFINITIONS.................................................................................. 20

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

Under the Plan, the Debtor will devote all of its projected Disposable Income toward the payment of Creditors. The Plan will be funded with the funds that are not for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor. The Plan provides for payment of Administrative Expenses and Priority Tax Claims in accordance with the Bankruptcy Code, and projects payment to Allowed General Unsecured Claims. Furthermore, Holders of Equity Interests will retain their Equity Interests as they existed on the Commencement Date.

# ARTICLE 1

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1 Nature and history of the Debtor's business.

The Debtor is a leader in the bridal design and manufacturing industry, operating as a multi-label bridal house engaged in the design, manufacture, and distribution of bridal gowns and bridesmaids dresses. The Debtor houses award-winning brands which include Allison Webb, Ti Adora by Allison Webb, Lazaro, Tara Keely by Lazaro, Lazaro Bridesmaids & Formal, Hayley Paige, Blush by Hayley Paige, La Petite Hayley Paige, and Hayley Paige Occasions.

The Debtor is generally regarded as the innovator of the multi-label bridal house and the designers that it has assembled and nurtured have won ten (10) Distinctive Excellence in the Bridal Industry awards for design distinction (couture category), and four British Bridal Buyer awards. In 2005, the Debtor's President and CEO, Joseph L. Murphy, was the first recipient of French-owned Wedding Dresses Magazine's lifetime achievement award.

The Debtor currently operates nine (9) collections, six (6) of which are bridal lines, two (2) bridesmaid lines and one (1) flower girl line. The Debtor's fashion brands cover a broad spectrum of aspirational to luxury price points. In Spring 2012, the Debtor expanded its presence at the luxury end of the bridal business with the introduction of the Hayley Paige brand and the opening of its flagship store on Robertson Boulevard in West Hollywood, California. The Debtor launched the Allison Webb brand in Spring 2018.

The debtor primarily derives revenue by selling bridal gowns through authorized retailers, but since November of 2022 has started selling excess inventory via Shopify directly to consumers.

The Debtor currently employs 21 people, which is a reduction from approximately 70 employees in calendar year 2020. None of the Debtor's employees are currently represented by labor unions or covered by a collective bargaining agreement. These employees include designers, sales and marketing specialists, HR, and operations. The Debtor does not manufacture its gowns and dresses in house, instead contracting domestically and abroad to actually create the pieces.

### 1.2 Filing of the Debtor's Chapter 11 Case.

On October, 2023, the Debtor filed a voluntary petition for relief under Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On October 2, 2023, the United

States Trustee appointed William Homony to serve as the Subchapter V trustee (the "Subchapter V Trustee") in this case pursuant to Bankruptcy Code section 1183(a). No other trustee, examiner, or official committee has been appointed in this case.

## 1.3. Legal structure and ownership.

The Debtor is a corporation organized under the laws of Delaware. There are approximately 91 shareholders owning the Debtor's outstanding common stock, with 64% of those shares being owned by the Debtor's President and CEO, Joseph L. Murphy.

## 1.4 Debtor's assets.

The Debtor filed detailed Schedules with the Bankruptcy Court on October 17, 2023 [Docket No. 49]. The Schedules set forth all of the Debtor's assets and liabilities as of the Petition Date. The Debtor's assets primarily consist of cash, receivables, inventory and intellectual property.

The Debtor is also pursuing litigation against a former designer, Hayley Paige Gutman, primarily related to the Debtor's intellectual property and the agreements between the Debtor and Ms. Gutman. If the Debtor is successful in this litigation, it could bring additional value to the Debtor's Estate. In pursuit of its claims against Ms. Gutman, the Debtor has brought an action in the United States District Court for the Southern District of New York against Ms. Gutman for federal and common law dilution, federal and common law unfair competition, conversion, breach of contract, conversion, trespass to chattels, breach of fidelity, breach of contract, breach of fiduciary duty and unjust enrichment, tortious interference with existing contract, tortious interference with prospective economic advantage, aiding and abetting a breach of fiduciary duty, defamation, trademark infringement and contributory trademark infringement. The Debtor also seeks the return from Ms. Gutman of compensation paid to her that the Debtor was not contractually required to pay her and which the Debtor is entitled to be reimbursed. The Debtor seeks damages totaling over $20 million.

Ms. Gutman has asserted various counterclaims that the Debtor believes lack merit.

While the Debtor is confident in its position in this litigation, it has been in discussions with Ms. Gutman's representatives in an attempt to resolve the parties' issues.[1] While the parties have not yet been able to resolve this matter, discussions continue. The recovery of any funds from Ms. Gutman, whether through litigation or settlement, will be reinvested into the company for the Debtor's future operations and payment to creditors.

---

[1] The Debtor recognizes that attorney fees and costs related to this litigation have been a great expense to the Debtor. While the Debtor's projections (Exhibit B, hereto) anticipate continued litigation costs identified as "Other Legal," an early resolution of the Gutman litigation will allow the Debtor to avoid these costs and devote more of its income to operating the business and paying creditors.

### 1.5 Debtor's liabilities

As of the date hereof, neither the General Claims Bar Date nor the Governmental Claims Bar date has yet run.

Prior to the Petition Date, the Debtor obtained that certain small business loan with the United States Small Business Association dated as of July 23, 2020 with an approximate balance of $150,000 as of the Petition Date. The SBA Note is secured by liens on substantially all assets of the Debtor. The Debtor does not have any other secured or unsecured loans.

The Debtor is indebted to certain of its vendors, as will be more fully described in the Debtor's Schedules of Assets and Liabilities, in the total amount of $852,002.80. Although the claims bar dates have not yet run, the Debtor does not anticipate that the filing of proofs of claims by vendors will change the total amount owed significantly.

The Debtor's landlord has asserted that the Debtor owes approximately $840,072.37 to such landlord pursuant to the expiration of the Debtor's lease agreement and the Debtor's holding over. The Debtor disputes this purported amount. Pre-petition, the Debtor's landlord initiated an action in the Civil Court of the City of New York, seeking possession of the Debtor's premises, back rent, and other amounts, which was stayed by the filing of the Debtor's bankruptcy case. While the Debtor identified the purported $840,072.37 debt in its schedules of assets and liabilities, the Debtor indicated that the amount is contingent, unliquidated and disputed. As the landlord has failed to timely file a proof of claim in the Debtor's bankruptcy proceedings, for the purposes of this Plan, the Debtor has estimated the pre-petition amount due to the landlord at $357,673.33.

### 1.6. Current and historical financial conditions.

The Debtor's financial condition is reflected in the Debtor's most recently filed monthly operating report, attached hereto as **Exhibit A**.

### 1.7. Events leading to filing the chapter 11 case.

The Debtor's operations were primarily affected by the active and contentious litigation with one of its former designers. The breach of contract by this designer has substantially hurt the company's sales; and the legacy costs associated with the designer's operation could not be reduced quickly enough to offset this damage. While the Debtor has been successful at each step of such litigation, it has still taken a toll on the Debtor financially and caused the Debtor's principals to have spent significant time and effort focusing on issues outside of the operation of the Debtor's business.

Compounding the difficulties experienced by the Debtor from these operational issues and by the problems associated with operating in New York City, the Debtor has been hit hard by the general downturn in the wedding gown retail business due to the COVID-19 pandemic. Since early 2020, orders of the Debtor's merchandise has dropped significantly due to safety concerns as well as government responses and restrictions imposed in response thereto. Additionally, the pandemic, as well as the global supply chain issues have caused delays in filling orders. While the Debtor has taken steps to reduce its expenses, it has not been able to regain solvency.

The Debtor attempted to solicit interest from investors who would invest in the Debtor. Despite our best efforts over a period of multiple years, we have not yet found a willing investor in part due to the ongoing aforementioned litigation.

To allow the Debtor to continue operating, the Debtor instituted a reduction in staff and operations and now believes that it will be able to operate for the foreseeable future without the immediate need for additional financing.

**1.8 Significant Events During the Chapter 11 Case.**

The Debtor has taken a number of steps in the Chapter 11 Case to implement its restructuring. Prior to the Petition Date, the Debtor began the process of analyzing its operations and determined, in its business judgment, that certain operations could be reduced or outsourced. These reductions have continued through the bankruptcy proceedings. Further, the Debtor, in its business judgment, significantly reduced its workforce and members of management have voluntarily reduced their salaries, allowing the Debtor to focus its resources away from burdensome salaries.

Also, during the Chapter 11 Case, the Debtor obtained permission to use cash collateral and retained certain Professionals to implement its restructuring. To this end, the Debtor filed the:

a. *Motion of the Debtor Pursuant to Sections 361, 363(c) and 363(e) of the Bankruptcy Code, Rules 4001(b) and (d) of the Bankruptcy Rules and Local Rule 4001-2 for: (A) Entry of Interim Order (i) Approving Interim Use of Cash Collateral, (ii) Providing for Adequate Protection, (iii) Scheduling Final Hearing on Use of Cash Collateral, and (iv) Approving Form and Manner of Notice of the Final Hearing; and (B) Entry of Final Order Approving Use of Cash Collateral and Providing Adequate Protection* [Filed 10/2/2023, Docket No. 9]. The Court entered a final order allowing the Debtor to use cash collateral on October 26, 2023. See Docket No. 66.

b. *Application for an Order Pursuant to 11 U.S.C. § 327(a) Authorizing and Approving the Employment and Retention of Cross & Simon, LLC as Counsel to the Debtor Nunc Pro Tunc to October 2, 2023* [Filed 10/2/2023, Docket No. 12]. The Court entered an order approving the retention of Cross & Simon, LLC on October 26, 2023 *See* Docket No. 70.

c. *Debtor's Motion for an Order Authorizing the Retention and Payment of Professionals Utilized in the Ordinary Course of Business* [Filed 10/2/2023, Docket No. 8] which, among other things, sought to retain outside litigation counsel, intellectual property counsel, real estate counsel, auditors, and tax service providers. The Court entered an order approving this motion on October 26, 2023. *See* Docket No. 67.

**1.9 Projected recovery of avoidable transfers.**

The Debtor has not yet performed an analysis of any potential recovery with respect to preference, fraudulent conveyance, or other Avoidance Actions. To the extent any such actions are pursued, the Reorganized Debtor will make such determination in the future. That being said, the Debtor does not, at this time, intend to pursue Avoidance Actions against any current vendors so as to protect its relationships with those parties that keep the Debtor in business. Also, the Debtor does not intend to bring any Avoidance Actions against any insiders.

# ARTICLE 2

# THE PLAN

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Holders of such Claims or Equity Interests are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

## 2.1 Unclassified claims.

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. For example, Administrative Expense Claims and Priority Tax Claims are not classified. They are not considered Impaired, and Holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any Class:

### A. Administrative Expenses

The Debtor must pay all Administrative Expense in full, unless the Holder of the Administrative Expense Claim agrees to a different treatment. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Claim or, in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Holder of such Administrative Claim or court order. If the Administrative Expense Claim is disputed, payment will be made after the Administrative Expense Claim is allowed by the Bankruptcy Court.

There are several types of Administrative Expense Claims, including the following:

1.      If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, such Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Commencement Date will be paid on the ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade creditors.

2.      If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense Claim.

3.      Administrative Expense Claims also include any post-petition fees and expenses allowed to Professionals, including the Allowed Claim for the Subchapter V Trustee for fees and expenses, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 Case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | Approximately $11,749.41 | Payment through the Plan as follows:<br><br>Paid on an ongoing basis in accordance with the customary business practices of the Debtor and terms between the Debtor and its creditor. |
| Administrative Tax Claim | Approximately $0.00 | Payment through the Plan as follows:<br><br>Taxes that arise in the ordinary course of business after the Petition Date will be paid in the ordinary course and pursuant to the ordinary business practices between the Debtor and the relevant taxing authorities. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | Approximately $140,018.32 | Payment through the Plan as follows:<br><br>Payments will be made in full in accordance with the relevant contract terms or as soon as practicable. |
| Professional Fees, as approved by the Bankruptcy Court | Approximately $36,770.14 | Payment through the Plan as follows:<br><br>Allowed Professional Fee Claims that are due and owing as of the Effective Date shall be paid in Cash by |

| | | the Debtor on the Effective Date. Further, each Professional who holds a Professional Fee Claim shall be required to File with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Professional Fee Bar Date. A Professional Fee Claim with respect to which a Fee Application has been properly and timely filed pursuant to this Article 2 shall be paid only to the extent Allowed by Final Order. Once all of the Professional Fee Claims have been considered and Allowed by the Bankruptcy Court, the Debtor or the Reorganized Debtor, as the case may be, shall pay, after the application of any retainer amounts held by such Professional, such Allowed Professional Fee Claims as soon as practicable and in accordance with the Debtor's Disposable Income projections. |
|---|---|---|
| Subchapter V Trustee | Approximately $5,000 | Payment through the Plan as follows:<br><br>To be paid in full as soon as practicable and in accordance with Debtor's Disposable Income projections. |
| **TOTAL** | **$193,537.87** | |

**B. Priority Tax Claims.**

Priority Tax Claims are unsecured income, employment, and other taxes described by section 507(a)(8) of the Code. Unless the Holder of such Allowed Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of Priority Tax Claim will be paid as set forth in the chart below.

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|--------------------|
| Priority Tax Claims | Approximately $42,637.05 | Payment through the Plan as follows:<br><br>All Allowed Priority Tax Claims shall be paid in full, through quarterly installments commencing in Q2 2024 and completing in around Q2 2027 or otherwise. |

**2.2 Classes of Claims and Equity Interests.**

The classification of Claims against and Equity Interests in the Debtor pursuant to the Plan are as follows and are discussed in more detail below:

| Class | Description | Treatment | Impairment | Entitled to Vote |
|-------|-------------|-----------|------------|------------------|
| 1 | Secured Claims | Payment in full pursuant to repayment schedule under respective notes | Unimpaired | No (Presumed to Accept) |
| 2 | General Unsecured Claims | Pro rata payment in quarterly installments from Disposable Income commencing in Q2 2024 and ending on the Last Distribution Date. | Impaired | Yes |
| 3 | Equity Interests | Maintain Existing Equity | Unimpaired | No (Presumed to Accept) |

The following is a more complete discussion of the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**A. Class of Secured Claims**

Allowed Secured Claims are Claims secured by property of a Debtor's Estate (or that are subject to setoff) to the extent allowed as Secured Claims under section 506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the Holder's Claim is less than the amount of the Secured Creditor's Allowed Claim, the deficiency will be classified as a General Unsecured Claim and treated in the manner set forth in section 2.1(B) herein.

Except to the extent that a Holder of an Allowed Class 1 Secured Claim and the Debtor agree in writing to less favorable treatment of its Secured Claim, each Holder of an Allowed Class 1 Secured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Class 1 Secured Claim: (i) payment in full, in Cash, under the payment terms of the relevant note; or (ii) the collateral securing such Allowed Class 1 Secured Claim. Distributions to Holders of Allowed Class 1 Secured Claims shall be made in full and complete satisfaction, settlement, discharge, and release of the Allowed Class 1 Secured Claims on the later of the Effective Date and the date on which such Class 1 Secured Claim becomes Allowed.

Class 1 is Unimpaired and conclusively deemed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Class 1 Secured Claims are thus not entitled to vote to accept or reject the Plan.

B.    **Class of General Unsecured Claims**

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under section 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of General Unsecured Claims against the Debtor:

| Class # | Description | Estimated Amount Owed | Impairment | Treatment |
|---------|-------------|-----------------------|------------|-----------|
| 2 | General Unsecured Claims | Approximately $1,470,589.79[2] | Impaired | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a different treatment, all Allowed General Unsecured<br><br>Claims shall be paid pro rata in quarterly installments from Disposable Income commencing in Q2 2024 and ending on the Last Distribution Date. |

---

[2] Purported creditor Hayley Paige Gutman filed a proof of claim [POC 9] in the unliquidated amount of $71,000,000. The Debtor has filed an objection to Ms. Gutman's unliquidated proof of claim as the Debtor disputes that it owes any liability to Ms. Gutman. It is the Debtor's position that this claim is meritless and should be reduced to $0.00. Thus, the Debtor has not included the amount of Ms. Gutman's claim in the estimation of total amounts owed in Class 2.

### C. Class of Holders of Equity Interests

Equity Interest Holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest Holders.

The following chart sets forth the Plan's proposed treatment of the Class of Equity Interest Holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | Equity Interests | Unimpaired | Maintain existing Equity Interest |

## 2.3 Claim Objections

The Debtor or the Reorganized Debtor, as applicable, may object to the amount or validity of any Claim within 180 days of the Confirmation Date (the "Claims Objection Deadline") by filing an objection with the Bankruptcy Court and serving a copy of the objection on the Holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor or the Reorganized Debtor, as applicable will pay the Allowed Claim in accordance with the Plan.

## 2.4 Treatment Of Executory Contracts and Unexpired Leases

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (*i.e.,* accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the Executory Contracts.

The Debtor will reject any Executory Contract that is not expressly included on the Assumed Contract List or that has previously been rejected under section 365 of the Bankruptcy Code by an order of the Bankruptcy Court.

**The deadline for filing a Proof of Claim based on a Rejection Claim arising from the rejection of an Executory Contract that is rejected by the Debtor is 30 days after entry of the Confirmation Order**. Any Rejection Claim based on the rejection of an Executory Contract will be barred if the Proof of Claim is not timely filed by the applicable Rejection Claim Bar Date, unless the Bankruptcy Court orders otherwise.

**2.5 Means For Implementation Of The Plan.**

The Plan will be funded by the proceeds realized from the operations of the Debtor. On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor.

