IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JLM COUTURE, INC.,<br><br>                Debtor. | Chapter 11<br><br>Case No. 23-11659-JKS<br><br>Re: D.I. 112 |

**REPLY TO DEBTOR'S OBJECTION TO MOTION BY LANDLORD FOR AN ORDER: (A) DIRECTING IMMEDIATE PAYMENT OF POST-PETITION STIPULATED DAMAGES PURUSANT TO 11 U.S.C. § 365(d)(3), (B) ALLOWING AND DIRECTING IMMEDIATE PAYMENT OF STUB PERIOD STIPULATED DAMAGES PURSUANT TO § 503(b), AND (C) GRANTING RELIEF FROM THE AUTOMATIC STAY TO CONTINUE THE LANDLORD-TENANT ACTION**

JLJ Bricken LLC ("Landlord"), by and through its undersigned counsel, hereby files this Reply[1] to *Debtor's Objection to Motion by Landlord for of an Order: (a) directing immediate payment of Post-Petition Stipulated Damages pursuant to § 365(d)(3), (b) allowing and directing immediate payment of Stub Period Stipulated Damages pursuant to § 503(b), and (c) granting relief from the automatic stay to continue the Landlord-Tenant Action* [D.I. 112] (the "Obj."), and respectfully states as follows:

**REPLY**

A. **Landlord is entitled to an expense of administration pursuant to (a) §365(d)(3) for the Period November 1, 2023 to January 30, 2024, and (b) §503(b)(1) for the Periods October 2-31, 2023 and February 1, 2024 to the date the Debtor Vacates and Surrenders the 5th Floor Premises.**

    1. Section 365(d)(3) governs the Debtor's mandatory obligation to timely pay rent for the period November 1, 2023 to January 30, 2024 (the "§365(d)(3) Period"). The Lease was

---

[1] Unless defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

{00038135. }

"unexpired" as that term is used in §365(d)(3) as explained in the cases cited in the Motion. The Debtor remained in the 5th Floor Premises during the §365(d)(3) Period although that is not relevant to the §365(d)(3) analysis. However, the Lease was deemed rejected as of January 30, 2024 pursuant to §365(d)(4)(A). That section provides a lease of non-residential real property is deemed rejected 120 days after the order for relief. The petition date in this case was filed on October 2, 2023, and one-hundred and twenty days (120) after that is January 30, 2024 ("Lease Rejection Date"). Section 365(d)(4)(A) further provides following the Lease Expiration Date the "trustee shall **immediately** surrender that nonresidential real property to the lessor". (**emphasis** added). The Debtor did not surrender the 5th Floor Premises and remains as a holdover.[2]

2. As noted in the Motion, the Lease expressly contemplates a scenario where Debtor remains in the 5th Floor Premises against the Landlord's will as a holdover. In that case, Article 50 of the Lease provides that Landlord is entitled to Stipulated Damages. The amount of Stipulated Damages is set by a formula in the Lease:

> **Tenant therefore agrees that if possession of the demised Premises is not surrendered to Landlord within seven (7) days after the date of the expiration or sooner termination of the term of this lease, then Tenant agrees to pay Landlord as liquidated damages for each month and for each portion of any month during which Tenant holds over in the Premises after expiration or termination of the term of this lease, a sum equal to three times the average rent and additional rent which was payable per month under this Lease during the last six months of the term thereof. The aforesaid provisions of this article shall survive the expiration or sooner termination of the term of this lease.**

Lease at Article 50 (**emphasis** added).

---

[2] The Debtor's failure to: (a) comply with §365(d)(3), and timely pay rent during the §365(d)(3) Period, (b) comply with §365(d)(4)(A), and immediately surrender the 5th Floor Premises after the Lease Rejection Date, and (c) budget (or pay) Stipulated Damages to Landlord as part of cash collateral financing, are all grounds to object to any plan proposed by the Debtor. *See* §1129(a)(1-3).

{00038135. }                                    2

3. The Debtor became a holdover in January 2022 when it refused to leave the 5th Floor Premises. Since that time, the Debtor has failed to pay *any* rent, forced the Landlord to pay the Debtor's electric bills -- and Debtor now owes the Landlord over $2,363,036 consisting of $2,343,036 in Stipulated Damages for the 5th Floor Premises that Tenant still occupies plus over $20,000 in attorney's fees. The Debtor is a post-petition holdover following the Lease Rejection Date.

4. The Debtor's contractual obligation to pay Landlord is set forth in the Lease. When the Debtor filed for chapter 11 Subchapter V, the Debtor's negotiated and agreed to contractual "obligation" under the Lease was the amount of the Stipulated Damages. Therefore, during the §365(d)(3) Period, the Debtor was required to pay Landlord the amount of the Stipulated Damages the 1st of each month. That amount totals $91,709.74 for each of the months of November and December 2023, and January 2024. The Debtor's obligation to pay Stipulated Damages is mandatory under §365(d)(3) and required "notwithstanding section 503(b)(1) of this title." The Debtor's failure to comport with its legal obligations under §365(d)(3) required Landlord to retain a bankruptcy attorney and seek the relief sought by the Motion. That, in turn, triggered Landlord's remedy under Article 51 of the Lease; *i.e.*, attorneys' fees. *See In re Crown Books Co.,* 269 B.R. 12, 15 (Bankr. D. Del. 2001).

