**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>JLM COUTURE, INC.,<br><br>Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 23-11659 (JKS) |

**MOTION OF HAYLEY PAIGE GUTMAN TO CONVERT THIS CHAPTER 11 CASE TO A CASE PROCEEDING UNDER CHAPTER 7**

Hayley Paige Gutman ("Paige"), by and through her undersigned counsel, hereby files this motion (the "Motion") in the above-captioned matter, pursuant to section 1112(a) of title 11 of the United States Code (the "Bankruptcy Code"), rule 1017(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order substantially in the form attached hereto as **Exhibit A** converting the case of JLM Couture, Inc. (the "Debtor") from a chapter 11 case to one proceeding under chapter 7 of the Bankruptcy Code. In support of this Motion, Paige respectfully represents as follows.

**JURISDICTION**

1. This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).

**BACKGROUND**

2. On October 2, 2023, the Debtor commenced the above-captioned voluntary case under subchapter V of chapter 11 of the Bankruptcy Code (the "Petition Date").

3. The Debtor is presently operating its business as a debtor in possession pursuant to section 1184 of the Bankruptcy Code. William Homony has been appointed as the Subchapter V trustee.

4. Prior to the Petition Date, Paige worked as a designer under the umbrella of the Debtor, specifically on the brands Hayley Paige, Blush by Hayley Paige, La Petite Hayley Paige, and Hayley Paige Occasions

5. The Debtor's financial history is a textbook example of distress and decline. Prior to the lawsuit with Paige , which was filed in December 2020, for the period of 2018 through 2020 the Debtor's revenues declined by a total of sixty-one percent (61%), with a twenty-six percent (26%) decline in 2020 *alone*. The decline continued as the Debtor recognized losses during the years of 2018 through 2022 of $8,277,456

6. . Compounding these problems, and representative of the Debtor's financial hardships, is the fact that its revenue projections have an error which suggests that the Debtor's financial state is over $3.4 million worse than expected. Review of the Debtor's financial state indicates that the Debtor's projected cash, after adjustments for additional borrowing debt and related liabilities, is negative $3.4 million.

7. On January 2, 2024, the Debtor filed the *Subchapter V Debtor's Plan of Reorganization* [Dkt. No. 95] (the "Plan").

8. On January 22, 2024, approximately three weeks after filing the Plan, the Debtor filed the *Subchapter V Debtor's First Amended Plan of Reorganization* [Dkt. No. 119] (the "First Amended Plan").

9. On February 6, 2024, approximately two weeks after filing the First Amended Plan, the Debtor filed the *Subchapter V Debtor's Second Amended  Plan of Reorganization* [Dkt. No.

101] (the "Second Amended Plan" and collectively, with Plan and the First Amended Plan, the "Plans").

10. Pursuant to her analysis of the Plans, Paige has discovered a set of difficulties facing the Debtor, each of which alone would be a significant obstacle to any meaningful restructuring effort. These problems, in combination, make the Debtor's case utterly untenable.

11. For several years, the Debtor has been in protracted litigation with Paige (the "Paige Litigation") over the rights to her name, marketing, and various brands associated with her public image. The legal fees are an incredible drain on the estate and these expenses will continue for the foreseeable future if a settlement is not reached. *See Declaration of Tiffany Cooke*, attached hereto as **Exhibit B**. The legal fees associated with the Paige litigation are likely to exceed $750,000.00 (seven hundred and fifty thousand dollars) annually and to escalate into a monthly range of $70,000 to $85,000 *per month* once that litigation enters the discovery phase. *Id*. It is unclear whether or not the Debtor has the ability to continue to pay its litigation counsel in addition to its bankruptcy counsel.

12. The failure of the Debtor's litigation counsel to respond to settlement offers, which would resolve the Paige Litigation, means that the Debtor continues to incur tremendous expenses on top of those being incurred in this bankruptcy matter. Indeed, the Debtor incurred an expense of roughly $190,000 (one hundred and ninety thousand dollars) on *one* 25-page motion alone. *Id*. This cash drain is a burden on the estate that cannot be ignored and is a significant barrier to resolving the cash-flow problems the Debtor faces.

13. The Debtor has proposed and revised a plan of reorganization, but it is neither reasonable nor is it achievable. *See JLM Bankruptcy Plan*, attached hereto as **Exhibit C**. Due to industry animus directed at the Debtor as a result of the public departure of Paige, the projections

3

and anticipated gains for the Debtor after completing its restructuring efforts are unrealistic. *See id*. *See also Declaration of Beth Chapman*, attached hereto as **Exhibit D**. Many members of the wedding industry sector, particularly on the retail side, which the Debtor relies on to actually move its various products, refuse to continue to do business with the Debtor after the departure of Paige. *See* **Exhibit D**.

14. The decline of relationships with important retailers is catastrophic to the Debtor and will hinder any attempts to actually make good on the plan. *Id*. Essentially, the Debtor cannot make good on the Plan and the targets proposed in it cannot be achieved. *Id*. If the Debtor cannot restore its relationships with retailers, any restructuring is entirely fictional. *Id*. The Debtor, due to behavior directed at Paige prior to the Petition Date, has visibly and publicly damaged its relations with retailers and other vital parts of the industry sector. *Id*. Due to the strained relationship with retailers and other industry professionals, it is highly unlikely the Debtor will be able to survive as a going concern.

15. Further exacerbating the Debtor's struggle to stabilize cash flows and potentially provide some recovery to creditors and parties-in-interest in this case is its financial history and declining capital prospects. *See JLM Historical Financial Records*, attached hereto as **Exhibit E**.

