## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>JLM COUTURE, INC.,<br><br>Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 23-11659 (JKS)<br><br>**Re: Docket No. 160** |

### DEBTOR'S OBJECTION TO [CORRECTED] MOTION OF
### HAYLEY PAIGE GUTMAN TO CONVERT THIS CHAPTER 11
### CASE TO A CASE PROCEEDING UNDER CHAPTER 7

JLM Couture, Inc. (the "Debtor"), the above-captioned debtor and debtor-in-possession, by and through undersigned counsel, hereby objects to the *[Corrected] Motion of Hayley Paige Gutman to Convert This Chapter 11 Case to a Case Proceeding Under Chapter 7* [Docket No. 160] (the "Motion"), and respectfully represents as follows:

### PRELIMINARY STATEMENT

1.     The Motion should be denied as a transparent effort by a former employee to push her own agenda of destroying the Debtor to the detriment of the best interests of all creditors. Indeed, nowhere in the Motion does Ms. Gutman recognize that the bulk of the Debtor's financial issues are a direct result of her non-meritorious litigation and her public remarks disparaging the Debtor and its principals.  Ms. Gutman also fails to address how chapter 7 could possibly lead to a better result for creditors – though it is apparent that she thinks that a conversion will cause the cessation of litigation against her and, possibly, a fire sale of the Debtor's assets that she clearly wants, benefitting her greatly.  The Debtor has used its chapter 11 filing to obtain a breathing spell, to streamline its operations, and to develop a proposed plan of reorganization.  However, because the Debtor's have not yet negotiated a settlement with Ms. Gutman or acceded to her demands, Ms. Gutman is attempting to force the Debtors into submission or to destroy it in the process. The

1

Court should not sanction these tactics by granting the Motion.

2. Even putting aside Ms. Gutman's motives, converting this case to chapter 7 is not warranted as Ms. Gutman has not demonstrated cause for conversion. Ms. Gutman's Motion, at its core, is an objection to a plan that has not been put out for solicitation – and won't be. Due to the delay in the Court's ruling on the Debtor's landlord's administrative expense motion, the docketed plan has become stale and will be revised in due course after the Court rules on what all parties should agree is a threshold issue. The Debtor is committed to filing an amended plan in due course and is working to make sure that such plan would be in the best interests of all creditors – not just Ms. Gutman.[1] The Debtor has also worked to streamline its operations, has complied with its reporting requirements, and paid all undisputed post-petition obligations. The Debtor's management has taken its fiduciary duties seriously and has not engaged in any objectively bad behavior as required to find gross mismanagement. In short, the Debtor's operations and efforts in chapter 11 are not unlike any other chapter 11 debtor-in-possession utilizing the bankruptcy process to maximize creditor recoveries on a whole. There is no cause for conversion.

3. To the extent the Court nevertheless determines that there is cause for conversion, the Motion should nevertheless be denied based on the circumstances of the Debtor's cases. First, the Debtor's failure to yet confirm a plan is due to factors outside of the Debtor's control. Second, a chapter 7 trustee would be ill-equipped to operate the Debtor's assets and would likely liquidate the Debtor's assets for far less than what the Debtor could obtain in the normal course of operations. While the Debtor has limited resources to fund the case in chapter 11, a chapter 7

---

[1] The Debtor disputes whether Ms. Gutman actually is a creditor of the Debtor. Her $70 million proof of claim, to which the Debtor objected on the grounds that it is contingent and unliquidated, completely lacks merit. In fact, a New York court has already issued a sanction against Ms. Gutman in the amount of $118,806.59, that she has not yet paid to the Debtor, which would be another reason why she is pushing for conversion.