The officers and directors of the Debtor immediately prior to the Effective Date shall serve as the initial officers and directors of the Reorganized Debtor on and after the Effective Date. Each officer and director shall serve in accordance with applicable non-bankruptcy law and the Debtor's corporate governance documents, as each of the same may be amended from time to time.

**2.6 Payments**

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, payments to Creditors provided for in the Plan will be made by the Reorganized Debtor. If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, payments to Creditors provided for in the Plan will be made by the Reorganized Debtor.

**2.7 Post-Confirmation Management**

Joseph L. Murphy shall remain the Reorganized Debtor's President and CEO after the Effective Date.

**2.8 Tax Consequences Of The Plan**

*Creditors and Holders of Equity Interests concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.*

**2.9 Projections In Support Of Debtor's Ability to Make Payments under The Proposed Plan**

The Debtor has provided projected financial information through Q2 2027. These projections are based on Debtor's current information and belief, and assume a capital/and or debt infusion. Those projections are attached in **Exhibit B**.

The Debtor is currently seeking additional funding, through either debt or equity, and seeks to obtain approximately $1,000,000 in additional funding that will be used to fund the Debtor's ongoing operations and proposed payments under this Plan. The Debtor anticipates that such funding, if received, will be obtained by the first quarter of 2025.

Further, the Debtor is exploring the sale of some of its intellectual property, claims and unused assets post-confirmation. Should these sales come to fruition, the proceeds of such sales would also be used to fund the Debtor's ongoing operations and proposed payments under this Plan.

Finally, the Debtor intends to explore additional business lines including new niches within the wedding gown, wedding party, and wedding event markets while increasing the direct-to-consumer side of its business in a manor that does not compete with the Debtor's business-to-

business operations. The Debtor is working to have its designs in 50 new stores by Q2 2024, making a more aggressive push to ecommerce starting in Q2 2024, introducing a new strategy, "dress the wedding," along with a new interactive online experience in Q3 2024. and, potentially, adding a new division in Q3 2024.

## ARTICLE 3

## FEASIBILITY OF PLAN

The Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1 Ability To Initially Fund Plan

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. The projections attached hereto as **Exhibit B** demonstrate the Debtor's ability to make all of the payments due both on the Effective Date, the First Distribution Date, and thereafter.

### 3.2 Ability To Make Further Plan Payments And Operate Without Further Reorganization

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Subchapter V Trustee as is necessary for the execution of the Plan.

The Debtor's financial projections, attached hereto as **Exhibit B**, show that the Debtor will have a cash flow after paying operating expenses and post-confirmation taxes to meet its obligations under the Plan. All Disposable Income is devoted to paying Allowed Claims under the Plan.

**YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE PROJECTIONS.**

## ARTICLE 4

## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that Holders of Claims and Equity Interest who do not accept the Plan will receive at least as much under the Plan as such Holders of Claims and Equity Interests would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

If no plan can be confirmed, this case may be converted to a case under Chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.

The Debtor believes that liquidation under Chapter 7 would result in smaller distributions being made to creditors than those provided for in the Plan as a result of the (i) increased costs and expenses of liquidation under Chapter 7 arising from fees payable to the Chapter 7 trustee and the attorneys and other professional advisors to such trustee, (ii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation, (iii) the cost and expense attributable to the time value of money resulting from what is likely to be a more protracted proceeding, and (iv) the application of the rule of absolute priority to distributions in a Chapter 7 liquidation.

A liquidation analysis is attached hereto as **Exhibit C**.

## ARTICLE 5

## DISCHARGE

### 5.1 Discharge.

**If the Plan is confirmed under § 1191(a)**, on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b)**, as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Bankruptcy Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the Bankruptcy Court shall grant the Debtor a discharge of all debts provided in § 1141(d)(1)(A) of this title, and all other debts allowed under § 503 of this title provided for in this Plan, except any debt-

1.  on which the last payment is due after the first three years of the Plan, or such other time not to exceed five years fixed by the Court; or

2.  if applicable, of the kind specified in § 523(a) of this title. This Plan constitutes the Debtor's request that if the Plan is confirmed under § 1191(b), the discharge applies to all debts on which the last payment is due on or before the Final Distribution Date.

## ARTICLE 6

## GENERAL PROVISIONS

### 6.1 Title to Assets

If a Plan is Confirmed under section 1191(A) of the Bankruptcy Code, except as otherwise provided in the Plan or in the Confirmation Order, (i) Confirmation of the Plan vests all of the property of the Estate in the Debtor, and (ii) after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests.

If a plan is confirmed under section 1191(b) of the Bankruptcy Code, property of the Estate includes, in addition to the property specified in section 541 of the Bankruptcy Code, all property

of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in section 1185 of the Bankruptcy Code, the Plan, or the Confirmation Order, the Debtor shall remain in possession of all property of the Estate.

## 6.2 Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, any and all Holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted this Plan), all persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan, each person acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts with the Debtor.

## 6.3 Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## 6.4 Retention of Subject Matter Jurisdiction.

The proposed Confirmation Order will provide that the Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation to Professionals and other Administrative Expense Claims; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of the Executory Contracts; (v) to adjudicate any cause of action which may exist in favor of the Debtor, including Avoidance Actions; and (vi) to hear any other matter not inconsistent with the provisions of the Bankruptcy Code.

## 6.5 Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meanings or interpretation of this Plan.

## 6.6 Modification of Plan.

The Debtor may modify the Plan at any time before Confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is Confirmed under § 1191(a), the Debtor may also seek to modify the Plan at any time after Confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is Confirmed under § 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within three years of the Confirmation Date, or such longer time not to exceed five years as fixed by the Bankruptcy Court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing. This Plan represents the Debtor's request that the Bankruptcy Court enter an order that the Debtor may seek to modify the Plan under such circumstances within three years of the Confirmation Date, since, the Plan payments go out three years.

## 6.7 Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the Case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## 6.8 Default; Accelerated Judgment

In the event of a post-Effective Date payment default by the Debtor under Sections 2.1 or 2.2 of this Plan, the affected creditor may give notice to the Debtor of the default; and if the default is not cured and remains unresolved thirty (30) days after such notice has been given, the Court may enter judgment in favor of the affected creditor and against the Debtor on motion of the affected creditor supported by an affidavit attesting as to the Debtor's payment default, the Debtor's failure to timely cure the same and the giving of notice to the Debtor as provided herein.

## 6.9 Compromise and Settlement of Claims and Controversies

Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any Distribution to be made on account of such Allowed Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and Holders of Claims and Equity Interests and is fair, equitable and reasonable.

## 6.10 Releases by the Debtor

Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Debtor and the consummation of the transactions contemplated by this Plan, on the Effective Date, the Released Parties are deemed forever released by the Debtor and its Estate, and each of their successors and assigns, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor or the Estate, whether known or unknown, foreseen or unforeseen, existing or hereinafter

arising, in law, equity or otherwise, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the business or contractual arrangements between the Debtor and any of the Released Parties, the negotiation, formulation or preparation of this Plan, any Plan Supplement or related agreements, instruments or other documents (collectively, the "Debtor Released Claims"), other than Debtor Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.

## 6.11 Releases by Holders of Claims and Equity Interests

**On the Effective Date, except as otherwise provided herein and except for the right to enforce this Plan, all persons who voted to accept this Plan or who are presumed or deemed to have voted to accept this Plan under section 1126(f) of the Bankruptcy Code shall, to the fullest extent permitted by applicable law, be deemed to forever release, and waive the Released Parties of and from all liens, claims, causes of action, liabilities, encumbrances, security interests, interests or charges of any nature or description whatsoever based or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case or affecting property of the Estate, whether known or unknown, suspected or unsuspected, scheduled or unscheduled, contingent or not contingent, unliquidated or fixed, admitted or disputed, matured or unmatured, senior or subordinated, whether assertable directly or derivatively by, through, or related to any of the Released Parties and their successors and assigns whether at law, in equity or otherwise, based upon any condition, event, act, omission occurrence, transaction or other activity, inactivity, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date in any way relating to or arising out of, in whole or in part, the Debtor, the Debtor's prepetition operations, governance, financing, or fundraising, the purchase or sale of the Debtor's securities, the Chapter 11 Case, the pursuit of Confirmation of this Plan, the consummation of this Plan or the administration of this Plan, including without limitation, the negotiation and solicitation of this Plan, all regardless of whether (a) a Proof of Claim or Equity Interest has been filed or is deemed to have been filed, (b) such Claim or Equity Interest is allowed, or (c) the Holder of such Claim or Equity Interest has voted to accept or reject this Plan, except for willful misconduct, gross negligence, fraud or criminal misconduct; *provided*, *however*, that the Debtor shall not be a Released Party until the Last Distribution Date if the Plan is confirmed under section 1191(b) of the Bankruptcy Code. Nothing contained herein shall impact the right of any Holder of an Allowed Claim or interest to receive a Distribution on account of its Allowed Claim or Allowed Interest in accordance with this Plan.**

## 6.12 Exculpation

**On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any person, including to any Holder of a Claim or an Interest, for any prepetition or postpetition act or omission in connection with, relating to, or arising out of the Debtor, the Chapter 11 Case, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, or any contract, instrument, release, or other agreement or document created,**

executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan; *provided, however,* that nothing in this section 6.12 shall release or otherwise affect any person's rights under the Plan or the Confirmation Order; and *provided, further,* that the exculpation provisions of this section shall not apply to acts or omissions constituting actual fraud or willful misconduct by such Exculpated Party as determined by a Final Order. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute actual fraud or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the Exculpated Parties shall be entitled to rely on the written advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Case, the Plan, and administration thereof. The Confirmation Order shall serve as a permanent injunction against any person seeking to enforce any causes of action against the Exculpated Parties that are encompassed by the exculpation provided by this section 6.12 of the Plan.

### 6.13 Injunction Related to Third Parties

From and after the Effective Date, all persons who have held, hold or may hold Claims against or Equity Interests in the Debtor are permanently enjoined from commencing or continuing in any manner, any Cause of Action released, to be released or discharged pursuant to this Plan, or the Confirmation Order, from and after the Effective Date, to the extent of the releases, exculpation and discharge granted in this Plan, all Holders of Claims or Equity Interests shall be permanently enjoined from commencing or continuing in any manner against the Released Parties and the Exculpated Parties and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to this Plan. except as otherwise expressly provided in this Plan, the Plan Supplement or related documents, or for obligations issued pursuant to this Plan, all persons who have held, hold or may hold Claims or Equity Interests that have been released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such persons on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting or enforcing any encumbrance of any kind against such persons or the property or estates of such persons on account of or in connection with or with respect to any such Claims or Equity Interests; and (d) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, settled or discharged pursuant to this Plan.

### 6.14 Term of Injunctions or Stays

Unless otherwise provided in this Plan or Confirmation Order, all injunctions or stays provided for under this Plan and ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Case, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to

the extent consistent with the terms and provisions of this Plan or the Confirmation Order, as applicable.

# ARTICLE 7

## ATTACHMENTS

The following documents are deemed to be part of the Plan:

Exhibit A: Most recently filed Monthly Operating Report

Exhibit B: Financial Projections

Exhibit C: Liquidation Analysis

The Assumed Contracts List, to be included in the Plan Supplement.

# ARTICLE 8

## FREQUENTLY ASKED QUESTIONS

**What is the Debtor Attempting to Do in Chapter 11?**  Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document that sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?**  In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?**  To determine the Class of your Claim or Equity Interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the Class in which you are grouped. The pertinent section of the Plan dealing with that Class will explain, among other things, who is in that Class, what is the size of the Class, what you will receive if the Plan is Confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2 lists Classes of Claimants and their types of Claims.

**Why Is Confirmation of a Plan of Reorganization Important?**  Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?**  Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two- thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

**Am I Entitled to Vote on the Plan?**  Any creditor of the Debtor whose Claim is Impaired under the Plan is entitled to vote, if either (i) the creditor's Claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for such filings. Any Claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?**  The Chart in Section 2.2 identifies the Classes of creditors and indicates which Classes are Impaired and entitled to vote. If your Claim is Impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?**  The Plan is being distributed to Claim Holders for their review, consideration, and approval. The deadline by which ballots must be returned is February 21, 2024, at 5:00 P.M. (ET). Ballots should be mailed or delivered to the following address:

> CROSS & SIMON, LLC
> Attn: Kevin S. Mann, Esq.
> 1105 North Market Street, Suite 901
> Wilmington, Delaware 19801

or, emailed to kmann@crosslaw.com, in accordance with the instructions included with the Ballot.

**How Do I Determine When and How Much I Will Be Paid?** In Article 2 of the Plan, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9

## DEFINITIONS

### A.      Scope of Definitions

For purposes of this Plan, unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 9 of this Plan. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow

that are found in the Code are for convenience of reference only, and are superseded by the definition found in the Bankruptcy Code.

### B. Definitions

**9.1** **"Administrative Expense Bar Date"** shall apply to Administrative Expense Claims and means the first Business Day that is thirty (30) days after the Effective Date or such other date as established by Final Order of the Bankruptcy Court.

**9.2** **"Administrative Expense Claim"** or "**Administrative Claim**" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including without limitation: (a) any actual and necessary costs and expenses incurred on or after the Commencement Date of preserving the Estate and operating the Debtor's business; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estate; (c) Professional Fee Claims; and (d) any fees or charges assessed against and payable by the Debtor under Section 1930 of title 28 of the United States Code.

**9.3** **"Allowed Claim"** means (a) any Claim against the Debtor, proof of which is timely filed or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no timely filed Proof of Claim has been filed, or (c) any Claim allowed pursuant to this Plan and, in each such case in (a) and (b) above, as to which either (i) no objection to the allowance thereof has been filed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) such an objection is so filed and the Claim shall have been allowed pursuant to a Final Order (but only to the extent so allowed).

**9.4** **"Allowed Priority Tax Claim"** means a Priority Tax Claim to the extent that it is or has become and Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.5** **"Allowed General Unsecured Claim"** means an unsecured claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.6** **"Assets"** means all assets and property of the Estate of the Debtor, regardless of whether reflected in the financial records of the Debtor, including but not limited to: Cash, deposits, refunds, rebates, abatements, fixtures, equipment, inventory, contractual interests, intangibles, claims, Cause of Action, suits, setoffs, recoupments, equitable or legal rights, interests and remedies.

**9.7** **"Assumed Contracts"** means an Executory Contract deemed assumed effective as of the Effective Date or such other date as may be agreed to by the parties to the Executory Contract or as ordered by the Bankruptcy Court.

**9.8** **"Assumed Contracts List"** means the list of Assumed Contracts the Debtor intends to assume pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Assumed Contract List shall be included with the Plan Supplement.

**9.9** **"Avoidance Actions"** means the Causes of Action under sections 502(d), 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code. These may also be referred to as the "Chapter 5 Causes of Action".

**9.10** **"Ballot" or "Ballots"** means the ballots accompanying the Plan upon which Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

**9.11** **"Bankruptcy Code" or "Code"** means title 11 of the United States Code, as amended and in effect on the Commencement Date.

**9.12** **"Bankruptcy Court"** means the United States Bankruptcy Court for District of Delaware having jurisdiction over the Chapter 11 Case.

**9.13** **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and (b) the Local Rules, in each case, as in effect on the Commencement Date.

**9.14** **"Bar Date"** means the deadline set by the Bankruptcy Court, pursuant to a Final Order or otherwise, for filing Proofs of Claim in the Case, as the context may require, which includes the Administrative Expense Bar Date, the General Claims Bar Date, and the Governmental Claims Bar Date.

**9.15** **"Business Day"** means any day other than: (a) a Saturday, (b) a Sunday, and (c) a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**9.16** **"Case"** has the same meaning as the term "Chapter 11 Case".

**9.17** **"Cash"** means legal tender of the United States of America.

**9.18** **"Cash Equivalents"** means equivalents of Cash in the form of readily marketable securities or instruments issued by an Entity, including readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "P2" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than five hundred million dollars ($500,000,000) having maturities of not more than one year, at the then generally prevailing rates of interest for like amounts and like periods.

**9.19** **"Causes of Action"** means any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to the Avoidance Actions, based in whole or in part upon any act or omission or other event occurring

prior to the Commencement Date or during the course of the Case, including through the Effective Date, that belong to the Debtor, the Debtor-in-Possession, or the Estate.

**9.20** **"Chapter 11 Case"** means this case under Subchapter V of chapter 11 of the Bankruptcy Code in which JLM Couture, Inc. is the Debtor-in-Possession.

**9.21** **"Claim"** means any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.22** **"Claims Objection Deadline"** shall have the meaning ascribed to it in Section 2.3. of the Plan.

**9.23** **"Class"** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to Section 1122 of the Bankruptcy Code.

**9.24** **"Commencement Date"** means June 16, 2023, the date the chapter 11 petition for relief was filed.

**9.25** **"Confirmation"** means the entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

**9.26** **"Confirmation Date"** means the date upon which the Bankruptcy Court shall enter the Confirmation Order; *provided*, *however*, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such day or the date on which such stay expires and is no longer in effect.

**9.27** **"Confirmation Hearing"** means the hearing held by the Court to consider the confirmation of the Plan, as it may be adjourned or continued from time to time, which is presently scheduled for February 28, 2024, at 11:00 a.m. (ET).

**9.28** **"Confirmation Order"** means an order of the Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.29** **"Creditor"** has the meaning ascribed to such term in § 101(10) of the Bankruptcy Code.