5. The Bankruptcy Code does not re-write the Lease and the Debtor cannot take advantage of the many benefits the Bankruptcy Code offers (*e.g.*, the stay, discharge), while ignoring compliance with the mandatory and plain language of §365(d)(3) and §365(d)(4)(A). Both statutes employ the term "shall". But that is exactly what the Debtor did and continues to do. The Debtor failed to remit any amount to Landlord during the §365(d)(3) Period and failed to

immediately surrender the 5th Floor Premises to Landlord pursuant to §365(d)(4)(A). The Debtor did, however, pay professional fees and substantial salaries to executives.

6.  The Landlord is also entitled to payment under §503(b)(1) for the Stub Period and the period from and after the Lease Rejection Date. The Lease provides that the amount owed is the Stipulated Damages, not rent. The Obj. contends that Landlord is not entitled to an expense of administration for these periods but the case law Debtor relies upon for that proposition is distinguishable. The cases cited by Debtor do not involve a lease of non-residential real property. For example, the Debtor's reliance on *Howard Delivery Serv. Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651 (2006)(addressing the priority afforded unpaid workers' compensation insurance premiums) and *In re Bernard Techs, Inc.,* 342 B.R. 174 (Bankr. D. Del. 2006)(addressing a CEO's disputed salary and whether it constituted an expense of administration) are misplaced.

7.  Research reveals there are several cases that specifically address a landlord's request for an expense of administration for post-petition use of non-residential property during the stub period. The Debtor's reliance on *In re Sportsman's Warehouse, Inc.* is one of them. As noted in the Obj., " 'the debtor's use and occupancy of the leased premises post-petition is an actual and necessary expense of preserving the estate' giving rise to an administrative expense under section 503(b) of the Bankruptcy Code to the extent of 'the actual value or benefit the debtor is receiving.'" Obj. at 17 (citation omitted).

8.  Landlord submits the value the Debtor received from the continued use and occupancy of the 5th Floor Premise from the Petition Date without paying any amount to Landlord is the value the Debtor derived from running its business and paying professionals and salaries since the Petition Date. The Debtor only *remained in business* by ignoring its mandatory duties under §§365(d)(3) and 365(d)(4)(A). For over two years, including the entirety of the post-petition

period, the Debtor has remained and conducted its business rent *free* at the 5th Floor Premises as both a pre- and post-petition holdover. By not paying rent, the Debtor was able to get a flawed budget approved,[3] purchase raw materials, and pay payroll, professional fees, and substantial salaries.

9. The Debtor argues the Court should ignore the Stipulated Damages provision that the parties bargained for and agreed to when they entered into the Lease and instead consider the *rent* charged for comparable spaces in the vicinity of 225 W. 37th Street. Landlord respectfully submits that rent comparisons are not the appropriate metric here. **First**, comparing rent to Stipulated Damages is an apples to pineapples comparison. Landlord is not demanding the Debtor pay rent. The Debtor owed rent prior to the end of its Lease term. Under the terms of the Lease, after the Lease term, Debtor *must* pay Stipulated Damages. The Debtor cannot re-write the Lease. Stipulated Damages became the amount owed under the Lease when the Debtor became a holdover. In its Motion, Landlord cited case law that the amount of Stipulated Damages demanded under the Lease is enforceable under New York law. Debtor cites no case law to the contrary in its Obj. **Second**, the fact the Debtor now is pointing to other commercial spaces where it *could* relocate is somewhat disingenuous. The Debtor had over two years to (a) accrue cash while not paying rent to Landlord, and (b) reject the Lease as of the Petition Date. The Debtor elected to remain at the 5th Floor Premises post-petition and paying nothing. The Debtor should not be rewarded for ignoring all aspects of section 365. Tenant should have timely paid rent, immediately surrendered the Lease on the Lease Rejection Date and rejected the Lease as of the Petition Date.

---

[3] Although the Debtor's approved budget provides a line item for the payment of "Rent and Utilities," the Debtor never paid *any* amount to the Landlord. *See* DI at 9, Ex. A. The Affidavit of Service for the Cash Collateral Motion states it was served on: Olmstead Properties, Inc. 575 8th Avenue New York, NY 10018. Olmstead Properties is Landlord's predecessor in interest.

{00038135. }    5

*Third*, it is far too late to re-locate and point to "a substitute location for its operations …" Obj. at 22. The Debtor should not be rewarded for its conduct; *i.e.,* conducting its business rent-free and then jump to another location. Preliminary indicators all suggest the proposed Plan is not confirmable for several reasons including feasibility. The equities do not favor the Debtor.

10. That aspect of the Motion that sought stay relief is no longer necessary because section 365(d)(4)(A) provides that following the Lease Rejection Date the "trustee shall immediately surrender that nonresidential real property to the lessor". The Court should require the Debtor to abide by that Code section.

**WHEREFORE**, Landlord respectfully requests the Court to grant the Motion, direct immediate payment of Stipulated Damages pursuant to §§365(d)(4) and 503(b)(1), and grant such other and further relief as is just and proper.

Respectfully Submitted,

Dated: February 16, 2024
Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE #3995)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
rosner@teamrosner.com

*Counsel for Landlord*