16. The 5-year historical financials of JLM from 2018 through 2022 provide that the Debtor's revenues declined by a total of sixty one percent (65%). *Id*. Based on examination of the Debtor's financial records, the Debtor's losses in that timespan total $8,277,456. Further, the Debtor's Amended Plan's purported financial projections show a mathematical error which results in an actual figure for total revenue of $23,597,624, which is a deficit of $1,232,376 from the Debtor's projections of $24,830,000. That deficit is an error in the range of seven percent (7%) of the Debtor's purported enterprise value, compounding this deficit is the fact that debtor is including

4

an anticipated loan in the amount of $1,000,000 in funds estimated to be borrowed to help operate the Debtor on a go-forward basis. This loan is highly speculative and there is no projection for its repayment, which any prospective lender would require. The cost of goods sold is estimated by the Debtor at roughly fifty-one percent (51%), of revenue. However, normalizing the figure based on the debtor's historical financial statements for the historical cost of goods sold of sixty-one percent (61%) – yields a *further* deficit in the Debtor's financial forecast of $2,483,000. These three miscalculations alone result in a plan that is not viable.

17.    The Debtor claims pursuant to its amended plan available cash of $1,111,157 as of Q2 2027, However, when that figure is adjusted for the revenue miscalculation, the available cash amount is *actually* revised downward to -$121,019 (negative one-hundred-and-twenty thousand and nineteen dollars)  If the projected speculative loan for the Debtor is not achieved there is a further deficit of $1,000,000 (one million dollars) resulting in negative cash per the amended plan of -$1,121,019. When the cost of goods sold is normalized to the actual historical percentage of 61%, there is an additional expense of $2,483,000. These adjustments result in a $3,604,019 loss as of Q2 2027.   Pursuant to this analysis the Debtor will run out of available cash in the first quarter (Q1) of 2025. *Id.*

## RELIEF REQUESTED

18.    By this Motion, Paige seeks entry of an order, pursuant to 1112(a) of the Bankruptcy Code, Bankruptcy Rule 1017(f), and Local Rule 2002-1(f) converting the Debtor's chapter 11 cases to cases under chapter 7.

## BASIS FOR RELIEF REQUESTED

19.    Section 1112(b) provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 . . . or dismiss

a case under this chapter . . . whichever is in the best interests of creditors and the estate, for cause[.]" There is cause to convert the above-captioned matter.

20. Conversion of this case to a case proceeding under chapter 7 is in the best interest of the Debtor's estate. There are insufficient funds in the estate or otherwise available to the estate to pay accrued administrative expenses and the anticipated administrative expenses that may be incurred if this Court allows the Debtor to remain in chapter 11 to complete its wind-down and conclude its case. Further, allowing the Debtor to continue to remain in chapter 11 will prejudice the rights of Paige and others and diminish their recovery from the estate.

21. As the Bankruptcy Court for the Eastern District of New York noted, "[t]he precise perimeters of cause are intentionally omitted from the statute so as to afford maximum flexibility and, among other things, enable a bankruptcy court to dismiss a Chapter 11 case for any reason cognizable to the equity power and conscience of the court." *In re HBA E., Inc.*, 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988) (internal quotation marks omitted). Thus, "[c]ause for dismissal is a matter of discretion for the court." *In re Mid-Valley Aggregates, Inc.*, 49 B.R. 498, 500 (Bankr. D. N.D. 1985).

22. Of the enumerate but non-exhaustive list of factors that constitute cause for conversion or dismissal, section 1112(b)(4) of the Bankruptcy Code includes, among others:

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; [or]
(M) inability to effectuate substantial consummation of a confirmed plan

11 U.S.C. § 1112(b)(4).

23. In those cases when it is "apparent that the debtor has no profitable core around which to structure its reorganization effort, or that the debtor cannot or will not formulate a

reasonable business plan," then "there is often little reason to proceed with the reorganization." 7 *Collier on Bankruptcy* ¶ 1112.04[6][a][ii] (16th ed.).

24. It is clear from the Plans and the declining value of the Debtor and its negative cash flows – which are even worse when they are adjusted – that the Debtor has no hope of truly recovering and starting anew. There is, simply put, not enough cash flow to continue to finance the restructuring efforts without harming creditors and diminishing the estate. The longer that proceedings chapter 11 continue, the larger the waste of estate assets becomes, making everyone worse off.

25. Further, it is highly unlikely that, with such poor cash flow, the Debtor would be able to substantially consummate a plan of reorganization (whether the presently pending Second Amended Plan or a subsequently-amended plan of reorganization).

26. Accordingly, there is no reason for the Debtor's case to continue proceeding under chapter 11 of the Bankruptcy Code and the case should be converted to a liquidating case under chapter 7.

**WHEREFORE,** in the event the Court denies confirmation of the Debtor's Plan, Paige respectfully requests: (a) entry of an order converting the chapter 11 case to a proceeding under chapter 7 of the Bankruptcy Code and (b) such other relief as the Court deems just and proper.

*Remainder of page intentionally left blank*

| | |
|---|---|
| Date: April 12, 2024 | */s/ Kevin F. Shaw*<br>Rafael X. Zahralddin (No. 4166)<br>Kevin F. Shaw (No. 6239)<br>500 Delaware Ave., Suite 700<br>Wilmington, DE 19801<br>Telephone: (302) 985-6004<br>Email: Rafael.Zahralddin@lewisbrisbois.com<br>           Kevin.Shaw@lewisbrisbois.com<br><br>*Counsel for Hayley Paige Gutman* |