2

trustee would face the same obstacle. Creditors will not be better off if the cases are in chapter 7, but, rather, much worse off. The Motion should be denied.[2]

## BACKGROUND

**A. The Debtor's Business**

4. The Debtor is a leader in the bridal design and manufacturing industry, operating as a multi-label bridal house engaged in the design, manufacture, and distribution of bridal gowns and bridesmaids dresses. The Debtor houses numerous award-winning brands. Under the JLM umbrella, the Debtor houses the following brands: Allison Webb, Ti Adora by Allison Webb, Lazaro, Tara Keely by Lazaro, Lazaro Bridesmaids & Formal, Hayley Paige, Blush by Hayley Paige, La Petite Hayley Paige, and Hayley Paige Occasions.

5. The Debtor is generally regarded as the innovator of the multi-label bridal house and the designers that it has assembled and nurtured have won ten (10) Distinctive Excellence in the Bridal Industry awards for design distinction (couture category), and four British Bridal Buyer awards. In 2005, the Debtor's principal, Joseph Murphy, was the first recipient of French-owned Wedding Dresses Magazine's lifetime achievement award.

6. The Debtor currently operates nine (9) collections, six (6) of which are bridal lines, two (2) bridesmaid lines and one (1) flower girl line. The Debtor's fashion brands cover a broad spectrum of aspirational to luxury price points. In Spring 2012, the Debtor expanded its presence at the luxury end of the bridal business with the introduction of the Hayley Paige brand and the

---

[2] Landlord JLJ Bricken has filed a joinder [Docket No. 163] seeking conversion as well as "the right to include in any order granting conversion a directive that the Debtor make an immediate catch up payment of post-petition obligations due to Landlord such that Landlord is paid on a *pro rata* basis with other administrative claimants previously paid during the course of this chapter 11 case coupled with the right to seek disgorgement from administrative claimants to Landlord of such amounts necessary to ensure *pro rata* treatment." This requested relief is not properly before the Court and should be denied pending the filing of a proper motion.

3

opening of its flagship store on Robertson Boulevard in West Hollywood, California. The Debtor launched the Allison Webb brand in Spring 2018.

7. The Debtor primarily drives revenue by selling bridal gowns through authorized retailers, but since November of 2022 has started selling excess inventory via Shopify directly to consumers. The Debtor does not manufacture its gowns and dresses in house, instead contracting domestically and abroad to actually create the pieces.

8. The Debtor currently employs 21 people, which is a reduction from approximately 70 employees in calendar year 2020. These employees include designers, sales and marketing specialists, HR, and operations. While the Debtor has not reduced its number of employees since the Petition Date, it has worked to streamline its operations and reduce expenses by negotiating lower rates with various vendors, moving into a smaller office, and finding less expensive alternate vendors.

9. To the extent the Debtor sells merchandise, the Debtor receives revenue from proceeds of each sale. Notably, the Debtor recently attended its annual spring market and has seen increased business.

**B. Ms. Gutman**

10. The Debtor's operations were primarily affected by the active and contentious litigation with Ms. Gutman that has now been pending for several years. The breach of contract by Ms. Gutman has substantially hurt the company's sales; and the legacy costs associated with the Ms. Gutman's operation could not be reduced quickly enough to offset this damage. Her viral social media attacks on the Debtor caused most of the Hayley Paige retail customer base to discontinue selling Hayley Paige dresses as well as reduce their support for other Debtor brands. While the Debtor has been successful at each step of such litigation, it has nonetheless taken a toll

on the Debtor financially and caused the Debtor's principals to have spent significant time and effort focusing on issues outside of the operation of the Debtor's business.