**9.30** **"Cure"** means the payment or other honoring of all obligations required to be paid or honored in connection with the assumption of an Executory Contract pursuant to § 365 of the Bankruptcy Code, including (a) the cure of any non-monetary defaults to the extent required, if it all, pursuant to § 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution, within a reasonable period of time following the Effective Date, of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an Executory Contract, pursuant to §365(b)

of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such other amount as may be agreed upon by the parties, under such Executory Contract, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

9.31  **"Debtor and Debtor-in-Possession"** means JLM Couture, Inc., the debtor and debtor in possession in this Case.

9.32  **"Disallowed"** means a (a) Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, or as provided in this Plan, (b) Claim or any portion thereof that is Scheduled at zero or as an unknown amount, or as contingent, disputed, and/or unliquidated, and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) Claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

9.33  **"Disposable Income"** shall have the meaning ascribed to it in § 1191(d) of the Bankruptcy Code.

9.34  **"Disputed Claim"** means any Claim against the Debtor pursuant to § 502 of the Bankruptcy Code which the Debtor has in any way objected to, challenged, or otherwise disputed.

9.35  **"Distribution"** means a distribution of Cash or other Assets of the Estate made in accordance with the Plan to Holders of Allowed Claims.

9.36  **"Distribution Date"** means the date on which the Debtor or Subchapter V Trustee, as the case may be, shall make a Distribution, which shall be a date or dates selected by the Debtor in accordance with the terms of this Plan.

9.37  **"Effective Date"** means a Business Day the Confirmation Order becomes a Final Order.

9.38  **"Entity"** means an entity as defined in Section 101(15) of the Bankruptcy Code.

9.39  **"Equity Interest" or Interest"** means an ownership interest in the Debtor.

9.40  **"Estate"** means the estate created in the Debtor's Chapter 11 Case containing all assets of the Debtor pursuant to Bankruptcy Code section 541.

9.41  **"Exculpated Claim"** means any Claim or Causes of Action whatsoever related to any act taken or omitted after the Commencement Date and on or before the Effective Date arising out of the Chapter 11 Case related to the Debtor, including, without limitation, (i) the negotiation of any settlements entered into, with, or by the Debtor or any Estate representative, (ii) the formulation, preparation, dissemination, negotiation, filing, prosecution, approval or administration of the Plan and/or any financing, investment, or sale agreement with respect to the Debtor, and/or (iii) any contract, instrument, release, assignment, or other agreement or document

created or entered into in connection with any such negotiations or settlements of the Chapter 11 Case, or any financing agreement or settlement agreement in connection therewith, the filing of the Chapter 11 Case, the pursuit of Confirmation, and the administration implementation of the Plan.

**9.42** **"Exculpated Party" or "Exculpated Parties"** shall mean, each in their individual capacities as such, (a) the Debtor, (b) the Reorganized Debtor, (c) the Debtor's Directors and Officers that served in such capacity from and after the Petition Date, and (d) the Debtor's Professionals retained in this Chapter 11 Case.

**9.43** **"Executory Contract"** means all unexpired leases and executory contracts as described in section 365 of the Bankruptcy Code.

**9.44** **"Final Order"** means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.45** **"First Distribution Date"** means the date identified in any notice of Effective Date which shall be the first date of quarterly installment payments under this Plan. The First Distribution Date shall fall no later than the last Business Day of the month preceding the month of the Effective Date.

**9.46** **"First Rejection Motion"** shall have the meaning set forth in section 1.8 of the Plan.

**9.47** **"General Claims Bar Date"** means December 1, 2023.

**9.48** **"Governmental Claims Bar Date"** means April 1, 2024.

**9.49** **"General Unsecured Claim"** means any Claim against a Debtor that is not (i) a Secured Claim; (ii) entitled to priority under Sections 503 or 507 of the Bankruptcy Code; (iii) an Administrative Expense Claim, or (iv) a Priority Tax Claim.

**9.50** **"Holder"** means the beneficial holder of any Claim or Equity Interest, in its capacity as such.

**9.51** **"Impaired"** shall have the meaning ascribed to it in Section 1124 of the Bankruptcy Code.

**9.52** **"Insiders"** shall have the meaning ascribed to it in Section 101(31) of the Bankruptcy Code, plus all entities under common control with the Debtor as of the Petition Date.

**9.53** **"Last Distribution Date"** means approximately 42 months from the First Distribution Date.

**9.54** **"Liabilities"** means the liabilities of the Estate, whether or not reflected in the financial records of the Debtor.

**9.55** **"Lien"** shall have the meaning ascribed to it in § 101(37) of the Bankruptcy Code, except that a lien that has been or may be avoided or void shall not constitute a Lien for the purposes of the Plan.

**9.56** **"Local Rules"** means the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware.

**9.57** **"Person"** means a person as defined in § 101(41) of the Bankruptcy Code.

**9.58** **"Petition Date"** means the Commencement Date, or October 2, 2023.

**9.59** **"Plan"** means this plan of reorganization for the resolution of outstanding Claims and Interests in the Case, as may be modified, amended, or supplemented at any time in accordance with the Bankruptcy Code, Bankruptcy Rules, and the terms hereof, including all exhibits, supplements, appendices, and schedules hereto.

**9.60** **"Plan Proponent"** means the Debtor.

**9.61** **"Plan Supplement"** means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be filed at least seven (7) calendar days before the deadline to object to the Plan, and any additional documents or schedules filed before the Effective Date as supplements or amendments to the Plan Supplement. The Debtor shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**9.62** **"Priority Tax Claim"** means any Claim of a governmental unit (as that term is defined in the Bankruptcy Code) of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**9.63** **"Professional"** means any person or Entity employed by the Debtor in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and who shall be compensated for services rendered prior to and including the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**9.64** **"Professional Fee Bar Date"** shall apply to Professional Fee Claims and means the first Business Day that is sixty (60) days after the Effective Date or such other date established by Final Order of the Bankruptcy Court.

**9.65** **"Professional Fee Claims"** means an Administrative Claim for reasonable compensation of a Professional for services rendered or expenses incurred in the Chapter 11 Case on or prior to the Effective Date.

**9.66** **"Proof of Claim"** means a Claim filed against the Debtor in the Chapter 11 Case.

**9.67** **"Record Date"** means the record date for determining the entitlement to vote on the Plan, which is the date that the Bankruptcy Court enters the *Order (I) Scheduling the Plan Confirmation hearing; (II) Setting an Objection Deadline for the Plan; (III) Approving Form of Notice Regarding the Hearing on Plan Confirmation; (IV) Approving Form of Ballot; and (V) Setting a Voting Deadline to Accept or Reject the Plan*.

**9.68** "**Rejected Contract**" means an Executory Contract deemed rejected effective as of the Effective Date or such other date as may be agreed to by the parties to the Executory Contract or as ordered by the Bankruptcy Court.

**9.69** "**Rejection Claim**" means any Claim arising from a Rejected Contract, which is a General Unsecured Claim.

**9.70** "**Rejection Claims Bar Date**" means the deadline to file a Proof of Claim for damages under a Rejected Contract and such deadline is thirty (30) days after the entry of an order by the Bankruptcy Court rejecting such contract or thirty (30) days after entry of the Confirmation Order (in the event the Rejected Contract was rejected pursuant to the Plan), whichever occurs first.

**9.71** "**Released Party**" means each of the following: (a) the Debtor (but only if the Plan is confirmed under section 1191(a) of the Bankruptcy Code); (b) Lawson; (c) the Debtor's prepetition attorneys and professionals; and (d) the Debtor's Professionals. If the Plan is confirmed under section 1191(b), the Debtor shall be a Released Party only on the Last Distribution Date.

**9.72** "**Reorganized Debtor**" means the Debtor after the Effective Date. Where the context requires, the term "Debtor" will mean the Reorganized Debtor.

**9.73** "**Representatives**" means, without limitation, any existing or former affiliate, subsidiary, member, officer, director, partner, stockholder, trustee, member, representative, employee, agent, attorney, business advisor, financial advisor, accountant, other Professional, their successors or assigns, or any Person who is or was in control of any of the foregoing.

**9.74** "**Schedules**" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor pursuant to § 521 of the Bankruptcy Code, as such schedules and statement have been or may be supplemented or amended from time to time.

**9.75** "**Secured Claim**" means a Claim that is secured by a Lien (which is valid, perfected, and enforceable under applicable law or by reason of a Final Order) on the property in which the Estate has an interest or that is subject to a set off under § 553 of the Bankruptcy Code, to the extent of the value of the collateral, as determined in accordance with § 506(a) of the Bankruptcy Code, or to the extent of the amount subject to setoff.

**9.76** "**Subchapter V Trustee**" or "**Trustee**" means William Homony, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. § 1183(b), the Plan, or the order confirming the Plan.

**9.77** "**Unclaimed Property**" means any Distributions that are returned to the Debtor or the Subchapter V Trustee, as the case may be, as: (i) undeliverable to a Creditor or (ii) unclaimed by a Creditor or Holder of an Equity Interest.

**9.78** "**Unimpaired**" means an Allowed Claim or Equity Interest that is not Impaired.

**9.79** **"United States Trustee" or "U.S. Trustee"** means the United States Trustee appointed under Section 591 of title 28 of the United States Code to serve in the District of Delaware.


Dated: January 22, 2024                Respectfully submitted,

JLM Couture, Inc.

By: _/s/ Joseph L. Murphy_
Name: Joseph L. Murphy
President and CEO

# Exhibit A

**Fill in this information to identify the case:**

Debtor Name  JLM Couture, Inc.

United States Bankruptcy Court for the: District of Delaware

Case number: 23-11659 (JKS)

☐ Check if this is an amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11    12/17

Month:  November 2023

Date report filed:  12/21/2023
MM / DD / YYYY

Line of business:  Apparel

NAISC code:  3159

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:  Joseph Murphy

Original signature of responsible party  /s/ Joseph Murphy

Printed name of responsible party  Joseph Murphy

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

**If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.***

| | | Yes | No | N/A |
|---|---|---|---|---|
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |

**If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.***

| | | Yes | No | N/A |
|---|---|---|---|---|
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☑ | ☐ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  JLM Couture, Inc.

Case number  23-11659 (JKS)

17. Have you paid any bills you owed before you filed bankruptcy?    ☑  ☐  ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?    ☐  ☑  ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ 356,180.63

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ 389,980.64

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

− $ 435,042.51

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $ -45,061.87

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

= $ 311,118.81

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

*(Exhibit E)*

$ 4,501.98

Debtor Name  JLM Couture, Inc.                                  Case number  23-11659 (JKS)

---

### 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                             $  170,179.32

     *(Exhibit F)*

---

### 5. Employees

26. What was the number of employees when the case was filed?                          21

27. What is the number of employees as of the date of this monthly report?             21

---

### 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?       $  13,000.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $  13,000.00

30. How much have you paid this month in other professional fees?                                 $  4,532.50

31. How much have you paid in total other professional fees since filing the case?               $  4,532.50

---

### 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
| | **Projected** | − | **Actual** | = | **Difference** |
| | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 490,000.00 | − | $ 389,980.64 | = | $ -100,019.30 |
| 33. **Cash disbursements** | $ 448,844.36 | − | $ 435,042.51 | = | $ 13,801.85 |
| 34. **Net cash flow** | $ 41,155.64 | − | $ -45,061.87 | = | $ -86,217.51 |

35. Total projected cash receipts for the next month:                                   $ 490,000.00

36. Total projected cash disbursements for the next month:                            − $ 356,732.75

37. Total projected net cash flow for the next month:                                 = $ 133,267.25

---

Debtor Name  JLM Couture, Inc.                                    Case number  23-11659 (JKS)

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39.  Bank reconciliation reports for each account.

☐ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☑ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

| | | 10/2-10/8 | 10/9-10/15 | 10/16-10/22 | 10/23-10/29 | 10/30-11/5 | 11/6-11/12 | 11/13-11/19 | 11/20-11/26 | 11/27-12/3 | 12/4-12/10 | 12/11-12/17 | 12/18-12/24 | 12/25-12/31 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 13-WEEK BUDGET ESTIMATE | | | | | | | | | | | | | | |
| | BEGINNING CASH BALANCE | $151,719.40 | $142,349.59 | $143,849.59 | $148,435.04 | $169,075.04 | $177,505.23 | $179,005.23 | $186,963.43 | $210,230.68 | $212,520.87 | $214,020.87 | $240,520.87 | $266,148.12 | |
| CASH COLLECTION | | $122,500.00 | $122,500.00 | $122,500.00 | $122,500.00 | $122,500.00 | $122,500.00 | $122,500.00 | $122,500.00 | $122,500.00 | $122,500.00 | $122,500.00 | $122,500.00 | $122,500.00 | $1,592,500 |
| | Wholesale Cash Collection | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $1,560,000 |
| | Shopify Cash Collection | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $32,500 |
| EXPENSES | | | | | | | | | | | | | | | |
| | Secured Lending (SBA) | $753.00 | | | | $753.00 | | | | $753.00 | | | | | $2,259 |
| | Credit Card Payments | | $2,000.00 | | $2,000.00 | $2,000.00 | | $2,000.00 | $2,000.00 | | | $2,000.00 | | | $12,000 |
| | Credit Card Processing | $9,000.00 | | | | | $9,000.00 | | | | $9,000.00 | | | | $27,000 |
| | Rent & Utilities | | $20,000.00 | | | | $20,000.00 | | | | $20,000.00 | | | | $60,000 |
| | Payroll | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $422,500 |
| PRODUCTION | Raw Materials, Direct Labor & Finished G | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | | $420,000 |
| | Exenta | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | | $30,000 |
| | Shipping | $8,500.00 | $8,500.00 | $8,500.00 | $8,500.00 | $8,500.00 | $8,500.00 | $8,500.00 | $8,500.00 | $8,500.00 | $8,500.00 | $8,500.00 | $8,500.00 | | $102,000 |
| FINANCIAL & LEGAL | Grassi | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | | $30,000 |
| | Lipstein | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | | $30,000 |
| | Jenn Weinberg | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | | $18,000 |
| | Adelman Matz | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | | | | | | | | | | $20,000 |
| | Cross & Simon | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $65,000 |
| | Trustee Fee | $10,000.00 | | | | $5,000.00 | | | | | | | | $5,000.00 | $20,000 |
| INSURANCE | Oxford Health Insurance | | | $18,541.80 | | | | $18,541.80 | | $13,140.00 | | | | | $50,224 |
| | NYSIF | | | | | $1,800.00 | | | | $1,800.00 | | | | | $3,600 |
| | Hartford | $3,378.21 | | | | $3,378.21 | | | | $3,378.21 | | | | | $10,135 |
| | PHLY | | | $2,372.75 | | | | | $2,372.75 | | | | $2,372.75 | | $7,118 |
| | IPFS | $4,838.60 | | | | $4,838.60 | | | | $4,838.60 | | | | | $14,516 |
| | Guardian | $2,600.00 | | | | | | | | | | | | | $2,600 |
| | Xeno Media | | | | $2,500.00 | | | | | $2,500.00 | | | $2,500.00 | | $7,500 |
| | Shopify | $1,300.00 | | | | $1,300.00 | | | | $1,300.00 | | | | | $3,900 |
| | Amazon Web Services | | $2,000.00 | | | | | $2,000.00 | | | | $2,000.00 | | | $6,000 |
| | Marketing | $3,000.00 | | | | $3,000.00 | | | | $3,000.00 | | | | | $9,000 |
| | IT, Wifi, & Phone | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | | $24,000 |
| | Company Auto | | | | | $360.00 | | | | $360.00 | | | | $360.00 | $1,080 |
| | Total Expense | $131,869.81 | $121,000.00 | $117,914.55 | $101,860.00 | $114,069.81 | $121,000.00 | $114,541.80 | $99,232.75 | $120,209.81 | $121,000.00 | $96,000.00 | $96,872.75 | $42,860.00 | $1,398,431.28 |
| | WEEKLY CASH FLOW | -$9,370 | $1,500 | $4,585 | $20,640 | $8,430 | $1,500 | $7,958 | $23,267 | $2,290 | $1,500 | $26,500 | $25,627 | $79,640 | |
| | ENDING CASH BALANCE | $142,350 | $143,850 | $148,435 | $169,075 | $177,505 | $179,005 | $186,963 | $210,231 | $212,521 | $214,021 | $240,521 | $266,148 | $345,788 | $345,788.12 |



P.O. Box 15284
Wilmington, DE 19850

BANK OF AMERICA
Preferred Rewards
For Business

**Customer service information**

JLM COUTURE INC
225 W 37TH ST FL 5
NEW YORK, NY  10018-6752

📞 1.888.BUSINESS (1.888.287.4637)

✏️ bankofamerica.com

✉️ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

# Your Business Advantage Savings
# Preferred Rewards for Bus Platinum Honors

for November 1, 2023 to November 30, 2023                    Account number: ████████0226

**JLM COUTURE INC**

## Account summary

| | | |
|---|---|---|
| Beginning balance on November 1, 2023 | $1,418.53 | # of deposits/credits: 1 |
| Deposits and other credits | 0.05 | # of withdrawals/debits: 0 |
| Withdrawals and other debits | -0.00 | # of days in cycle: 30 |
| Service fees | -0.00 | Average ledger balance: $1,418.53 |
| **Ending balance on November 30, 2023** | **$1,418.58** | Average collected balance: $1,418.53 |

*Annual Percentage Yield Earned this statement period: 0.04%.*
*Interest Paid Year To Date: $0.30.*

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us** - You may call us at the telephone number listed on the front of this statement.