11. Ms. Gutman entered into an employment agreement (the "Contract")[3] dated July 13, 2011, by which she agreed to work for the Debtor. The Contract contains provisions, inter alia, related to Ms. Gutman's non-competition with the Debtor, the Debtor's right to use Ms. Gutman's name as well as certain derivations thereof, the Debtor's ownership of various trademarks related to Ms. Gutman's name, and the Debtor's ownership of intellectual property created by Ms. Gutman during her tenure with the company. Further, during the course of her employment with the Debtor, and in conjunction with the Debtor's personnel, Ms. Gutman created various social media accounts using her name (i.e. the Debtor's trademark) for the purpose of marketing the Hayley Paige brand.[4]

12. While the Debtor and Ms. Gutman had a mutually beneficial relationship for years, in the summer of 2019, after Debtor extended the Contract, the parties engaged in unsuccessful negotiations in which the Debtor offered to voluntarily amend the terms of the Contract. In November 2019, Ms. Gutman changed the access credentials for the Hayley Paige brand social media accounts and did not share them with Debtor. After taking total control of the social media accounts, Ms. Gutman began acting as an "influencer" and promoting non-Debtor products.

13. On November 23, 2020, Ms. Gutman informed the Debtor that she would "not be posting any [Debtor] related business" to the Hayley Paige social media account. In response, knowing that the parties' relationship was irretrievably broken, on December 15, 2020, the Debtor commenced a lawsuit against Ms. Gutman in federal court in New York. That lawsuit seeks

---

[3] The Contract provides for termination by the Debtor for or without cause, and includes no provision permitting Ms. Gutman to terminate the Contract unilaterally.

[4] During at least some periods prior to late 2019, Debtor employees directly accessed the relevant Instagram and Pinterest accounts and participated in the management of the accounts.

damages for, among other things, breach of the Contract, as well as declarations regarding the ownership of the Hayley Paige-related trademarks and social media and the enforceability of the non-compete provisions under the Contract. It's important to note that Ms. Gutman resigned after receiving an unfavorable ruling from the New York court.

14. In response, Ms. Gutman filed a meritless counterclaim against the Debtor and its principal, and went on a public tirade posting video after video of herself badmouthing the Debtor as well as publicly posting correspondence between the parties to the litigation which received millions of views across social including, her other Instagram accounts, YouTube and various podcasts,.

15. The New York litigation between Ms. Gutman and the Debtor continues.[5] At one point, the New York court entered a preliminary injunction restraining Ms. Gutman from taking control of the Hayley Paige social media accounts and from otherwise breaching the Contract (i.e. using the Debtor's trademarks or competing with the Debtor). Unfortunately, Ms. Gutman just couldn't help herself from violating the preliminary injunction leading to her being found in contempt of court which resulted in sanctions against her to the tune of $118,806.59 in attorney fees, which she still has not paid to the Debtor.

16. While the Debtor is confident that it will ultimately be successful in its litigation against Ms. Gutman, the litigation – as well as Ms. Gutman's antics – have taken a toll and continue to take a toll.[6]

---

[5] Ms. Gutman observes in her Motion that the ongoing litigation is a drain on the Debtor's finances and that the Debtor has underestimated the costs associated with such litigation. The Debtor intends to address the continuing litigation expenses in its revised plan projections. Further, the litigation costs have been exponentially increased by Ms. Gutman's actions – and her failure to pay the sanctions that have been ordered against her.
[6] In the Motion, Ms. Gutman argues that the Debtor's financial difficulties stem from the bridalwear marking turning on the Debtor due to its purportedly unfair treatment of Ms. Gutman.

**C. Procedural Background**

17. On October 2, 2023 (the "Petition Date"), the Debtor commenced a voluntary case under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

18. The Debtor is operating its business as debtor in possession pursuant to section 1184 of the Bankruptcy Code. William Homony has been appointed as Subchapter V Trustee.

19. Shortly after the Petition Date, the Debtor filed various motions related to its ability to operate in Chapter 11 and all were granted. Since that time, the Debtor has been operating in the ordinary course and has timely filed all of its monthly operating reports with the Court.

20. As this Chapter 11 case is proceeding under Subchapter V, on January 2, 2024, the Debtor filed the Subchapter V Debtor's Plan of Reorganization [Docket No. 95] (as amended, the "Plan"). Although the Court has not yet approved the Debtor's solicitation procedures, the Debtor has amended the Plan based on informal comments received from both the Subchapter V Trustee as well as the Court.