**Updating your contact information** - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement** - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers** - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems** - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits** - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2023 Bank of America Corporation

**Bank of America, N.A. Member FDIC and** ⌂ **Equal Housing Lender**



**Your savings account**

JLM COUTURE INC   |   Account #⬛⬛⬛⬛⬛⬛0226   |   November 1, 2023 to November 30, 2023

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 11/30/23 | Interest Earned | 0.05 |
| **Total deposits and other credits** | | **$0.05** |

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) |
|------|-------------|------|------------|
| 11/01 | 1,418.53 | 11/30 | 1,418.58 |



This page intentionally left blank



P.O. Box 15284
Wilmington, DE 19850

## Business Advantage

**Customer service information**

📱 1.888.BUSINESS (1.888.287.4637)

✎ bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

JLM COUTURE NORTH AMERICA INC
225 W 37TH ST FL 5
NEW YORK, NY  10018-6752

# Your Business Advantage Relationship Banking

for November 1, 2023 to November 30, 2023                    Account number: ███████3232

**JLM COUTURE NORTH AMERICA INC**

## Account summary

| | | |
|---|---:|---|
| Beginning balance on November 1, 2023 | $47.96 | # of deposits/credits: 1 |
| Deposits and other credits | 39,770.42 | # of withdrawals/debits: 1 |
| Withdrawals and other debits | -0.00 | # of items-previous cycle[1]: 0 |
| Checks | -0.00 | # of days in cycle: 30 |
| Service fees | -29.95 | Average ledger balance: $39,788.43 |
| **Ending balance on November 30, 2023** | **$39,788.43** | [1]Includes checks paid, deposited items and other debits |

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

–   Tell us your name and account number.
–   Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
–   Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2023 Bank of America Corporation



**Bank of America, N.A. Member FDIC and Equal Housing Lender**



**Your checking account**

JLM COUTURE NORTH AMERICA INC   |   Account # ████████3232   |   November 1, 2023 to November 30, 2023

# Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 11/01/23 | Counter Credit | 39,770.42 |
| **Total deposits and other credits** | | **$39,770.42** |

# Service fees

**Your Overdraft and NSF: Returned Item fees for this statement period and year to date are shown below.**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft fees | $0.00 | $90.00 |
| Total NSF: Returned Item fees | $0.00 | $0.00 |

**We want to help you avoid overdraft fees.  Here are a few ways to manage your account and stay on top of your balance:**

- Enroll in Balance Connect™ for overdraft protection through Online or Mobile Banking to help save on overdraft fees and cover your payments and purchases by automatically transferring money from your linked backup accounts when needed.
- Sign up for Alerts (footnote 1) to get an email or text message when your balance becomes low

Please call us or visit us if you have any questions or to discuss your options.

(footnote 1) You may elect to receive alerts via text or email. Bank of America does not charge for this service but your mobile carrier's message and data rates may apply. Delivery of alerts may be affected or delayed by your mobile carrier's coverage.

Based on the activity on your business accounts for the statement period ending 10/31/23, a Monthly Fee was charged for your primary Business Advantage Relationship Banking account. You can avoid the fee in the future by meeting one of the requirements below:

○ $15,000+ combined average monthly balance in linked business accounts

○ Become a member of Preferred Rewards for Business

For information on how to open a new product, link an existing service to your account, or about Preferred Rewards for Business please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 11/01/23 | Monthly Fee Business Adv Relationship | -29.95 |
| **Total service fees** | | **-$29.95** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*



## Daily ledger balances

| Date | Balance ($) |
|------|-------------|
| 11/01 | 39,788.43 |



P.O. Box 15284
Wilmington, DE 19850

BANK OF AMERICA
Preferred Rewards
For Business

**Customer service information**

📞 1.888.BUSINESS (1.888.287.4637)

✉️ bankofamerica.com

✉️ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

JLM COUTURE INC
225 W 37TH ST FL 5
NEW YORK, NY  10018-6752

# Your Business Advantage Relationship Banking Preferred Rewards for Bus Platinum Honors

for November 1, 2023 to November 30, 2023                    Account number: ████████9787

**JLM COUTURE INC**

## Account summary

| | |
|---|---|
| Beginning balance on November 1, 2023 | $6,322.96 |
| Deposits and other credits | 20,000.00 |
| Withdrawals and other debits | -13,641.61 |
| Checks | -0.00 |
| Service fees | -0.00 |
| **Ending balance on November 30, 2023** | **$12,681.35** |

*Your account is enrolled in Balance Connect™ for overdraft protection.  You can manage your overdraft protection preferences, including linked accounts, in Online and Mobile Banking.*

# of deposits/credits: 2

# of withdrawals/debits: 37

# of items-previous cycle[1]: 0

# of days in cycle: 30

Average ledger balance: $8,423.95

[1]*Includes checks paid, deposited items and other debits*

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

    –    Tell us your name and account number.
    –    Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
    –    Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2023 Bank of America Corporation

**Bank of America, N.A. Member FDIC and**  **Equal Housing Lender**



**Your checking account**

JLM COUTURE INC   |   Account # XXXXXXXXX9787   |   November 1, 2023 to November 30, 2023

## Deposits and other credits

| Date | Description | | | Amount |
|------|-------------|--|--|--------|
| 11/09/23 | BKOFAMERICA MOBILE 11/09 3609429969 DEPOSIT | *MOBILE | NY | 10,000.00 |
| 11/29/23 | BKOFAMERICA MOBILE 11/29 3818780995 DEPOSIT | *MOBILE | NY | 10,000.00 |
| **Total deposits and other credits** | | | | **$20,000.00** |

## Withdrawals and other debits

Card account # XXXX XXXX XXXX 7978

| Date | Description | Amount |
|------|-------------|--------|
| 11/01/23 | CHECKCARD  1031 WEB*NETWORKSOLUTIONS 888-6429675  FL 24906413304186083344754 RECURRING CKCD 5968 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -79.94 |
| 11/06/23 | PURCHASE   1104 CANVA* I03959-1278793 HTTPSCANVA.CODE | -12.95 |
| 11/06/23 | CHECKCARD  1105 WEB*NETWORKSOLUTIONS 888-6429675  FL 24906413309186498154785 RECURRING CKCD 5968 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -44.99 |
| 11/07/23 | CHECKCARD  1106 PY *STORQUEST - JERSEY 800-784-9176 NJ 24445003311600076393253 CKCD 4225 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -731.86 |
| 11/08/23 | CHECKCARD  1107 WEB*NETWORKSOLUTIONS 888-6429675  FL 24906413311186637996571 RECURRING CKCD 5968 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -122.97 |
| 11/08/23 | CHECKCARD  1108 AMAZON.COM*LF2578X33 SEATTLE      WA 24431063312083314785920 CKCD 5942 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -21.13 |
| 11/08/23 | CHECKCARD  1107 PIRATE SHIP  POSTAGE PRT.SH      WY 24492153311713076347842 CKCD 4215 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -117.16 |
| 11/08/23 | CHECKCARD  1107 PIRATE SHIP  POSTAGE PRT.SH      WY 24492153311745083359089 CKCD 4215 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -335.98 |
| 11/09/23 | PURCHASE   1108 Mailchimp 678-9990141  GA | -337.51 |
| 11/10/23 | PURCHASE   1109 Mailchimp 678-9990141  GA | -337.51 |
| 11/13/23 | CHECKCARD  1111 AMAZON.COM*OD3OC8183 SEATTLE      WA 24431063315083332072431 CKCD 5942 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -75.03 |
| 11/13/23 | PURCHASE   1112 WWW.AMAZON* 113-950315 WWW.AMAZON.COWA | -12.77 |
| 11/13/23 | PURCHASE   1112 WWW.AMAZON* 114-314559 WWW.AMAZON.COWA | -27.84 |
| 11/14/23 | CHECKCARD  1113 PY *STORQUEST - JERSEY 800-784-9176 NJ 24445003318600075700337 RECURRING CKCD 4225 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -644.56 |
| 11/14/23 | CHECKCARD  1114 PIRATE SHIP  POSTAGE PRT.SH      WY 24492153318715211197530 CKCD 4215 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -49.99 |

*continued on the next page*



# Withdrawals and other debits - continued

| Date | Description | Amount |
|---|---|---|
| 11/15/23 | CHECKCARD  1114 AMZN MKTP US*AX5A882Z3 SEATTLE     WA 24431063318083351544200 CKCD 5942 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -237.74 |
| 11/15/23 | CHECKCARD  1114 WEB*NETWORKSOLUTIONS 888-6429675  FL 24906413318187106574447 RECURRING CKCD 5968 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -19.98 |
| 11/15/23 | CHECKCARD  1114 SPARKPOST MESSAGEBIRD 410-872-4910 MD 24492153318717246446304 RECURRING CKCD 5045 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -21.78 |
| 11/16/23 | CHECKCARD  1115 WEB*NETWORKSOLUTIONS 888-6429675  FL 24906413319187172129869 RECURRING CKCD 5968 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -123.96 |
| 11/17/23 | CHECKCARD  1116 WEB*NETWORKSOLUTIONS 888-6429675  FL 24906413320187244881171 RECURRING CKCD 5968 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -14.99 |
| 11/17/23 | PURCHASE   1117 SHOPIFY* 204393695 HTTPSSSHOPIFY.IL | -5,143.60 |
| 11/20/23 | CHECKCARD  1117 AMZN MKTP US*S34SP4R33 SEATTLE     WA 24431063321083339260908 CKCD 5942 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -60.74 |
| 11/20/23 | CHECKCARD  1117 AMAZON.COM*T348X1ZO3 SEATTLE      WA 24431063321083737397740 CKCD 5942 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -56.03 |
| 11/20/23 | PURCHASE   1117 WWW.AMAZON* 113-191675 WWW.AMAZON.COWA | -106.68 |
| 11/20/23 | PURCHASE   1117 A2WEBHOST* INV4073722 HTTPSWWW.A2HOMI | -529.99 |
| 11/20/23 | CHECKCARD  1118 VBS*VONAGE BUSINESS 866-901-0242 GA 24692163322108284428118 RECURRING CKCD 4814 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -985.68 |
| 11/20/23 | PURCHASE   1118 Amazon Prime*707JZ8F73 Amzn.com/billWA | -151.34 |
| 11/20/23 | CHECKCARD  1119 ADOBE  *ACROPRO SUBS 408-536-6000 CA 24492153323745131193288 RECURRING CKCD 5734 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -21.31 |
| 11/21/23 | CHECKCARD  1120 WEB*NETWORKSOLUTIONS 888-6429675  FL 24906413324187508088113 RECURRING CKCD 5968 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -122.97 |
| 11/22/23 | CHECKCARD  1121 READYREFRESH/WATERSERV 800-274-5282 CA 24692163325100419959437 RECURRING CKCD 5999 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -293.91 |
| 11/22/23 | CHECKCARD  1121 WEB*NETWORKSOLUTIONS 888-6429675  FL 24906413325187588250046 RECURRING CKCD 5968 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -740.75 |
| 11/22/23 | PURCHASE   1121 ZOOM.US 888-799-9666 WWW.ZOOM.US  CA | -56.37 |
| 11/24/23 | CHECKCARD  1122 WEB*NETWORKSOLUTIONS 888-6429675  FL 24906413326187661796336 RECURRING CKCD 5968 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -128.97 |
| 11/29/23 | CHECKCARD  1128 WEB*NETWORKSOLUTIONS 888-6429675  FL 24906413332188103955995 RECURRING CKCD 5968 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -14.99 |
| 11/30/23 | CHECKCARD  1129 AFFORDABLE SELF STORAGE 609-3976397  NJ 24183103333900018332668 CKCD 4214 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -694.53 |
| 11/30/23 | CHECKCARD  1201 NNT MSFT *<E02 MSBILL.INFO  WA 00000000000000000573161 RECURRING CKCD 5045 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -802.96 |
| 11/30/23 | CHECKCARD  1201 NNT MSFT *<E02 MSBILL.INFO  WA 00000000000000000337317 RECURRING CKCD 5045 XXXXXXXXXXXX7978 XXXX XXXX XXXX 7978 | -360.15 |
| **Subtotal for card account # XXXX XXXX XXXX 7978** | | **-$13,641.61** |
| **Total withdrawals and other debits** | | **-$13,641.61** |

 **Your checking account**

JLM COUTURE INC   |   Account #████████9787   |   November 1, 2023 to November 30, 2023

## Service fees

The Monthly Fee on your primary Business Advantage Relationship Banking account was waived for the statement period ending 10/31/23. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

○ $15,000+ combined average monthly balance in linked business accounts has not been met

✓ Become a member of Preferred Rewards for Business has been met

For information on how to open a new product, link an existing service to your account, or about Preferred Rewards for Business please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 11/01 | 6,243.02 | 11/13 | 14,065.32 | 11/21 | 5,773.98 |
| 11/06 | 6,185.08 | 11/14 | 13,370.77 | 11/22 | 4,682.95 |
| 11/07 | 5,453.22 | 11/15 | 13,091.27 | 11/24 | 4,553.98 |
| 11/08 | 4,855.98 | 11/16 | 12,967.31 | 11/29 | 14,538.99 |
| 11/09 | 14,518.47 | 11/17 | 7,808.72 | 11/30 | 12,681.35 |
| 11/10 | 14,180.96 | 11/20 | 5,896.95 | | |

This page intentionally left blank

This page intentionally left blank

This page intentionally left blank



| Merchant Account ID: ▮▮▮▮▮▮ZPW6 | PayPal ID: yesim@jlmcinc.com | 11/1/23 – 11/30/23 |
|---|---|---|

## Statement for November 2023

JLM Couture, Inc.
225 W 37th st 14th Fl
10018 New York

## Balance Summary (11/1/23 – 11/30/23)

|  | Available beginning | Available ending | Withheld beginning | Withheld ending |
|---|---|---|---|---|
| USD | 4,941.88 | 710.18 | 0.00 | 0.00 |



Merchant Account ID: 3▮▮▮▮▮▮▮ZPW6          PayPal ID: yesim@jlmcinc.com                                    11/1/23 - 11/30/23

## Activity Summary (11/1/23 - 11/30/23)

| | USD |
|---|---:|
| **Beginning Available Balance** | **4,941.88** |
| Payments received | 1,319.25 |
| Payments sent | 0.00 |
| Withdrawals and Debits | -5,500.00 |
| Deposits and Credits | 0.00 |
| Fees | -50.95 |
| **Ending Available Balance** | **710.18** |



Merchant Account ID: 3▮▮▮▮▮▮▮▮PW6          PayPal ID: yesim@jlmcinc.com                                11/1/23 – 11/30/23

## Payments received

| Description | USD |
| --- | --- |
| Express Checkout Payment | 1,319.25 |
| **Total** | **1,319.25** |

## Withdrawals and Debits

| Description | USD |
| --- | --- |
| Transfer Withdrawal | -5,500.00 |
| **Total** | **-5,500.00** |

## Fees

| Description | USD |
| --- | --- |
| Payment Fee | -50.95 |
| **Total** | **-50.95** |



Merchant Account ID: 3█████████2PW6          PayPal ID: yesim@jlmcinc.com          11/1/23 - 11/30/23

## Transaction History - USD

| Date | Description | Name \ Email | Gross | Fee | Net |
|------|-------------|--------------|-------|-----|-----|
| 11/7/23 | Express Checkout Payment<br>ID: 14V350728P507650C | ██████████ | 18.99 | -1.15 | 17.84 |
| 11/8/23 | User Initiated Withdrawal<br>ID: 4DV60963V87128708 | | -4,000.00 | 0.00 | -4,000.00 |
| 11/15/23 | Express Checkout Payment<br>ID: 6K836675FR890723M | ██████████ | 261.76 | -9.63 | 252.13 |
| 11/16/23 | Express Checkout Payment<br>ID: 90V1096745882160H | ██████████ | 106.19 | -4.20 | 101.99 |
| 11/18/23 | Express Checkout Payment<br>ID: 6VU96961HF3625048 | ██████████ | 249.56 | -9.20 | 240.36 |
| 11/19/23 | Express Checkout Payment<br>ID: 5D502438YM244713K | ██████████ | 12.99 | -0.94 | 12.05 |
| 11/27/23 | Express Checkout Payment<br>ID: 1RE0114965057111D | ██████████ | 110.56 | -4.35 | 106.21 |
| 11/27/23 | Express Checkout Payment<br>ID: 09G06595P8307314C | ██████████ | 213.45 | -7.94 | 205.51 |
| 11/28/23 | Express Checkout Payment<br>ID: 7KT47410EH964350M | ██████████ | 106.19 | -4.20 | 101.99 |
| 11/28/23 | Express Checkout Payment<br>ID: 6632930277T5935944 | ██████████ | 207.57 | -7.73 | 199.84 |
| 11/29/23 | User Initiated Withdrawal<br>ID: 96G6789487594931R | | -1,500.00 | 0.00 | -1,500.00 |
| 11/30/23 | Express Checkout Payment<br>ID: 38P223479H1915936 | ██████████ | 31.99 | -1.61 | 30.38 |

To report an unauthorized transaction or other error NOT involving your debit card: call (402-938-3614) or write to us (Attn: Error Resolution Department, P.O. Box 45950, Omaha, NE 68145-0950).

To report an unauthorized transaction or other error concerning your debit card: call (402-938-3614), fax (303-395-2855) or write to us (PayPal Debit Card Department, P.O. Box 45950, Omaha, NE 68145-0950).

To cancel a pre-authorized or recurring payment or determine whether a pre-authorized or recurring transfer has been made: call us at 1-877-896-6383 (please note that only calls pertaining to pre-authorized or recurring payments will be accepted at this number).