21. Although there were no objections filed to the Debtor's proposed solicitation procedures, the Court chose not to approve them yet. Shortly thereafter, the Debtor's now-former landlord, JLJ Bricken (the "Landlord") filed a motion seeking unpaid post-petition rent in an exorbitant amount. The Debtor objected to the Landlord's motion, which all parties agreed was a threshold matter for the Debtor's direction for moving forward with its Chapter 11 case. After a hearing on such motion and post-hearing briefing, this matter is ripe for adjudication. However,

---

This is untrue. In support of this argument, Ms. Gutman provides the Declaration of Beth Chapman. Ms. Chapman's declaration is full of hearsay statements and not based on any empirical facts or even her own experience with the Debtor. In fact, the Debtor has never even heard of Ms. Chapman or her small wedding boutique operating in the tiny town of Clinton, Connecticut.

since the Court has not yet ruled, the Debtor is not in a position to amend its now stale Plan.

22. The Debtor is approaching positive cashflow (it's recently been affected by participating in its first market in two years and the purchasing associated with this effort). However, the Debtor's inability to yet confirm its Plan, is causing financial strain and keeping the Debtor from being able to obtain additional financing that it will be more likely to obtain after it emerges from bankruptcy.

**ARGUMENT**

23. The Motion should be denied for several reasons, most notably, the lack of cause for conversion and the lack of evidence that creditors would be better off in a chapter 7 case.

24. As an initial matter, the Motion is premature. As discussed above, the Landlord's administrative expense motion needs to be resolved before the Debtor can confirm its Plan. Depending on the outcome of that Motion, the Debtor will need to amend the Plan based on the amount that may be due to the Landlord. Further, due to the delay in resolving the Landlord's motion, the Debtor's Plan projections have become stale and will need to be updated. Ms. Gutman's Motion is really a plan objection and based on an old plan that will undoubtedly be amended prior to any solicitation.

25. Ms. Gutman grounds her Motion[7] on Section 1112(b) of the Bankruptcy Code, and in particular Section 1112(b)(4)(A) which provides that a court can dismiss or convert a case for "cause" which is defined as a diminution of the estate and an absence of a reasonable prospect of rehabilitation. Debtor notes that Section 1112(b)(4)(A) uses the conjunction "and", meaning that both elements must be found in order to constitute cause for conversion or dismissal. Here, the

---

[7] It is not entirely clear what relief Ms. Gutman seeks. While the Motion is styled as a motion to convert to chapter 7, the Motion more appears to seek denial of confirmation of the Plan and then conversion.

Debtor has incurred administrative expenses, but that does not necessarily mean that the estate has been diminished. The Debtor is approaching positive cash flow and has increased its sales and sales prospects since its spring market. So the first prong of the "cause" test has not been met. With respect to the second prong, the Debtor has already begun the process of rehabilitating itself, so this requirement cannot be met. The Debtor has met its obligation to file operating reports. The Debtor has already filed a confirmable Plan, but has been delayed from confirming it because of the lack of certainty on the Landlord's post-petition claims, and the Debtor will amend its proposed Plan in due course. Therefore the Court cannot and should not find that "cause" for conversion or dismissal exists under Section 1112(b)(4)(A).

26. For the Court to convert the Debtor's case to chapter 7, the Court must find that Ms. Gutman has established "cause" pursuant to section 1112(b) of the Bankruptcy Code. *See* 11 U.S.C. § 1112(b) (requiring "cause" to grant a party in interest's conversion motion). "The inquiry under § 1112 is case-specific, focusing on the circumstances of each debtor." *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 371-72 (5th Cir. 1987). Ms. Gutman has failed to establish cause for conversion. The Debtor has a reasonable likelihood of rehabilitation, have complied with all reporting requirements, and have not been grossly mismanaged.