# WebsterBank®

P.O. Box 191
Waterbury, CT 06720-0191

### *November 2023*

*Reporting Activity 11/01 - 11/30*                    *Page 1 of 4*

JLM COUTURE INC
PAYROLL ACCOUNT
225 W 37TH ST FL 5
NEW YORK NY 10018-6752

## Contact Us

 Client Services    800.482.2220

 Mailing Address    P.O. Box 191
Waterbury, CT 06720-0191

Online Access    websterbank.com

## SUMMARY OF ACCOUNTS

| ACCOUNT TYPE | ACCOUNT NUMBER | ENDING BALANCE |
|---|---|---|
| **ANALYZED BUSINESS CHECKING** | **XXXXXX0544** | **$3,940.79** |

## ANALYZED BUSINESS CHECKING - XXXXXX0544

### Account Summary

| Date | Description | | | |
|---|---|---|---|---|
| 11/01/2023 | **Beginning Balance** | **$869.02** | Average Ledger Balance | $1,787.66 |
| | 12 Debit(s) this period | $12,678.23 | Average Available Balance | $1,787.66 |
| | 6 Credit(s) this period | $15,750.00 | | |
| 11/30/2023 | **Ending Balance** | **$3,940.79** | | |

### Transaction Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 11/01/2023 | Beginning Balance | | | $869.02 |
| 11/01/2023 | WEB XFER FR DDA XXXXXXXX9962 | | $3,500.00 | $4,369.02 |
| 11/03/2023 | PAYCHEX EIB    INVOICE JLM COUTURE INC XXXXXXXXXXX7726 | -$355.64 | | $4,013.38 |
| 11/03/2023 | PAYCHEX-HRS    401(K) JLM COUTURE INC XXXXXXXXX8661 | -$3,304.56 | | $708.82 |
| 11/08/2023 | WEB XFER FR DDA XXXXXXXX9962 | | $2,000.00 | $2,708.82 |
| 11/10/2023 | WEB XFER FR DDA XXXXXXXX9962 | | $250.00 | $2,958.82 |
| 11/10/2023 | PAYCHEX-HRS    HRS PMT JLM COUTURE INC XXXXXX6755 | -$168.55 | | $2,790.27 |
| 11/10/2023 | PAYCHEX EIB    INVOICE JLM COUTURE INC XXXXXXXXXXX6334 | -$314.72 | | $2,475.55 |
| 11/10/2023 | PAYCHEX-HRS    401(K) JLM COUTURE INC XXXXXXXXX0821 | -$2,375.01 | | $100.54 |


MEMBER
**FDIC**

THIS PAGE LEFT INTENTIONALLY BLANK

# Webster Bank

## ANALYZED BUSINESS CHECKING - XXXXXX0544 (continued)

### Transaction Activity (continued)

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 11/15/2023 | WEB XFER FR DDA XXXXXXXX9962 | | $3,000.00 | $3,100.54 |
| 11/17/2023 | PAYCHEX EIB     INVOICE JLM COUTURE INC XXXXXXXXXXX8914 | -$311.27 | | $2,789.27 |
| 11/17/2023 | PAYCHEX-HRS     401(K) JLM COUTURE INC XXXXXXXXX6885 | -$2,372.12 | | $417.15 |
| 11/20/2023 | WEB XFER FR DDA XXXXXXXX9962 | | $4,000.00 | $4,417.15 |
| 11/20/2023 | PAYCHEX-OAB     INVOICE JLM COUTURE INC XXXXXXXXXX4326X | -$522.60 | | $3,894.55 |
| 11/21/2023 | MTHLY ANALYSIS CHARGE | -$62.98 | | $3,831.57 |
| 11/24/2023 | WAGEWORKS     RECEIVABLE JLM COUTURE INC INV5776004 | -$175.00 | | $3,656.57 |
| 11/24/2023 | PAYCHEX EIB     INVOICE JLM COUTURE INC XXXXXXXXXXX2148 | -$311.27 | | $3,345.30 |
| 11/24/2023 | PAYCHEX-HRS     401(K) JLM COUTURE INC XXXXXXXXX9357 | -$2,404.51 | | $940.79 |
| 11/29/2023 | WEB XFER FR DDA XXXXXXXX9962 | | $3,000.00 | $3,940.79 |
| 11/30/2023 | Ending Balance | | | $3,940.79 |

### Debits

| Date | Description | Amount |
|---|---|---|
| 11/03/2023 | PAYCHEX EIB     INVOICE JLM COUTURE INC XXXXXXXXXXX7726 | -$355.64 |
| 11/03/2023 | PAYCHEX-HRS     401(K) JLM COUTURE INC XXXXXXXXX8661 | -$3,304.56 |
| 11/10/2023 | PAYCHEX-HRS     HRS PMT JLM COUTURE INC XXXXXX6755 | -$168.55 |
| 11/10/2023 | PAYCHEX EIB     INVOICE JLM COUTURE INC XXXXXXXXXXX6334 | -$314.72 |
| 11/10/2023 | PAYCHEX-HRS     401(K) JLM COUTURE INC XXXXXXXXX0821 | -$2,375.01 |
| 11/17/2023 | PAYCHEX EIB     INVOICE JLM COUTURE INC XXXXXXXXXXX8914 | -$311.27 |
| 11/17/2023 | PAYCHEX-HRS     401(K) JLM COUTURE INC XXXXXXXXX6885 | -$2,372.12 |
| 11/20/2023 | PAYCHEX-OAB     INVOICE JLM COUTURE INC XXXXXXXXXX4326X | -$522.60 |
| 11/21/2023 | MTHLY ANALYSIS CHARGE | -$62.98 |
| 11/24/2023 | WAGEWORKS     RECEIVABLE JLM COUTURE INC INV5776004 | -$175.00 |
| 11/24/2023 | PAYCHEX EIB     INVOICE JLM COUTURE INC XXXXXXXXXXX2148 | -$311.27 |
| 11/24/2023 | PAYCHEX-HRS     401(K) JLM COUTURE INC XXXXXXXXX9357 | -$2,404.51 |

### Credits

| Date | Description | Amount |
|---|---|---|
| 11/01/2023 | WEB XFER FR DDA XXXXXXXX9962 | $3,500.00 |
| 11/08/2023 | WEB XFER FR DDA XXXXXXXX9962 | $2,000.00 |
| 11/10/2023 | WEB XFER FR DDA XXXXXXXX9962 | $250.00 |
| 11/15/2023 | WEB XFER FR DDA XXXXXXXX9962 | $3,000.00 |
| 11/20/2023 | WEB XFER FR DDA XXXXXXXX9962 | $4,000.00 |

## ANALYZED BUSINESS CHECKING - XXXXXX0544 (continued)

### Credits (continued)

| Date | Description | Amount |
|------|-------------|--------|
| 11/29/2023 | WEB XFER FR DDA XXXXXXXX9962 | $3,000.00 |

### Daily Balances

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 10/31/2023 | $869.02 | 11/10/2023 | $100.54 | 11/21/2023 | $3,831.57 |
| 11/01/2023 | $4,369.02 | 11/15/2023 | $3,100.54 | 11/24/2023 | $940.79 |
| 11/03/2023 | $708.82 | 11/17/2023 | $417.15 | 11/29/2023 | $3,940.79 |
| 11/08/2023 | $2,708.82 | 11/20/2023 | $3,894.55 | | |

**Overdraft and Returned Item Fees**

| | Total for this period | Total year-to-date |
|------|-----------------------|--------------------|
| Total Returned Item Fees | $0.00 | $0.00 |
| Total Overdraft Fees | $0.00 | $0.00 |

# WebsterBank®

**P.O. Box 191**
**Waterbury, CT 06720-0191**

## *November 2023*

*Reporting Activity 11/01 - 11/30*                    *Page 1 of 6*

JLM COUTURE INC
225 W 37TH ST FL 5
NEW YORK NY 10018-6752

### Contact Us

 Client Services       800.482.2220

 Mailing  Address     P.O. Box 191
                              Waterbury, CT 06720-0191

Online Access        websterbank.com

## SUMMARY OF ACCOUNTS

| ACCOUNT TYPE | ACCOUNT NUMBER | ENDING BALANCE |
|---|---|---|
| **ANALYZED BUSINESS CHECKING** | **XXXXXX9962** | **$9,232.08** |

## ANALYZED BUSINESS CHECKING - XXXXXX9962

### Account Summary

| Date | Description | | | |
|---|---|---|---|---|
| 11/01/2023 | **Beginning Balance** | **$74,979.77** | Average Ledger Balance | $36,955.44 |
| | 24 Debit(s) this period | $379,827.90 | Average Available Balance | $36,955.44 |
| | 33 Credit(s) this period | $314,080.21 | | |
| 11/30/2023 | **Ending Balance** | **$9,232.08** | | |

### Transaction Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 11/01/2023 | Beginning Balance | | | $74,979.77 |
| 11/01/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $9,137.24 | $84,117.01 |
| 11/01/2023 | shopify        TRANSFER JLM COUTURE INC ST-J9N5K5D1J8X0 | | $13.32 | $84,130.33 |
| 11/01/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$3,500.00 | | $80,630.33 |
| 11/01/2023 | CHECK #1579 | -$4,000.00 | | $76,630.33 |
| 11/01/2023 | CHECK #1581 | -$50,000.00 | | $26,630.33 |
| 11/02/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $25,543.33 | $52,173.66 |
| 11/02/2023 | AUTHNET GATEWAY  BILLING JLM COUTURE INC. XXXXX5103 | -$104.15 | | $52,069.51 |
| 11/02/2023 | shopify        TRANSFER JLM COUTURE INC ST-F7R5W6U8M1S1 | -$178.20 | | $51,891.31 |



MEMBER
**FDIC**

THIS PAGE LEFT INTENTIONALLY BLANK

# **WebsterBank**

## ANALYZED BUSINESS CHECKING - XXXXXX9962 (continued)

### Transaction Activity (continued)

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 11/02/2023 | GLOBAL PAYMENTS GLOBAL STL JLM COUTURE INC XXXXXXXXX0020 | -$14,037.34 | | $37,853.97 |
| 11/02/2023 | CHECK #1582 | -$25,000.00 | | $12,853.97 |
| 11/03/2023 | GLOBAL PAYMENTS GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $3,780.00 | $16,633.97 |
| 11/03/2023 | shopify    TRANSFER JLM COUTURE INC ST-T8K0A4Z0X8P4 | | $103.34 | $16,737.31 |
| 11/06/2023 | GLOBAL PAYMENTS GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $41,295.69 | $58,033.00 |
| 11/06/2023 | GLOBAL PAYMENTS GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $10,798.38 | $68,831.38 |
| 11/06/2023 | shopify    TRANSFER JLM COUTURE INC ST-T6L9O5K8U0R8 | | $83.44 | $68,914.82 |
| 11/06/2023 | MP Lincoln Park PURCHASE Joe Murphy XXXXX2131 | -$675.00 | | $68,239.82 |
| 11/06/2023 | CHECK #1583 | -$15,000.00 | | $53,239.82 |
| 11/08/2023 | GLOBAL PAYMENTS GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $9,180.14 | $62,419.96 |
| 11/08/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$2,000.00 | | $60,419.96 |
| 11/08/2023 | CHECK #1568 | -$40,000.00 | | $20,419.96 |
| 11/09/2023 | GLOBAL PAYMENTS GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $12,856.69 | $33,276.65 |
| 11/09/2023 | CHECK #1584 | -$20,000.00 | | $13,276.65 |
| 11/10/2023 | GLOBAL PAYMENTS GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $17,514.53 | $30,791.18 |
| 11/10/2023 | shopify    TRANSFER JLM COUTURE INC ST-P3F6U6H8D4L3 | | $1,143.96 | $31,935.14 |
| 11/10/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$250.00 | | $31,685.14 |
| 11/10/2023 | CHECK #1569 | -$10,000.00 | | $21,685.14 |
| 11/13/2023 | GLOBAL PAYMENTS GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $12,928.96 | $34,614.10 |
| 11/13/2023 | GLOBAL PAYMENTS GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $2,829.07 | $37,443.17 |
| 11/13/2023 | shopify    TRANSFER JLM COUTURE INC ST-S2R0P7F3M0J2 | | $285.66 | $37,728.83 |
| 11/14/2023 | shopify    TRANSFER JLM COUTURE INC ST-E6A8C9W3G5K9 | | $511.50 | $38,240.33 |
| 11/14/2023 | CHECK #1570 | -$30,000.00 | | $8,240.33 |
| 11/14/2023 | CHECK #99324276 | -$17.85 | | $8,222.48 |
| 11/15/2023 | shopify    TRANSFER JLM COUTURE INC ST-M2L6V3J4I0K0 | | $278.05 | $8,500.53 |
| 11/15/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$3,000.00 | | $5,500.53 |

# Webster Bank

## November 2023

*Reporting Activity 11/01 - 11/30*                    **Page 4 of 6**

---

**ANALYZED BUSINESS CHECKING - XXXXXX9962 (continued)**

---

### Transaction Activity (continued)

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 11/16/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $3,611.08 | $9,111.61 |
| 11/16/2023 | shopify        TRANSFER JLM COUTURE INC ST-Z7F2V2B4L7T2 | | $301.00 | $9,412.61 |
| 11/17/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $8,381.92 | $17,794.53 |
| 11/20/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $19,688.48 | $37,483.01 |
| 11/20/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $5,101.49 | $42,584.50 |
| 11/20/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$4,000.00 | | $38,584.50 |
| 11/21/2023 | shopify        TRANSFER JLM COUTURE INC ST-W3W4X6D6A8D6 | | $346.88 | $38,931.38 |
| 11/21/2023 | MTHLY ANALYSIS CHARGE | -$65.36 | | $38,866.02 |
| 11/21/2023 | CHECK #1589 | -$35,000.00 | | $3,866.02 |
| 11/22/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $40,044.75 | $43,910.77 |
| 11/22/2023 | shopify        TRANSFER JLM COUTURE INC ST-O6S6J5H0I0Z9 | | $210.95 | $44,121.72 |
| 11/24/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $34,565.66 | $78,687.38 |
| 11/24/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $27,723.08 | $106,410.46 |
| 11/24/2023 | shopify        TRANSFER JLM COUTURE INC ST-W0V3L5D5P2P7 | | $33.44 | $106,443.90 |
| 11/28/2023 | shopify        TRANSFER JLM COUTURE INC ST-G2D7Y7R8G6Q6 | | $4,502.84 | $110,946.74 |
| 11/28/2023 | CHECK #1585 | -$50,000.00 | | $60,946.74 |
| 11/29/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $14,237.31 | $75,184.05 |
| 11/29/2023 | shopify        TRANSFER JLM COUTURE INC ST-K5C5P7D4K8O0 | | $655.12 | $75,839.17 |
| 11/29/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$3,000.00 | | $72,839.17 |
| 11/30/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | | $5,848.35 | $78,687.52 |
| 11/30/2023 | shopify        TRANSFER JLM COUTURE INC ST-D1O8S0D5B9S4 | | $544.56 | $79,232.08 |
| 11/30/2023 | CHECK #1590 | -$60,000.00 | | $19,232.08 |
| 11/30/2023 | CHECK #1591 | -$10,000.00 | | $9,232.08 |
| 11/30/2023 | Ending Balance | | | $9,232.08 |

# **Webster**Bank

## ANALYZED BUSINESS CHECKING - XXXXXX9962 (continued)

### Debits

| Date | Description | Amount |
|------|-------------|--------|
| 11/01/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$3,500.00 |
| 11/02/2023 | AUTHNET GATEWAY  BILLING JLM COUTURE INC. XXXXX5103 | -$104.15 |
| 11/02/2023 | shopify        TRANSFER JLM COUTURE INC ST-F7R5W6U8M1S1 | -$178.20 |
| 11/02/2023 | GLOBAL PAYMENTS  GLOBAL STL JLM COUTURE INC XXXXXXXXX0020 | -$14,037.34 |
| 11/06/2023 | MP Lincoln Park  PURCHASE Joe Murphy XXXXX2131 | -$675.00 |
| 11/08/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$2,000.00 |
| 11/10/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$250.00 |
| 11/15/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$3,000.00 |
| 11/20/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$4,000.00 |
| 11/21/2023 | MTHLY ANALYSIS CHARGE | -$65.36 |
| 11/29/2023 | WEB XFER TO DDA XXXXXXXX0544 | -$3,000.00 |

### Credits

| Date | Description | Amount |
|------|-------------|--------|
| 11/01/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $9,137.24 |
| 11/01/2023 | shopify        TRANSFER JLM COUTURE INC ST-J9N5K5D1J8X0 | $13.32 |
| 11/02/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $25,543.33 |
| 11/03/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $3,780.00 |
| 11/03/2023 | shopify        TRANSFER JLM COUTURE INC ST-T8K0A4Z0X8P4 | $103.34 |
| 11/06/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $41,295.69 |
| 11/06/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $10,798.38 |
| 11/06/2023 | shopify        TRANSFER JLM COUTURE INC ST-T6L9O5K8U0R8 | $83.44 |
| 11/08/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $9,180.14 |
| 11/09/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $12,856.69 |
| 11/10/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $17,514.53 |
| 11/10/2023 | shopify        TRANSFER JLM COUTURE INC ST-P3F6U6H8D4L3 | $1,143.96 |
| 11/13/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $12,928.96 |
| 11/13/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $2,829.07 |
| 11/13/2023 | shopify        TRANSFER JLM COUTURE INC ST-S2R0P7F3M0J2 | $285.66 |
| 11/14/2023 | shopify        TRANSFER JLM COUTURE INC ST-E6A8C9W3G5K9 | $511.50 |
| 11/15/2023 | shopify        TRANSFER JLM COUTURE INC ST-M2L6V3J4I0K0 | $278.05 |
| 11/16/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $3,611.08 |
| 11/16/2023 | shopify        TRANSFER JLM COUTURE INC ST-Z7F2V2B4L7T2 | $301.00 |
| 11/17/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $8,381.92 |
| 11/20/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $19,688.48 |
| 11/20/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $5,101.49 |
| 11/21/2023 | shopify        TRANSFER JLM COUTURE INC ST-W3W4X6D6A8D6 | $346.88 |
| 11/22/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $40,044.75 |