27. Cause for conversion pursuant to section 1112(b)(4)(A) of the Bankruptcy Code requires a showing of <u>both</u> (1) a substantial or continuing loss to or diminution of the estate, and (2) the absence of a reasonable likelihood of rehabilitation. *See* 11 U.S.C. § 1112(b)(4)(A); *In re Hyperion Found., Inc.*, No. 08-51288-NPO, 2009 Bankr. LEXIS 4647, at *11 (Bankr. S.D. Miss. Aug. 11, 2009) (recognizing that "existence of both conditions – loss or diminution of the estate *and* no reasonable likelihood of rehabilitation" are necessary to establish cause) (emphasis in original) (citation omitted). "The focus of the second prong of Section 1112(b)(4)(A) is

rehabilitation, a concept that involves the ability of a debtor to meet current obligations from a positive cash flow. Where . . . the Debtor is experiencing financial losses post-petition, the issue is whether the Debtor can correct the reasons for the losses." *Id.* at *12-13 (citing 7 Collier on Bankruptcy ¶ 1112.04[5][a][ii] (15th ed. rev. 2009)).

28. Much of Ms. Gutman's cause argument focuses on what she considers a math error in the Plan. But, Ms. Gutman is actually misreading the Plan. Regarding Note 1, the 'Audit' conducted by Ms. Gutman in regard to the Debtor's projected revenues confuses total cash collection with total revenues. The Debtor's estimation of total revenues is not a calculation of the total cash collected for the quarter, but total revenue booked in its accounts. The Debtor calculates that the wholesale cash collection will be 90% of total wholesale revenues, with the remaining 10% being collected at a later date. The total cash collected for a quarter is the wholesale cash collection plus the Shopify cash collection, while total revenues includes this total cash collected plus additional revenues booked but not yet collected. Regarding Note 2, repayment on this potential loan is included in the expense line labeled "Interest on debt" and assumes an 8% interest rate on a ten-year term. Regarding Note 3, the Debtor has substantially reduced overhead and production costs, bringing down the cost of goods sold. Although the cost of goods appear lower than previous years, the cost of goods in the Debtor's projections are not allocated on a GAAP basis and these additional costs are included in other expense categories to the best of the Debtor's ability to estimate.

29. The Motion should be denied because cause for conversion pursuant to section 1112(b)(4)(F) does not exist. The Debtor has filed all monthly operating reports, thus complying with its reporting requirements.

30. The Debtor has not been mismanaged, much less grossly mismanaged. An

evaluation of whether there has been "gross mismanagement of the estate" pursuant to section 1112(b)(4)(B) is limited to the post-petition date management of the debtor. See In re 412 Boardwalk, Inc., 520 B.R. 126, 135-36 (Bankr. M.D. Fla. 2014) (The "inquiry cannot include mismanagement by the debtor prior to the bankruptcy filing") (citations omitted); In re First Assured Warranty Corp., 383 B.R. 502, 544 (Bankr. D. Colo. 2007) (finding cause was not established where motion focused on prepetition activities of debtor's insiders). The focus is "on the conduct of the estate's affairs (not the debtor's) and requires that the mismanagement be 'gross' in character, meaning that the mismanagement is glaringly noticeable usu[ally] because of inexcusable badness or objectionableness." In re Emerald Grande, LLC, No. 17-bk-21, 2018 Bankr. LEXIS 1614, at *7 (Bankr. N.D. W.Va. June 4, 2018) (quotations omitted). Ms. Gutman has failed to point to any actions by management that are "inexcusabl[y] bad[ ] or objectionable[ ]." In re Emerald Grande, LLC, 2018 Bankr. LEXIS 1614, at *7.

31.     For each of the foregoing reasons, Ms. Gutman has not demonstrated cause for conversion and the Motion should be denied.