**WebsterBank**

# November 2023

## ANALYZED BUSINESS CHECKING - XXXXXX9962 (continued)

### Credits (continued)

| Date | Description | Amount |
|------|-------------|--------|
| 11/22/2023 | shopify        TRANSFER JLM COUTURE INC ST-O6S6J5H0I0Z9 | $210.95 |
| 11/24/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $34,565.66 |
| 11/24/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $27,723.08 |
| 11/24/2023 | shopify        TRANSFER JLM COUTURE INC ST-W0V3L5D5P2P7 | $33.44 |
| 11/28/2023 | shopify        TRANSFER JLM COUTURE INC ST-G2D7Y7R8G6Q6 | $4,502.84 |
| 11/29/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $14,237.31 |
| 11/29/2023 | shopify        TRANSFER JLM COUTURE INC ST-K5C5P7D4K8O0 | $655.12 |
| 11/30/2023 | GLOBAL PAYMENTS  GLOBAL DEP JLM COUTURE INC XXXXXXXXX0020 | $5,848.35 |
| 11/30/2023 | shopify        TRANSFER JLM COUTURE INC ST-D1O8S0D5B9S4 | $544.56 |

### Checks Cleared

| Check Number | Check Date | Check Amount | Check Number | Check Date | Check Amount |
|--------------|------------|--------------|--------------|------------|--------------|
| 1568 | 11/08/2023 | $40,000.00 | 1584 | 11/09/2023 | $20,000.00 |
| 1569 | 11/10/2023 | $10,000.00 | 1585 | 11/28/2023 | $50,000.00 |
| 1570 | 11/14/2023 | $30,000.00 | 1589* | 11/21/2023 | $35,000.00 |
| 1579* | 11/01/2023 | $4,000.00 | 1590 | 11/30/2023 | $60,000.00 |
| 1581* | 11/01/2023 | $50,000.00 | 1591 | 11/30/2023 | $10,000.00 |
| 1582 | 11/02/2023 | $25,000.00 | 99324276* | 11/14/2023 | $17.85 |
| 1583 | 11/06/2023 | $15,000.00 | | | |

\* Indicates skipped check number

### Daily Balances

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 10/31/2023 | $74,979.77 | 11/10/2023 | $21,685.14 | 11/21/2023 | $3,866.02 |
| 11/01/2023 | $26,630.33 | 11/13/2023 | $37,728.83 | 11/22/2023 | $44,121.72 |
| 11/02/2023 | $12,853.97 | 11/14/2023 | $8,222.48 | 11/24/2023 | $106,443.90 |
| 11/03/2023 | $16,737.31 | 11/15/2023 | $5,500.53 | 11/28/2023 | $60,946.74 |
| 11/06/2023 | $53,239.82 | 11/16/2023 | $9,412.61 | 11/29/2023 | $72,839.17 |
| 11/08/2023 | $20,419.96 | 11/17/2023 | $17,794.53 | 11/30/2023 | $9,232.08 |
| 11/09/2023 | $13,276.65 | 11/20/2023 | $38,584.50 | | |

### Overdraft and Returned Item Fees

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Returned Item Fees | $0.00 | $0.00 |
| Total Overdraft Fees | $0.00 | $0.00 |

# Commercial Business MM Savings

November 30, 2023 ■ Page 1 of 4



JLM COUTURE INC
DEBTOR IN POSSESSION
CH11 CASE #23-11659 (DE)
225 W 37TH ST
5TH FLOOR
NEW YORK NY 10018-5703

## Questions?

Call your Customer Service Officer or Client Services

**1-800-AT WELLS**  (1-800-289-3557)

5:00 AM TO 6:00 PM Pacific Time Monday - Friday

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (348)
P.O. Box 6995
Portland, OR  97228-6995

## Your Business and Wells Fargo

Visit wellsfargo.com/digitalbusinessresources to explore tours, articles, infographics, and other resources on the topics of money movement, account management and monitoring, security and fraud prevention, and more.

**Tips on wiring money**

Wiring money is just like sending cash. Help protect yourself by knowing how to spot the signs of a scam. Red flags include pressure to send right away, investments that promise high returns, unexpected requests from impersonators posing as well-known organizations, and last-minute changes to established wire instructions. Consider consulting a banker before you wire money.

**Learn more at wellsfargo.com/stopwirescams**

## Statement period activity summary

| | |
|---|---|
| Beginning balance on 11/1 | $1,555.33 |
| Deposits/Credits | 0.19 |
| Withdrawals/Debits | - 0.00 |
| **Ending balance on 11/30** | **$1,555.52** |

Account number: ██████2686

**JLM COUTURE INC**
**DEBTOR IN POSSESSION**
**CH11 CASE #23-11659 (DE)**

*NEW York account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  026012881

For Wire Transfers use
Routing Number (RTN):  121000248



## Interest summary

| | |
|---|---|
| Interest paid this statement | $0.19 |
| Average collected balance | $1,555.33 |
| Annual percentage yield earned | 0.15% |
| Interest earned this statement period | $0.19 |
| Interest paid this year | $35.67 |

## Transaction history

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|
| 11/30 | Interest Payment | 0.19 | | 1,555.52 |
| **Ending balance on 11/30** | | | | **1,555.52** |
| **Totals** | | **$0.19** | **$0.00** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted.  If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the disclosures applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 11/01/2023 - 11/30/2023 | Standard monthly service fee $6.00 | You paid $0.00 |
|---|---|---|
| **How to avoid the monthly service fee** | Minimum required | This fee period |
| Have any **ONE** of the following each fee period | | |
| • Average collected balance | $500.00 | $1,555.00 ☑ |

DH/D3

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Deposited Items | 0 | 20 | 0 | 0.50 | 0.00 |
| Cash Deposited ($) | 0 | 5,000 | 0 | 0.0030 | 0.00 |
| **Total service charges** | | | | | **$0.00** |

Case 23-11659-JKS    Doc 91    Filed 12/21/23    Page 38 of 47



 **IMPORTANT ACCOUNT INFORMATION**

---

**Limits to your Card**

Effective on or after August 28, 2023 in Selected Terms and Conditions for
- Wells Fargo Consumer debit and ATM cards
- Wells Fargo Campus debit and ATM cards
- Wells Fargo Business debit, ATM, and deposit cards
- Wells Fargo Advisors debit cards

In the section titled "Using your card," under subsection titled "Daily limits and funds available for using your Card" bullet titled "The limits for your Card" is deleted and replaced with:

The limits for your Card: We provide you your daily ATM withdrawal and purchase limits when you receive your Card. You can confirm your Card's daily limits by signing on to Wells Fargo Online or the Wells Fargo Mobile® app, or calling us at the number listed in the "Contact Us" section. Note: For security reasons there may be additional limits on the amount, number, or type of transactions you can make using your Card, including the geographic location of the ATM or merchant.

Please see the Wells Fargo debit and ATM card terms and conditions applicable to your card, which can be found at www.wellsfargo.com/debit-card/terms-and-conditions.

---

NEW YORK CITY CUSTOMERS ONLY -- Pursuant to New York City regulations, we request that you contact us at 1-800-TO WELLS (1-800-869-3557) to share your language preference.

**WELLS FARGO**

## Important Information You Should Know

- **To dispute or report inaccuracies in information we have furnished to a Consumer Reporting Agency about your accounts:** Wells Fargo Bank, N.A. may furnish information about deposit accounts to Early Warning Services. You have the right to dispute the accuracy of information that we have furnished to a consumer reporting agency by writing to us at Overdraft Collection and Recovery, P.O. Box 5058, Portland, OR 97208-5058. Include with the dispute the following information as available: Full name (First, Middle, Last), Complete address, The account number or other information to identify the account being disputed, Last four digits of your social security number, Date of Birth. Please describe the specific information that is inaccurate or in dispute and the basis for the dispute along with supporting documentation. If you believe the information furnished is the result of identity theft, please provide us with an identity theft report.

- **In case of errors or questions about other transactions (that are not electronic transfers):** Promptly review your account statement within 30 days after we made it available to you, and notify us of any errors.

- **If your account has a negative balance:** Please note that an account overdraft that is not resolved 60 days from the date the account first became overdrawn will result in closure and charge off of your account. In this event, it is important that you make arrangements to redirect recurring deposits and payments to another account. The closure will be reported to Early Warning Services. We reserve the right to close and/or charge-off your account at an earlier date, as permitted by law. The laws of some states require us to inform you that this communication is an attempt to collect a debt and that any information obtained will be used for that purpose.

- To download and print an Account Balance Calculation Worksheet(PDF) to help you balance your checking or savings account, enter www.wellsfargo.com/balancemyaccount in your browser on either your computer or mobile device.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**
**A.** The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**
**B.** Any deposits listed in your                $ _____
register or transfers into               $ _____
your account which are not               $ _____
shown on your statement.              + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **TOTAL** $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
.                                      **TOTAL** $ _____

**SUBTRACT**
**C.** The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        | **Total amount** $ |        |

©2021 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Commercial Business Checking

Account number: ▮▮▮▮4383 ■ November 1, 2023 - November 30, 2023 ■ Page 1 of 5



JLM COUTURE INC
DEBTOR IN POSSESSION
CH11 CAES #23-11659 (DE)
225 W 37TH ST
5TH FLOOR
NEW YORK NY 10018-5703

### Questions?

Call your Customer Service Officer or Client Services
**1-800-AT WELLS** (1-800-289-3557)
5:00 AM TO 6:00 PM Pacific Time Monday - Friday

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (348)
P.O. Box 6995
Portland, OR 97228-6995

## Account summary

### Commercial Business Checking

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| ▮▮▮▮4383 | $63,045.18 | $395,310.52 | -$364,563.87 | $93,791.83 |

## Credits

**Electronic deposits/bank credits**

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 11/01 | 180.95 | Desktop Check Deposit |
| | 11/01 | 25,000.00 | Online Transfer 4458 to 4383 Ref #Bb0L6Ymkcb |
| | 11/03 | 15,000.00 | Online Transfer 4458 to 4383 Ref #Bb0L7Q2Gcx |
| | 11/06 | 1,000.00 | ACH Returns - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/07 | 25,000.00 | Online Transfer 4458 to 4383 Ref #Bb0L8Tnlbr |
| | 11/08 | 4,000.00 | Paypal Transfer 231108 1030506158145 Jlm Couture Inc |
| | 11/08 | 9,107.30 | Gamberdella, LLC Bill.Com 016Kgfvja358Si6 Gamberdella, LLC Bill.Com 016Kgfvja358Si6 Multipl |
| | 11/08 | 35,000.00 | Online Transfer 4458 to 4383 Ref #Bb0L9336Fr |
| | 11/09 | 1,605.00 | Gamberdella, LLC Bill.Com 016Zbfcsg35Aozh Gamberdella, LLC Bill.Com 016Zbfcsg35Aozh Multipl |
| | 11/13 | 20.00 | WT Fed#02783 Cathay United Bank /Org=Coronation.Lace.Bridal.CO. Srf# S0633170D1DE01 Trn#231113012775 Rfb# |
| | 11/13 | 3,063.83 | WT Fed#00978 Flagstar Bank, NA /Org=Kleinfeld Bridal Corp Srf# 0206 Trn#231113067267 Rfb# |
| | 11/13 | 12,998.77 | Desktop Check Deposit |
| | 11/13 | 30,000.00 | Online Transfer 4458 to 4383 Ref #Bb0Lbhnwvv |
| | 11/14 | 1,684.81 | Desktop Check Deposit |
| | 11/16 | 2,000.00 | WT Fed#06938 Banco Monex S.A. I /Org=Tulle Mille SA DE Cv Srf# 2023111600290950 Trn#231116171447 Rfb# 99883709 |
| | 11/16 | 2,401.72 | Desktop Check Deposit |
| | 11/16 | 15,000.00 | Online Transfer Ref #Bb0Lcbnmx8 From 7269674458 on 11/16/2023 0915 Am |
| | 11/20 | 10,000.00 | Online Transfer 4458 to 4383 Ref #Bb0Ldhvsny |
| | 11/20 | 11,588.94 | Desktop Check Deposit |
| | 11/20 | 15,000.00 | Online Transfer 4458 to 4383 Ref #Bb0Lddqc9B |



### Electronic deposits/bank credits (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 11/21 | 30,000.00 | Online Transfer Ref #Bb0Ldqzsyc From 7269674458 on 11/21/2023 1017 Am |
| | 11/22 | 25.00 | WT Fed#04995 Emirates Nbd Bank /Org=Promariage Trading LLC Srf# 2023112002055388 Trn#231122026169 Rfb# Ephcop32602M4Ceb |
| | 11/27 | 15,000.00 | Online Transfer 4458 to 4383 Ref #Bb0Lg8Tqzk |
| | 11/28 | 9,027.45 | Desktop Check Deposit |
| | 11/28 | 55,000.00 | Online Transfer 4458 to 4383 Ref #Bb0Lgmm595 |
| | 11/29 | 1,500.00 | Paypal Transfer 231129 1030945653079 Jlm Couture Inc |
| | 11/29 | 5,106.75 | Gamberdella, LLC Bill.Com 016Epccgm35Zdlo Gamberdella, LLC Bill.Com 016Epccgm35Zdlo Multipl |
| | 11/29 | 60,000.00 | Desktop Check Deposit |
| | | **$395,310.52** | **Total electronic deposits/bank credits** |
| | | **$395,310.52** | **Total credits** |

## Debits

### Electronic debits/bank debits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 11/01 | 3,392.00 | WT 231101-159196 Hongkong and Shangh /Bnf=Wenliang Trading Limited Srf# Gw00000062108781 Trn#231101159196 Rfb# 2035 |
| | 11/01 | 4,982.80 | WT 231101-159206 Hongkong and Shangh /Bnf=Wenliang Trading Limited Srf# Gw00000062108954 Trn#231101159206 Rfb# 2036 |
| | 11/01 | 33,050.26 | WT Fed#07252 Jpmorgan Chase Ban /Ftr/Bnf=Paychex, Inc. Srf# Secured Payroll Trn#231101150704 Rfb# Client #14103896 |
| | 11/01 | 87.50 | Metlife Payment 231101 50001823446 Joseph L Murphy |
| | 11/01 | 576.62 | Brighthouse Fin Payment 231101 50001813519 Joseph L Murphy |
| | 11/01 | 692.56 | Metlife Payment 231101 50001814867 Joseph L Murphy |
| | 11/02 | 1,000.00 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/02 | 1,035.00 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/02 | 1,357.17 | WT 231102-108940 Bank of China /Bnf=Dongying Qiu Srf# Gw00000062135887 Trn#231102108940 Rfb# 2037 |
| | 11/02 | 18,154.75 | WT 231102-141789 Hongkong and Shangh /Bnf=Knt Limited Srf# Gw00000062143493 Trn#231102141789 Rfb# 2038 |
| | 11/03 | 1,500.00 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/03 | 5,171.56 | Federal Express Debit 231102 Epa71849604 Jennifer Ricketts |
| | 11/06 | 5,000.00 | WT 231106-051528 Bank of America, N. /Bnf=Exenta, Inc Srf# Gw00000062189265 Trn#231106051528 Rfb# 2039 |
| | 11/06 | 654.00 < | Business to Business ACH Debit - Farmers Market S 3109206672 231103 Susan Keng |
| | 11/07 | 1,968.00 | WT 231107-132998 Taipei Fubon Commer /Bnf=Ven MI Amor International CO.,Ltd Srf# Gw00000062233180 Trn#231107132998 Rfb# 2041 |
| | 11/07 | 5,000.00 | WT Fed#07472 Citadel Federal CR /Ftr/Bnf=William Andrew Homony Srf# Trustee Trn#231107073139 Rfb# 2040 |
| | 11/07 | 39.53 < | Business to Business ACH Debit - Upsbillctr Payment 231106 0000F5D083 Log IN to The UPS Billing Center for Payment Deta |
| | 11/07 | 3,378.21 < | Business to Business ACH Debit - The Hartford Ntclbiivrc 16247077 Jlm Couture |
| | 11/07 | 4,843.60 < | Business to Business ACH Debit - Ipfs866-223-4478 Ipfspmtnjn D35691 Jlm Couture, Inc. |
| | 11/08 | 1,000.00 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