32.     However, even to the extent the Court determines Ms. Gutman has established "cause" for conversion to chapter 7, the Motion should nevertheless be denied because conversion would not be in the best interests of creditors. Section 1112(b)(2) of the Bankruptcy Code provides that, even where cause is shown, the Court "may not" convert a case under chapter 11 to a case under chapter 7 or dismiss the case "if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate". 11 U.S.C. § 1112(b)(2) (emphasis added). The Debtor must further establish that: (A) there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an

act or omission of the debtor other than under paragraph (4)(A) - (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court. *Id.* Because each requirement of § 1112(b)(2) is met here, the Motion must be denied. As discussed above, the Debtor has not been able to confirm a Plan yet because it is awaiting a decision on the Landlord's administrative expense motion which will have a direct bearing on the Debtor's plan projections. The delay in confirming a Plan is outside of the Debtor's control and can be cured in a reasonable time. *See* 11 U.S.C. § 1112(b)(2)(B).

33. In this case, the Debtor's operations will provide the Debtor with funds necessary to propose and consummate a new plan. In addition, the Debtor has met all of its reporting requirements. Accordingly, the Court should find that conversion or dismissal of this case is not warranted, even if cause technically exists.

34. Additionally, Debtor also strongly believes that conversion or dismissal is not in the best interests of creditors in this case. "Once the movant establishes cause, the burden shifts to the debtor to demonstrate by evidence 'unusual circumstances' that establish that dismissal or conversion to chapter 7 is not in the best interests of the creditors and the estate." *In re Hosp. De Damas, Inc.*, No. 10-08844 EAG, 2012 Bankr. LEXIS 1562, at *7 (Bankr. D.P.R. Apr. 9, 2012) (citing Collier on Bankruptcy at ¶1112.05[2]). Bankruptcy courts have discretion in determining whether unusual circumstances exist. *See In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) (section 1112(b) "explicitly provides for this discretion where a court is able to identify 'unusual circumstances . . . that establish that the requested conversion is not or dismissal is not in the best interests of creditors and the estate'").

35. Unusual circumstances precluding conversion or dismissal can include the debtor's formulation of an exit strategy predicated on expected future events, such as acquiring a buyer,

posting deposits, or staying current in payment to post-petition creditors. *See* 7 Collier on Bankruptcy P 1112.05 (16th Ed. 2019). Here, the conversion to chapter 7 and the appointment of a chapter 7 trustee would only lead to a worse result of creditors. Conversion would result in the potential loss of much of the Debtor's assets, which are worth substantially more than the outstanding secured debt. A chapter 7 trustee would need to undertake a sale and marketing process, but would have to do so without the benefit of the intimate knowledge of the Debtor's assets held by the Debtor's management and employees. In short, the Debtor's assets are complicated and the Debtor, its management, and its employees are uniquely situated to fill this role as compared to a chapter 7 trustee.

36. The only real alternative to Chapter 11 is a fire sale liquidation under Chapter 7 (which would greatly benefit Ms. Gutman and the Landlord over other creditors). As noted in the Debtor's liquidation analysis filed with the Plan, the payments proposed under the Plan or any amendment thereof, will be better for creditors than a liquidation whereby the Debtor's inventory will be sold for a fraction of its value. Indeed, Chapter 11 provides a more efficient, and less risky, means for the Debtor to maximize the value of its inventory and sell at fair market prices. Accordingly, the unique circumstances of this case warrant denial of the Motion. Creditors and parties in interest will be best served by the Debtor remaining a debtor-in-possession in chapter 11. The Motion should be denied.

WHEREFORE, the Debtor respectfully requests that the Court deny the relief requested in the Motion for the reasons set forth herein and provide such other relief as is just and proper.

Dated: April 30, 2024	CROSS & SIMON, LLC

   /s/ Kevin S. Mann
Kevin S. Mann (No. 4576)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
(302) 777-4200
kmann@crosslaw.com

*Counsel for the Debtor*