Account number: ████4383 ■ November 1, 2023 - November 30, 2023 ■ Page 3 of 5



### Electronic debits/bank debits (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 11/08 | 1,627.33 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/08 | 5,004.91 | WT 231108-153999 Hongkong and Shangh /Bnf=Wenliang Trading Limited Srf# Gw00000062264261 Trn#231108153999 Rfb# 2043 |
| | 11/08 | 31,545.71 | WT Fed#04866 Jpmorgan Chase Ban /Ftr/Bnf=Paychex, Inc. Srf# Secured Payroll Trn#231108130968 Rfb# Client #14103896 |
| | 11/08 | 122.29 < | Business to Business ACH Debit - Verizon Wireless Payments 231108 078235598400001 0000000078235598400001 |
| | 11/09 | 900.00 | WT Fed#04528 Jpmorgan Chase Ban /Ftr/Bnf=Zahrah International NJ Inc. Srf# Gw00000062291865 Trn#231109141222 Rfb# 2044 |
| | 11/09 | 1,500.00 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/09 | 105.37 < | Business to Business ACH Debit - Verizon Wireless Payments 231109 028235598500001 0000000028235598500001 |
| | 11/10 | 838.25 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/10 | 240.00 < | Business to Business ACH Debit - Pilot Fiber NY L ACH Debit 231110 9018786813 Jlm Couture |
| | 11/13 | 1,360.07 | Client Analysis Srvc Chrg 231110 Svc Chge 1023 000007269674383 |
| | 11/13 | 4,096.50 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/13 | 4,532.50 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/14 | 350.00 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/14 | 3,730.10 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/14 | 12.00 < | Business to Business ACH Debit - 1st Bankcard Ctr Online Pmt 231114 CC0008633884 0000Jlm Couture |
| | 11/14 | 17.05 < | Business to Business ACH Debit - 1st Bankcard Ctr Online Pmt 231114 CC0008633882 0000Jlm Couture |
| | 11/14 | 1,000.00 < | Business to Business ACH Debit - 1st Bankcard Ctr Online Pmt 231114 CC0008633889 0000Jlm Couture |
| | 11/15 | 31,384.23 | WT Fed#08475 Jpmorgan Chase Ban /Ftr/Bnf=Paychex, Inc. Srf# Secured Payroll Trn#231115175597 Rfb# Client #14103896 |
| | 11/15 | 731.00 < | Business to Business ACH Debit - Sba Loan Payment 231114 0000 Jlm Couture |
| | 11/16 | 300.00 | Withdrawal Made In A Branch/Store |
| | 11/16 | 2,102.52 < | Business to Business ACH Debit - Upsbillctr Payment 231115 0000F5D083 Log IN to The UPS Billing Center for Payment Deta |
| | 11/17 | 838.25 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/17 | 9,835.00 | WT 231117-137756 Taipei Fubon Commer /Bnf=Ven MI Amor International CO.,Ltd Srf# Gw00000062466512 Trn#231117137756 Rfb# 2046 |
| | 11/20 | 1,595.39 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/20 | 16,710.32 | WT 231120-161054 Hongkong and Shangh /Bnf=Knt Limited Srf# Gw00000062501419 Trn#231120161054 Rfb# 2047 |
| | 11/20 | 505.78 | NEW York Athleti Payment 231117 999000001029208 Josephl.Murphy |
| | 11/21 | 627.50 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/21 | 31,337.65 | WT Fed#05589 Jpmorgan Chase Ban /Ftr/Bnf=Paychex, Inc. Srf# Secured Payroll Trn#231121182906 Rfb# Client #14103896 |
| | 11/21 | 787.52 < | Business to Business ACH Debit - Upsbillctr Payment 231120 0000F5D083 Log IN to The UPS Billing Center for Payment Deta |
| | 11/21 | 2,372.75 < | Business to Business ACH Debit - Phila Ins CO Ins IN 201123 83181733 83181733 |
| | 11/27 | 261.26 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/27 | 1,725.00 | WT Fed#06517 Jpmorgan Chase Ban /Ftr/Bnf=Zahrah International NJ Inc. Srf# Gw00000062619997 Trn#231127155868 Rfb# 2049 |
| | 11/27 | 2,500.00 | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.



### Electronic debits/bank debits (continued)

| Effective date | Posted date | Amount | | Transaction detail |
|---|---|---|---|---|
| | 11/27 | 14,089.20 | < | Business to Business ACH Debit - United Healthcar EDI Paymts 138154859457 1*231127101~ |
| | 11/28 | 1,500.00 | | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/28 | 5,359.87 | | Nysif Web_Pay Nov 23 01671981110223 Jennifer Ricketts |
| | 11/29 | 33,311.78 | | WT Fed#03538 Jpmorgan Chase Ban /Ftr/Bnf=Paychex, Inc. Srf# Secured Payroll Trn#231129120550 Rfb# Client #14103896 |
| | 11/29 | 240.00 | < | Business to Business ACH Debit - Pilot Fiber NY L ACH Debit 231129 9018973410 Jlm Couture |
| | 11/30 | 1,500.00 | | ACH Prep Origintn - Jlm Couture, Inc - File 7878782339 Coid 1133337553 |
| | 11/30 | 4,519.00 | | WT 231130-211790 Taipei Fubon Commer /Bnf=Ven MI Amor International CO.,Ltd Srf# Gw00000063003863 Trn#231130211790 Rfb# 2051 |
| | 11/30 | 2,060.41 | < | Business to Business ACH Debit - Upsbillctr Payment 231129 0000F5D083 Log IN to The UPS Billing Center for Payment Deta |
| | | **$316,060.07** | | **Total electronic debits/bank debits** |

< **Business to Business ACH:** If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.

### Checks paid

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 26813 | 850.00 | 11/01 | 26828 | 10,634.00 | 11/08 | 26833 | 1,609.15 | 11/08 |
| 26818* | 5,399.00 | 11/03 | 26829 | 720.00 | 11/14 | 26834 | 2,250.00 | 11/09 |
| 26823* | 750.00 | 11/09 | 26830 | 720.00 | 11/29 | 26835 | 6,150.00 | 11/10 |
| 26825* | 1,211.00 | 11/21 | 26831 | 3,277.68 | 11/14 | 26836 | 12,080.00 | 11/20 |
| 26827* | 909.00 | 11/10 | 26832 | 1,943.97 | 11/08 | | | |
| | | | **$48,503.80** | **Total checks paid** | | | | |

* Gap in check sequence.

| | **$364,563.87** | **Total debits** |
|---|---|---|

## Daily ledger balance summary

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 10/31 | 63,045.18 | 11/09 | 21,813.14 | 11/20 | 22,255.57 |
| 11/01 | 44,594.39 | 11/10 | 13,675.89 | 11/21 | 15,919.15 |
| 11/02 | 23,047.47 | 11/13 | 49,769.42 | 11/22 | 15,944.15 |
| 11/03 | 25,976.91 | 11/14 | 42,347.40 | 11/27 | 12,368.69 |
| 11/06 | 21,322.91 | 11/15 | 10,232.17 | 11/28 | 69,536.27 |
| 11/07 | 31,093.57 | 11/16 | 27,231.37 | 11/29 | 101,871.24 |
| 11/08 | 25,713.51 | 11/17 | 16,558.12 | 11/30 | 93,791.83 |
| | **Average daily ledger balance** | | **$28,708.72** | | |

## Limits to your Card

Effective on or after August 28, 2023 in Selected Terms and Conditions for

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.



- Wells Fargo Consumer debit and ATM cards
- Wells Fargo Campus debit and ATM cards
- Wells Fargo Business debit, ATM, and deposit cards
- Wells Fargo Advisors debit cards

In the section titled "Using your card," under subsection titled "Daily limits and funds available for using your Card" bullet titled "The limits for your Card" is deleted and replaced with:

The limits for your Card: We provide you your daily ATM withdrawal and purchase limits when you receive your Card. You can confirm your Card's daily limits by signing on to Wells Fargo Online or the Wells Fargo Mobile® app, or calling us at the number listed in the "Contact Us" section. Note: For security reasons there may be additional limits on the amount, number, or type of transactions you can make using your Card, including the geographic location of the ATM or merchant.

Please see the Wells Fargo debit and ATM card terms and conditions applicable to your card, which can be found at www.wellsfargo.com/debit-card/terms-and-conditions.

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

# Commercial Business Checking

Account number: ████4458 ■ November 1, 2023 - November 30, 2023 ■ Page 1 of 2



JLM COUTURE INC
DEBTOR IN POSSESSION
CH11 CASE #23-11659 (DE)
225 W 37TH ST
5TH FLOOR
NEW YORK NY 10018-5703

**Questions?**

Call your Customer Service Officer or Client Services
**1-800-AT WELLS** (1-800-289-3557)
5:00 AM TO 6:00 PM Pacific Time Monday - Friday

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (348)
P.O. Box 6995
Portland, OR  97228-6995

## Account summary

### Commercial Business Checking

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| 7269674458 | $200,000.00 | $215,000.00 | -$270,000.00 | $145,000.00 |

## Credits
### Electronic deposits/bank credits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 11/01 | 25,000.00 | Desktop Check Deposit |
| | 11/03 | 15,000.00 | Desktop Check Deposit |
| | 11/07 | 40,000.00 | Desktop Check Deposit |
| | 11/08 | 20,000.00 | Desktop Check Deposit |
| | 11/13 | 30,000.00 | Desktop Check Deposit |
| | 11/20 | 35,000.00 | Desktop Check Deposit |
| | 11/27 | 50,000.00 | Desktop Check Deposit |
| | | **$215,000.00** | **Total electronic deposits/bank credits** |
| | | **$215,000.00** | **Total credits** |

## Debits
### Electronic debits/bank debits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 11/01 | 25,000.00 | Online Transfer 4458 to 4383 Ref #Bb0L6Ymkcb |
| | 11/03 | 15,000.00 | Online Transfer 4458 to 4383 Ref #Bb0L7Q2Gcx |
| | 11/07 | 25,000.00 | Online Transfer 4458 to 4383 Ref #Bb0L8Tnlbr |
| | 11/08 | 35,000.00 | Online Transfer 4458 to 4383 Ref #Bb0L9336Fr |
| | 11/13 | 30,000.00 | Online Transfer 4458 to 4383 Ref #Bb0Lbhnwvv |
| | 11/16 | 15,000.00 | Online Transfer Ref #Bb0Lcbnmx8 to 7269674383 on 11/16/2023 0915 Am |
| | 11/20 | 10,000.00 | Online Transfer 4458 to 4383 Ref #Bb0Ldhvsny |
| | 11/20 | 15,000.00 | Online Transfer 4458 to 4383 Ref #Bb0Lddqc9B |
| | 11/21 | 30,000.00 | Online Transfer Ref #Bb0Ldqzsyc to 7269674383 on 11/21/2023 1017 Am |

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

Account number: ████████4458 ■ November 1, 2023 - November 30, 2023 ■ Page 2 of 2



### *Electronic debits/bank debits* (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 11/27 | 15,000.00 | Online Transfer 4458 to 4383 Ref #Bb0Lg8Tqzk |
| | 11/28 | 55,000.00 | Online Transfer 4458 to 4383 Ref #Bb0Lgmm595 |
| | | **$270,000.00** | **Total electronic debits/bank debits** |
| | | **$270,000.00** | **Total debits** |

## Daily ledger balance summary

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 10/31 | 200,000.00 | 11/08 | 200,000.00 | 11/21 | 165,000.00 |
| 11/01 | 200,000.00 | 11/13 | 200,000.00 | 11/27 | 200,000.00 |
| 11/03 | 200,000.00 | 11/16 | 185,000.00 | 11/28 | 145,000.00 |
| 11/07 | 215,000.00 | 11/20 | 195,000.00 | | |

**Average daily ledger balance**    **$185,833.33**

---

**Limits to your Card**

Effective on or after August 28, 2023 in Selected Terms and Conditions for
- Wells Fargo Consumer debit and ATM cards
- Wells Fargo Campus debit and ATM cards
- Wells Fargo Business debit, ATM, and deposit cards
- Wells Fargo Advisors debit cards

In the section titled "Using your card," under subsection titled "Daily limits and funds available for using your Card" bullet titled "The limits for your Card" is deleted and replaced with:

The limits for your Card: We provide you your daily ATM withdrawal and purchase limits when you receive your Card. You can confirm your Card's daily limits by signing on to Wells Fargo Online or the Wells Fargo Mobile® app, or calling us at the number listed in the "Contact Us" section. Note: For security reasons there may be additional limits on the amount, number, or type of transactions you can make using your Card, including the geographic location of the ATM or merchant.

Please see the Wells Fargo debit and ATM card terms and conditions applicable to your card, which can be found at www.wellsfargo.com/debit-card/terms-and-conditions.

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

# Commercial Business Checking

Account number: ████████9889 ∎ November 1, 2023 - November 30, 2023 ∎ Page 1 of 1



JLM COUTURE, INC.
225 W 37TH ST
5TH FLOOR
NEW YORK NY 10018-5703

### Questions?

Call your Customer Service Officer or Client Services
**1-800-AT WELLS** (1-800-289-3557)
5:00 AM TO 6:00 PM Pacific Time Monday - Friday

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (348)
P.O. Box 6995
Portland, OR 97228-6995

## Account summary

### *Commercial Business Checking*

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| 3612359889 | $3,000.00 | $0.00 | $0.00 | $3,000.00 |

## Daily ledger balance summary

| Date | Balance |
|---|---|
| 10/31 | 3,000.00 |

**Average daily ledger balance**      **$3,000.00**

---

### Limits to your Card

Effective on or after August 28, 2023 in Selected Terms and Conditions for
- Wells Fargo Consumer debit and ATM cards
- Wells Fargo Campus debit and ATM cards
- Wells Fargo Business debit, ATM, and deposit cards
- Wells Fargo Advisors debit cards

In the section titled "Using your card," under subsection titled "Daily limits and funds available for using your Card" bullet titled "The limits for your Card" is deleted and replaced with:

The limits for your Card: We provide you your daily ATM withdrawal and purchase limits when you receive your Card. You can confirm your Card's daily limits by signing on to Wells Fargo Online or the Wells Fargo Mobile® app, or calling us at the number listed in the "Contact Us" section. Note: For security reasons there may be additional limits on the amount, number, or type of transactions you can make using your Card, including the geographic location of the ATM or merchant.

Please see the Wells Fargo debit and ATM card terms and conditions applicable to your card, which can be found at www.wellsfargo.com/debit-card/terms-and-conditions.

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

# Exhibit B

| | | Q2 2024 | Q3 2024 | Q4 2024 | Q1 2025 | Q2 2025 | Q3 2025 | Q4 2025 | Q1 2026 | Q2 2026 | Q3 2026 | Q4 2026 | Q1 2027 | Q2 2027 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | *REVENUES* | 1,239,300 | 1,858,950 | 2,065,500 | 1,721,250 | 2,620,114 | 2,357,011 | 2,309,938 | 1,622,937 | 3,268,526 | 2,940,312 | 2,881,589 | 2,024,572 | 3,386,054 | $30,296,054 |
| | *Wholesale Cash Collection* | 1,081,909 | 1,606,133 | 1,784,592 | 1,471,669 | 2,193,036 | 1,972,818 | 1,912,629 | 1,343,792 | 2,647,506 | 2,328,727 | 2,282,219 | 1,567,019 | 2,878,146 | $25,070,194 |
| | *Shopify Cash Collection* | 37,179 | 74,358 | 82,620 | 86,063 | 183,408 | 164,991 | 184,795 | 129,835 | 326,853 | 352,837 | 345,791 | 283,440 | 507,908 | $2,760,077 |
| | *Cash Infusion (Convertible debt, asset base lending)* | $0 | $0 | $0 | $1,000,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $1,000,000 |
| **EXPENSES** | | | | | | | | | | | | | | | |
| | Secured Lending (SBA) | 2,146 | 2,146 | 2,146 | 2,146 | 2,146 | 2,146 | 2,146 | 2,146 | 2,146 | 2,146 | 2,146 | 2,146 | 2,146 | $27,899 |
| | Credit Card Payments | 13,082 | 19,622 | 21,803 | 18,169 | 27,657 | 24,880 | 24,383 | 17,131 | 34,501 | 31,037 | 30,417 | 21,370 | 35,742 | $319,792 |
| | Credit Card Processing | 26,163 | 39,245 | 43,605 | 36,338 | 55,314 | 49,759 | 48,765 | 34,262 | 69,002 | 62,073 | 60,834 | 42,741 | 71,483 | $639,583 |
| | Rent & Utilities | 57,000 | 57,000 | 34,200 | 34,200 | 34,200 | 34,200 | 34,200 | 34,200 | 34,200 | 34,200 | 34,200 | 34,200 | 34,200 | $490,200 |
| | Payroll | 401,375 | 401,375 | 401,375 | 401,375 | 413,416 | 413,416 | 413,416 | 413,416 | 425,819 | 425,819 | 425,819 | 425,819 | 425,819 | $5,388,259 |
| | Interest on debt | - | - | - | - | 36,398 | 36,398 | 36,398 | 36,398 | 36,398 | 36,398 | 36,398 | 36,398 | 36,398 | $327,585 |
| **PRODUCTION** | Cost of Goods Sold (Raw Materials, Direct Labor & Finished Good | 654,075 | 981,113 | 1,090,125 | 908,438 | 1,382,838 | 1,243,978 | 1,219,134 | 856,550 | 1,725,056 | 1,551,831 | 1,520,839 | 1,068,524 | 1,787,084 | $15,989,584 |
| | Exenta | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | $211,250 |
| | Shipping | 83,787 | 125,681 | 139,646 | 116,371 | 177,142 | 159,354 | 156,172 | 109,724 | 220,980 | 198,790 | 194,820 | 136,878 | 228,926 | $2,048,273 |
| **FINANCIAL & LEGAL** | Auditor & Other Accounting Fees | 14,250 | 14,250 | 14,250 | 14,250 | 14,250 | 14,250 | 14,250 | 14,250 | 14,250 | 14,250 | 14,250 | 14,250 | 14,250 | $185,250 |
| | Lipsteinn | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | $91,000 |
| | Jenn Weinberg | 8,550 | 8,550 | 8,550 | 8,550 | 8,550 | 8,550 | 8,550 | 8,550 | 8,550 | 8,550 | 8,550 | 8,550 | 8,550 | $111,150 |
| | Kevin Mann | 19,000 | - | - | - | - | - | - | - | - | - | - | - | - | $19,000 |
| | Trustee Fee | 6,000 | - | - | - | - | - | - | - | - | - | - | - | - | $6,000 |
| | Adelman, Matz and other legal | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | $182,000 |
| **INSURANCE** | Oxford Health Insurance | 47,712 | 47,712 | 47,712 | 47,712 | 47,712 | 47,712 | 47,712 | 47,712 | 47,712 | 47,712 | 47,712 | 47,712 | 47,712 | $620,261 |
| | NYSIF | 3,420 | 3,420 | 3,420 | 3,420 | 3,420 | 3,420 | 3,420 | 3,420 | 3,420 | 3,420 | 3,420 | 3,420 | 3,420 | $44,460 |
| | Hartford | 9,628 | 9,628 | 9,628 | 9,628 | 9,628 | 9,628 | 9,628 | 9,628 | 9,628 | 9,628 | 9,628 | 9,628 | 9,628 | $125,163 |
| | PHLY | 6,762 | 6,762 | 6,762 | 6,762 | 6,762 | 6,762 | 6,762 | 6,762 | 6,762 | 6,762 | 6,762 | 6,762 | 6,762 | $87,910 |
| | IPFS | 13,790 | 13,790 | 13,790 | 13,790 | 13,790 | 13,790 | 13,790 | 13,790 | 13,790 | 13,790 | 13,790 | 13,790 | 13,790 | $179,270 |
| | Guardian | 2,470 | 2,470 | 2,470 | 2,470 | 2,470 | 2,470 | 2,470 | 2,470 | 2,470 | 2,470 | 2,470 | 2,470 | 2,470 | $32,110 |
| | Xeno Media | 7,125 | 7,125 | 7,125 | 7,125 | 7,125 | 7,125 | 7,125 | 7,125 | 7,125 | 7,125 | 7,125 | 7,125 | 7,125 | $92,625 |
| | Shopify | 3,705 | 3,705 | 3,705 | 3,705 | 3,705 | 3,705 | 3,705 | 3,705 | 3,705 | 3,705 | 3,705 | 3,705 | 3,705 | $48,165 |
| | Amazon Web Services | 5,700 | 5,700 | 5,700 | 5,700 | 5,700 | 5,700 | 5,700 | 5,700 | 5,700 | 5,700 | 5,700 | 5,700 | 5,700 | $74,100 |
| | Marketing | 46,133 | 57,533 | 114,533 | 116,756 | 168,056 | 96,806 | 96,806 | 96,806 | 215,556 | 144,306 | 144,306 | 120,556 | 200,000 | $1,618,150 |
| | IT, Wifi, & Phone | 22,800 | 22,800 | 22,800 | 22,800 | 22,800 | 22,800 | 22,800 | 22,800 | 22,800 | 22,800 | 22,800 | 22,800 | 22,800 | $296,400 |
| | Miscellaneous | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | $312,000 |
| | **Total Expense** | 1,515,923.86 | 1,890,877.27 | 2,054,595.08 | 1,840,954.29 | 2,504,329.40 | 2,268,099.84 | 2,238,582.31 | 1,807,796.12 | 2,970,820.67 | 2,693,762.84 | 2,656,940.46 | 2,095,795.57 | 3,028,961.35 | $29,567,439 |
| | **ENDING CASH BALANCE** | -$51,047.96 | -$261,434.44 | -$448,817.51 | $267,959.44 | $140,073.71 | $9,783.08 | -$131,375.68 | -$465,545.35 | -$462,006.98 | -$474,205.26 | -$503,136.45 | -$748,472.80 | -$391,379.83 | |
| | **DISPOSABLE INCOME/PRE-TAX** | -$276,623.86 | -$31,927.27 | $10,904.92 | -$119,704.29 | $115,784.89 | $88,911.41 | $71,355.52 | -$184,859.50 | $297,705.75 | $246,549.18 | $224,648.65 | -$71,223.12 | $357,092.98 | $728,615.26 |

Assumptions:
· JLM enters 2024 with $345,788 in cash
· Cash infusion / debt assumes 8% interest on ten year term
· Rent & Utilities are $11,400 monthly starting in Q3 2024
· Payroll has no attrition, and COLA increase of 3% annually for all staff in 2025 and 2026
· Raw Materials, Direct Labor & Finished Goods AND Shipping increase proportionate to revenues
· Q2 2024 JLM in 50 new stores
· More aggressive push to ecommerce starting in Q2 2024
· Introduction of new strategy "dress the wedding" along with new interactive online experience in Q3
· Introduction of new division in Q3 2024

# Exhibit C

# LIQUIDATION ANALYSIS FOR THE DEBTOR

## (FIRST AMENDED SUBCHAPTER V DEBTOR'S PLAN OF REORGANIZATION)

The Bankruptcy Code requires that each holder of an impaired Claim or Equity Interest either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. The first step in determining whether this test has been met is to determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case. The gross amount of cash available would be the sum of the proceeds from the disposition of the Debtor's assets and the cash held by the Debtor at the time of the commencement of the chapter 7 case. Such amount is reduced by the amount of any Claims secured by such assets, the costs and expenses of the liquidation, and such additional Administrative Expenses that may result from the termination of the Debtor's businesses and the use of chapter 7 for the purposes of liquidation. Any remaining net cash would be allocated to creditors and shareholders in strict priority in accordance with Section 726 of the Bankruptcy Code.

Set forth on the following pages is a Liquidation Analysis for JLM Couture, Inc. (the "Debtor"), assuming a hypothetical Chapter 7 liquidation in which a Court-appointed trustee liquidates the Company's assets. A general summary of the assumptions used in preparing this Liquidation Analysis follows.

## Estimate of Net Proceeds

Estimates were made of the cash proceeds that might be realized from the liquidation of the Debtor's assets. The chapter 7 Liquidation Period is assumed to commence on January 1, 2024 and to last 6 months following the appointment of a chapter 7 trustee for the Debtor. For purposes

of the analysis, the Debtor's balance sheets as of October 31, 2023 were used.  There can be no assurance that the liquidation would be completed in a limited time frame nor is there any assurance that the recoveries assigned to the assets would in fact be realized.  Under section 704 of the Bankruptcy Code, an appointed trustee must, among other duties, collect and convert the property of the estate as expeditiously as is compatible with the best interests of the parties-in-interest.  The Liquidation Analysis assumes that there would be pressure to complete the sales process within 6 months.  The Liquidation Period would allow the trustee to sell the Company's assets, wind-down operational activities, complete the claims reconciliation process and make distributions to parties-in-interest.  The need to convert property to cash so rapidly may have an adverse impact on the proceeds realized from the sale of the Debtor's assets.  Depending on actual circumstances, the Liquidation Period could be significantly longer, in which event, wind-down costs would increase and recoveries would likely decrease.  ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE COMPANY WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SET FORTH BELOW.

**Estimate of Costs**

The Debtor's cost of liquidation under chapter 7 would include fees payable to a chapter 7 trustee, as well as those fees which might be payable to attorneys and other professionals that such a trustee may engage.  Further costs of liquidation would include any obligations and unpaid expenses incurred by the Debtor until conclusion of their chapter 7 cases.

Additional Administrative Expenses would arise by reason of the breach or rejection of obligations incurred and executory contracts or leases entered into by the Debtor during the

Chapter 11 Case. It is possible that in a chapter 7 case, the wind-down expenses may be greater or less than the estimated amount. Such expenses are in part dependent on the length of time of the liquidation.

The wind-down costs in the Liquidation Analysis include operating expenses and other costs considered likely to be incurred during the Liquidation Period. Significant liquidation activities would include: (i) collection of accounts receivable, (ii) liquidation of inventory, (iii) negotiation for the sale of the Debtor's other assets, and (iv) negotiation for the sale of other tangible and intangible assets.

**Distribution of Net Proceeds Under Absolute Priority**

The foregoing types of chapter 7 Administrative Expenses that may arise in a liquidation case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to holders of unsecured Claims. Under the absolute priority rule, no junior creditor would receive any distribution until all senior creditors are paid in full. The Debtor believes that in a chapter 7 case, after taking account of the costs of the chapter 7 liquidation, secured creditors, as well as junior creditors with Administrative or Priority claims would receive a full recovery. General Unsecured Claims would receive a partial recover, while holders of any Equity Interest would receive no recovery.

The claim amounts reflected in the Liquidation Analysis are based on the Company's estimate of claims which are expected to be incurred as a result of the liquidation and the Company's estimate of claims which would exist as of January 1, 2024.

After consideration of the effects of a chapter 7 liquidation on the ultimate proceeds available for distribution to creditors, including (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in a bankruptcy and professional advisors to

such trustee, (ii) the erosion in value of assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" atmosphere that would likely prevail, and (iii) the substantial increase in Claims which would be satisfied on a prior basis, THE DEBTOR HAS DETERMINED THAT CONFIRMATION OF THE PLAN WILL PROVIDE EACH CREDITOR WITH A RECOVERY THAT IS NOT LESS THAN SUCH CREDITOR WOULD RECEIVE PURSUANT TO A LIQUIDATION OF THE DEBTOR UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.

### General Assumptions

The Liquidation Analysis reflects estimates of the proceeds that might be realized through the liquidation of the Debtor, in accordance with chapter 7 of the Bankruptcy Code. This analysis is based on the unaudited, estimated assets and liabilities as of October 31, 2023 and upon Debtor's information and belief.

The Liquidation Analysis is based upon a number of estimates and assumptions that, although developed by and considered reasonable by the management of the Debtor, are inherently subject to significant economic, business, governmental, regulatory, competitive uncertainties as well as other contingencies beyond the control of the Debtor or their management. The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtor were, in fact, to undergo such a liquidation, and actual results could vary materially and adversely from those contained herein.

The following is a summary of the major assumptions underlying the Debtor's Liquidation Analysis:

1.	This analysis assumes the conversion of the current chapter 11 case to a chapter 7 case with the liquidation of the Debtor's assets being finalized over a 6 month period.  A chapter 7 trustee would be either elected by creditors or appointed by the Bankruptcy Court to administer the estates.  The chapter 7 trustee is independent and would be entitled to make all of his or her own decisions regarding the liquidation of the estate, hiring of professionals, the pursuit of Claims or litigation, the payment of or objection to Claims, and the distribution of any ultimate dividend. The chapter 7 trustee would be compensated in accordance with section 326 of the Bankruptcy Code.

2.	The Liquidation Analysis utilizes the Debtor's unaudited financial statements as of October 31, 2023, and other figures estimated by management.  The Debtor do not believe that the assets and liabilities will materially change prior to the assumed liquidation date of January 1, 2024.

3.	This Liquidation Analysis assumes that all assets of the Debtor will be liquidated during the 6 month Liquidation Period.  Although the Debtor believes a 6 month Liquidation Period is sufficient to allow for an orderly transfer of operations to acquirers, there can be no assurances made that all assets will be completely liquidated during this time period.

4.	It is assumed that assets will be sold for cash or cash equivalents.

5.	It is assumed that all non-operating assets would be disposed of through sale, liquidation, and/or termination as appropriate.

6.	The amounts reflected in the Liquidation Analysis are based on the Debtor estimate of Administrative Expenses that are expected to be incurred as a result of the Liquidation and the Debtor's estimate of Claims which would exist as of October 31, 2023.

7.    The Liquidation Analysis assumes that six months will be required to liquidate the assets of the Debtor's estate.

### Hypothetical Liquidation Analysis

| Proceeds from Liquidation<br>($ thousands) | Notes | Book Value (Unaudited) | Estimated Recovery % | | Estimated Proceeds $ | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| **Assets:** | | | | | | |
| Cash and Cash Equivalents | A | 211 | 100.0% | 100.0% | 211 | 211 |
| Accounts Receivable | B | 170 | 30.0% | 60.0% | 51 | 102 |
| Inventory | C | 950 | 20.0% | 40.0% | 190 | 380 |
| Prepaids | D | 105 | 0.0% | 0.0% | 0 | 0 |
| Notes Receivable | E | 235 | 0.0% | 10.0% | 0 | 24 |
| Intangible Assets | F | 100 | 0.0% | 25.0% | 0 | 25 |
| Other Noncurrent Assets | G | 20,000 | 0.0% | 0.0% | 0 | 0 |
| | | | | | | |
| Total Proceeds Available for Distribution | | 21,771 | | | 530 | 742 |
| **Administrative Claims:** | | | | | | |
| Trustee Fees | H | | 3.0% | 3.0% | 16 | 22 |
| Trustee's Counsel | I | | 2.25% | 2.25% | 12 | 17 |
| Wind-Down Cost | J | | | | 20 | 30 |
| Contingency | | | | 1.0% | 5 | 7 |
| | | | | | | |
| Total Liquidation Expenses | | | | | 53 | 76 |
| | | | | | | |
| **Net Proceeds Available to Creditors** | | | | | $ 477 | 666 |

### Allocations of Proceeds

| | | | | | | |
|---|---|---|---|---|---|---|
| **Secured Claims:** | | | | | | |
| US Small Business Admin. claims | | 150 | 100.0% | 100.0% | 150 | 150 |
| | | | | | | |
| **Total Secured Claims** | | 150 | 100.0% | 100.0% | 150 | 150 |
| | | | | | | |
| **Net Proceeds Available for Priority and Unsecured Claims** | | | | | $ 327 | $ 516 |

| | | | | | |
|---|---|---|---|---|---|
| | | | | _____ | _____ |
| **Priority Claims:** | | | | | |
| Estimated Tax Claims | | 42 | 100.0% 100.0% | 42 | 42 |
| **Total Priority Claims** | | 42 | 100.0% 100.0% | 42 | 42 |
| **Net Proceeds Available for Unsecured Claims** | | | | $  285 | $  474 |
| **Unsecured Claims:** | K | 1,471 | | $  285 | $  474 |
| | | | | (19%) | (32%) |
| **Net Proceeds Available for Equity Claims** | | | | $  0 | $  0 |

---

## Notes to Chart

A.     Cash and Cash Equivalents – The Liquidation Analysis assumes no further cash would be generated from operations during the Chapter 7 cases for distribution.  It is assumed that the cash at the date of the actual liquidation would be substantially similar to the cash balance as of December 14, 2023.  The Debtor's cash is held in the bank accounts or escrow accounts and is assumed to be fully recoverable.

B.     Accounts Receivable, Net – The Debtor will retain ownership of the accounts receivable for all business segments.  For purposes of this analysis, management anticipates recovering between 30% and 60% of the net accounts receivable.  These percentages are based upon a review of the detailed aging balances and management's assessment of the potential recoverability for these receivables based on payor-mix and the days outstanding of these receivables.

C.     Inventory – Inventory consists of raw, work-in-progress and finished goods.  For purposes of this analysis, management anticipates recovering between 20% and 40% of the

inventory. The recovery range is based primarily on an inventory appraisal report as of October 31, 2023, with appropriate discounts applied to the range.

D. Prepaid Expenses – Prepaid expenses consist primarily of prepaid insurance, prepaid taxes and prepaid rents. For purposes of this analysis, it is assumed that all prepaids would be consumed during the Liquidation Period. Accordingly, no separate recovery for these assets is assumed.

E. Notes Receivable – The Debtor holds a note from Lazaro Perez. Mr. Perez is an employee of the Debtor and the note is repaid as a deduction from his salary. In a hypothetical Chapter 7, Mr. Perez's employment would be terminated, making repayment of the note virtually impossible.

F. Intangible Assets – The majority of the intangible assets consists of intellectual property. While this intellectual property has value to the Debtor as a going concern, the Debtor believes that its value is negligible in liquidation. For purposes of this analysis, a recovery of 0% to 25% is assumed.

G. Other Noncurrent Assets – Other Noncurrent assets consists primarily of the Debtor's causes of action that it has asserted in New York Federal Court. In a hypothetical chapter 7, the chapter 7 trustee will not have sufficient liquid funds to continue to pursue this litigation and it is unlikely that any counsel would pursue this litigation on a contingency basis. For purposes of this analysis, a recovery of 0% is assumed.

H. Trustee Fees – Section 326 of the U.S. Bankruptcy Code limits U.S. Trustee fees. For this Liquidation Analysis, a recovery estimate of 3% is assumed.

I. Counsel for the Trustee – Compensation for trustee's counsel is estimated at 75% of estimated trustee fees.

J.     Wind-Down Costs – The estimates for wind-down costs in the Liquidation Analysis include operating expenses and other costs considered likely to be incurred during the Liquidation Period.   Significant liquidation activities would include, but are not limited to: (i) the sale/liquidation of inventory, (ii) collection of accounts receivable, (iii) the sale/liquidation of corporate and non-operating property and equipment, (iv) the resolution of all employee related issues, (v) closing of books and records, (vi) maintenance of IT systems and (vii) protection and security of assets during the Liquidation Period.  It is assumed that Debtor's staff would be severed immediately.  A transition team would then be responsible for the wind-down activities during the Liquidation Period.  The transition team would include essential operational, financial, legal, human resources and accounting personnel.  The wind-down costs also include the cost of professional brokers to liquidate inventory, real estate and machinery and equipment.

K.     Unsecured Claims - Purported creditor Hayley Paige Gutman filed a proof of claim [POC 9] in the unliquidated amount of $71,000,000.  The Debtor will soon file an objection to Ms. Gutman's proof of claim.  It is the Debtor's position that this claim is meritless and should be reduced to $0.00.  Thus, the Debtor has not included the amount of Ms. Gutman's claim in the estimation of Unsecured Claims.