## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JLM COUTURE, INC.,<br><br>Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 23-11659 (JKS)<br><br>**Related D.I. 100** |

## OPINION

Before the Court is the *Motion by Landlord for an Order: (a) Directing Immediate Payment of Post-Petition Stipulated Damages Pursuant to 11 U.S.C. § 365(d)(3), (b) Allowing and Directing Immediate Payment of Stub Period Stipulated Damages Pursuant to § 503(b), and (c) Granting Relief from the Automatic Stay to Continue the Landlord-Tenant Action* (D.I. 100) (the "Motion"), the debtor JLM Couture, Inc.'s (the "Debtor") response to the Motion (D.I. 112) (the "Response"), and the landlord JLJ Bricken LLC's (the "Landlord") reply (D.I. 127) (the "Reply").  A hearing on the motion was held on February 28, 2024 (the "Hearing") and the parties submitted supplemental letter briefs at the request of the Court (D.I. 148 and 149).

The Court will grant, in part, and deny, in part, the Motion.

## FACTUAL BACKGROUND

The Landlord leased to the Debtor (the "Lease") the fifth floor at 225 West 37 Street, New York, NY 10018 (the "Premises").  The Lease was entered into February 26, 2003, and the original term was set to expire on February 28, 2013, but was subsequently extended through

January 14, 2022.[1]  Immediately prior to expiration, the monthly base rent under the Lease was $25,335.50.  After January 2022, the Debtor remained in the Premises.[2]

On December 28, 2022, the Landlord provided a Thirty (30) Day Notice of Termination to the Debtor seeking to terminate the tenancy and remove the Debtor from the Premises on or before January 31, 2023.[3]  In July 2023, the Landlord filed a Business Notice of Petition/Holdover action in the Civil Court for the City of New York (the "Landlord-Tenant Action") seeking a judgment for the sum of $840,072.37 representing rental arrears, with interest, plus attorney's fees; and the "the fair value of use and occupancy of the [P]remises … ."[4]

On October 2, 2023 (the "Petition Date"), the Debtor filed bankruptcy, staying the Landlord-Tenant Action.[5]  As a result, the Civil Court never issued a warrant of eviction against the Debtor for the Premises.

The Debtor has not paid rent since 2022.[6]  The Debtor vacated the Premise on February 29, 2024.[7]

---

[1] *See* D.I. 111 (Motion, Ex. A, as corrected).

[2] The Debtor maintains that the Landlord granted permission for the Debtor to holdover. *See* D.I. 112 at ¶ 5.

[3] D.I. 100 (Motion at Ex. B (Thirty (30) Day Notice of Termination, dated December 28, 2022)).

[4] *JLJ Bricken LLC v. JLM Couture, Inc.*, Case No. 314768-23 (N.Y. Civ. Ct.). *See* D.I. 100 at Ex. B.

[5] *See* D.I. 100 at Ex. E (Suggestion of Bankruptcy and Notice of Automatic Stay).

[6] *Compare* D.I. 127 (Reply) at ¶3 *with* D.I. 145 (Hr'g Tr.) at 38:14-17.

[7] D.I. 148 at p. 5, n. 8.

2

**Lease Provisions in Dispute**

The Landlord asserts that the Debtor's holdover of the Premises in January 2022

triggered Article 50 of the Lease. Article 50 of the Lease states, in part:

> Tenant therefore agrees that if possession of the demised premises
> is not surrendered to Landlord within seven (7) days after the date
> of the expiration or sooner termination of the term of this lease,
> then Tenant agrees to pay Landlord as liquidated damages **for each
> month and for each portion of any month during which Tenant
> holds over in the premises after expiration or termination of
> the term of this lease, a sum equal to three times the average
> rent and additional rent which was payable per month under
> this lease during the last six months of the term thereof.** The
> aforesaid provisions of this article shall survive the expiration or
> sooner termination of the term of this lease.[8]

Based on Article 50, the Landlord seeks three-times the average monthly rent and additional rent

payable per month under the Lease during the last six months of the Lease term which equals

$91,709.74 per month (the "Monthly Treble Damages").[9]

In addition, Paragraph 51 of the Lease addresses attorney's fees and provides:

> If Landlord, as a result of a default by Tenant of any of the
> provisions of this lease, including the covenants to pay rent and/or
> additional rent, makes any expenditures or incurs any obligations
> for the payment of money, including but not limited to attorney's
> fees, in instituting, prosecuting or defending any action or
> proceeding, such sums so paid or obligations so incurred with
> interest and costs shall be deemed to be additional rent hereunder
> and shall be paid by Tenant to Landlord within five (5) days of
> rendition of any bill or statement to Tenant therefore, and if
> Tenant's lease term shall have expired at the time of making such
> expenditure or incurring such obligations, such sum shall be
> recoverable by Landlord as damages.[10]

---

[8] D.I. 111 (Lease at ¶ 50) (emphasis added) (hereinafter, "Article 50").

[9] The Landlord refers to the treble damages in Article 50 as "Stipulated Damages." D.I. 100 at ¶ 8. The Debtor does not stipulate to any claim in the trebled amount. To avoid confusion, the treble damages will be referred to as the "Monthly Treble Damages."

[10] D.I. 111 (Lease at ¶ 51) (hereinafter, "Article 51").

**RELIEF SOUGHT**

The Landlord seeks payment of the following administrative expenses (the "Landlord Claims"), as well as relief from the automatic stay to continue the Landlord-Tenant Action:

(i)     post-petition rent from the Petition Date through October 31, 2023 (the "Stub Rent" during the "Stub Rent Period"), pursuant to section 503(b)(1), at the pro-rated Monthly Treble Damages rate, in the amount of $88,751.36[11] (the "Stub Rent Damages");

(ii)    post-petition rent for November 2023, December 2023, and January 2024 at the Monthly Treble Damages rate, pursuant to section 365(d)(3), in an amount not less than $275,129.22[12] (the "Post-Petition Rent");

(iii)   post-petition rent for February 2024 at the Monthly Treble Damages rate, pursuant to section 503(b)(1), because of Debtor's occupancy of the Premises after the Lease was purportedly rejected, effective January 30, 2024, by operation of section 365(d)(4)(A);[13] and

(iv)    attorney's fees incurred in connection with enforcing the Lease, including but not limited to, $20,000.00 for the period October 2, 2023, through January 16, 2024 (the "Attorney's Fees").[14]

**ANALYSIS**

**A. Jurisdiction**

The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for*

---

[11] *See* D.I. 100 at ¶ 10, Ex. F (proposed *Order Granting Motion by Landlord*) at p. 2.

[12] D.I. 100 at ¶ 10.

[13] The Landlord maintains that the Lease was unexpired on the Petition Date and that, pursuant to section 365(d)(4)(A), the Debtor had 120 days from the Petition Date to assume or reject the Lease. The Landlord argues that because the section 365(d)(4)(A) deadline was not extended by order of the Court or on consent of the Landlord, the Lease expired on January 30, 2024, under section 365(d)(4)(A) and the Landlord is entitled to rent for January 31 through February 29, 2024 ("February 2024 Rent") in accordance with section 50(b)(1). D.I. 127 at ¶ 6 and D.I. 145 (H'rg Tr.) at 5:23-6:3.

[14] By the Motion, the Landlord sought $10,000 for attorney's fees (D.I. 100 at ¶ 10); however, in the Reply, the Landlord increased the request to $20,000. D.I. 127 at ¶ 3.

*the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### B.  Choice of Law

"[B]ecause property interests are created and defined by state law, federal courts have

looked to state law to determine a debtor's interests, including leasehold interests, in the

bankruptcy estate."[15]  The Lease does not specify a choice of law.  The Landlord argues that the

Lease is governed by New York law and the doctrines of *lex rei sitae* and *lex loci contractus*

control.[16]  The Debtor did not discuss choice of law in its response.[17]

The Landlord is a New York limited liability company and the Debtor is a Delaware

corporation.  The Lease was executed in New York, the Premises is in New York, both the

Landlord and Tenant maintain offices and conduct businesses in New York, and the Lease

required a security deposit be held in a bank in New York City.  Additionally, the Landlord-

Tenant Action is pending in New York.

New York state law applies to the Lease.

---

[15] *In re Stoltz*, 197 F.3d 625, 629 (2d Cir. 1999).

[16] D.I. 100 at ¶ 22.  *See Montgomery v. Samory*, 99 U.S. 482, 483 (1878) (*citing* Story, Confl. Laws (6th ed.), sect. 424; Wharton, Confl. Laws, sect. 273) ("Courts and jurists everywhere agree that the title to real estate is governed by the laws of the place where it is situated, the universal rule being that the title to such property can only be acquired, passed, or lost according to the *lex loci rei sitoe* [sic]."); *see also Crawford v. Texaco, Inc.*, 40 F.R.D. 381, 382 n. 1 (S.D.N.Y. 1966) (citations omitted) ("Since the action arises out of a lease of Louisiana land and the use to which the lessee put the land and since the judgment will affect the lessee's interest in the land, the New York courts would apply Louisiana's substantive law in deciding the issues presented."); *Mallory Assocs., Inc. v. Barving Realty Co.*, 90 N.E.2d 468, 471 (1949) (citations omitted).

[17] *See generally* D.I. 112; *see also* D.I. 145 (Hr'g Tr.) at 26:10-19 (At the hearing, Debtor's counsel acknowledged New York law "probably" applies.).

### C. Calculation of the Landlord Claims is the Ultimate Issue Before the Court

The Landlord asserts that the Lease is an "unexpired" lease in which the Debtor retains a property interest for purposes of establishing a claim under section 365 of the Bankruptcy Code. The Debtor argues the Lease expired in January 2022; thus, section 365 does not apply, and any potential claim should be calculated under section 503 of the Bankruptcy Code.

Under the facts of this case, the Court finds that whether the Lease was expired or unexpired is a distinction without a difference to the outcome[18] – if "unexpired" the Debtor must pay the Landlord for "obligations" pursuant to section 365(d)(3); if "expired" the Debtor must compensate the Landlord under section 503(b). For the reasons explained below, the calculation of the Landlord Claims is the same whether analyzed under section 365 or section 503.

### i.    Administrative Claim Under Section 503(b)

If the Debtor is correct and the Lease is "expired," all the Landlord Claims, including Stub Rent, would be calculated under section 503(b). "[T]he payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled."[19] While prorated rent is not permitted under section 365(d)(3), a landlord may seek stub rent under section 503(b)(1)(A).[20] The Third Circuit has held:

> It is beyond dispute that all of the Debtors' landlords whose properties are occupied and used post-petition have valid administrative claims. The only issues to be decided are the

---

[18] *In re Philadelphia Rittenhouse Dev., L.P.*, No. BR 10-31201 SR, 2011 WL 13043475, at *24 n. 25 (Bankr. E.D. Pa. May 25, 2011) (citation omitted) ("[T]he Court need not and does not address itself to every issue and argument raised by the parties, instead confining its findings of fact and conclusions of law to matters which are of threshold and dispositive significance.").

[19] *Zagata Fabricators, Inc. v. Superior Air Prod.*, 893 F.2d 624, 627 (3d Cir. 1990) (citation omitted).

[20] *In re ZB Co., Inc.*, 302 B.R. 316, 319 (Bankr. D. Del. 2003).

amount of the claims and when the section 503(b)(1)(A) claims of all of the landlords should be paid.[21]

It is the Landlord's burden to "establish its claim is for an actual and necessary expense."[22] "[T]he mere fact that the Debtors are occupying the landlord's premises is sufficient, in and of itself, to establish that payment for that use and occupancy is an actual, necessary expense of preserving a debtor's estate under section 503(b)(1)."[23] Here, the Debtor asserts that there *is* evidence to the contrary[24] and that the Court should assess a fair market value for the Landlord Claims.[25]

The Delaware Bankruptcy court in *In re Sportsman's Warehouse, Inc.* counseled: "the Court must analyze the evidence submitted and determine, on a case-by-case basis, the amount of the benefit to the estate."[26] "Absent evidence to the contrary, the contract rate is presumed to be the fair rental value."[27] "Nonetheless, the debtor can submit evidence that the benefit to the

---

[21] *Id.* (citations omitted).

[22] *In re Sportsman's Warehouse, Inc.*, 436 B.R. 308, 312 (Bankr. D. Del. 2009) (citations omitted).

[23] *Id.* (citations omitted, cleaned up).

[24] The Debtor submitted the Declaration of Joseph L. Murphy in support of its objection (the "Murphy Declaration") and presented his testimony. *See* D.I. 112, Ex. A. Mr. Murphy declares that the Lease is above-market rate, that there are several floors available in the building where the Premises is located, as well as alternative available rental space in the same zip code, at a lesser rate. *See* Murphy Declaration at ¶¶ 4, 5, and 7.

[25] *Matter of Cont'l Airlines, Inc.*, 146 B.R. 520, 528 (Bankr. D. Del. 1992) (citation omitted, cleaned up) ("Because bankruptcy proceedings are considered to be equitable, however, the landlord's right to collect monetary relief is somewhat curtailed: a debtor is generally required to pay only a reasonable value for the use and occupancy of the landlord's property, which may or may not equal the amount agreed upon in the terms of the lease."); *In re Williams Cont. Furniture, Inc.*, 148 B.R. 799, 804 (Bankr. E.D. Va. 1992) (citations omitted) ("While the Court has discretion to fix the reasonable administrative rent, the contract rent is presumptively the reasonable value for such use and occupancy. However, this presumption may be rebutted by demonstrating that the reasonable worth of the lease is different from the contract rate.").

[26] *Sportsman's Warehouse, Inc.*, 436 B.R. at 310.

[27] *ZB Co., Inc.*, 302 B.R. at 319 (citation omitted). *Sportsman's Warehouse, Inc.*, 436 B.R. at 315 (citations omitted) ("The amount of the benefit to the estate is presumed to be the contract rate of rent. Nonetheless, the debtor can submit evidence that the benefit to the estate is lower than the contract rate. That evidence may include, but is not limited to, proof of the fair market value of rent.").

estate is lower than the contract rate."[28]  "That evidence may include, but is not limited to, proof

of the fair market value of rent."[29]

The Debtor presented the testimony of Joseph L. Murphy, the Debtor's President and

CEO, and submitted the Murphy Declaration.[30]  Mr. Murphy testified that he searched for a

substitute location for the Debtor's operations and spoke to several potential landlords of spaces

similar in location and comparable in size to the Premises, and operationally adequate, and none

sought monthly rent in excess of $20,000 per month.[31]  Mr. Murphy further testified that the rent

for the Premises should be less than $17,000 per month.[32]

A witness to the value of a piece of real property need not be an expert, and Mr. Murphy

can testify to the fair market value if "his opinion [i]s based on his knowledge of similar

properties in the area."[33]  Mr. Murphy formulated a view on the fair market rental value based on

his search for a substitute location.  He did not demonstrate an adequate assessment of the

market or sufficient knowledge of the purported comparable properties in the vicinity.  The

Court was not convinced based on testimony referencing a few alternative rental values, without

property descriptions (such as size, quality, condition, amenities) and relevant lease terms, that

the witness had adequate knowledge to form a judgment on the fair market rental value of the

---

[28] *Sportsman's Warehouse, Inc.*, 436 B.R. at 315.

[29] *Id.* (cleaned up).

[30] *See* D.I. 112 and 145.  The Murphy Declaration was admitted into evidence at the Hearing.  *See* D.I. 145 at 35:15-22.

[31] D.I. 145 at 41:2-5.

[32] D.I. 145 at 42:22-43:4.

[33] *See United States v. Russo*, 166 F. App'x 654, 666 (3d Cir. 2006).

Lease. Consequently, the evidence is insufficient to rebut the contract rate of rent.[34] Mr. Murphy is not a real estate expert, and although he is the principal of the Debtor, his testimony does not have the probative value of an expert on leasing or real estate issues.[35] Additionally, the Debtor did not present any market survey or other credible evidence to rebut the contractual rate.[36] Based on the evidence, the Court concludes that the contract rent is presumed reasonable and not above the market rate.

If the Lease is "expired," section 503(b) would apply to all of the Landlord Claims and would be calculated at the base monthly rental rate in the Lease.[37]

Because Stub Rent is only allowable under section 503 (as opposed to section 365), the Landlord is entitled to Stub Rent (October 2-31, 2023) based on the pro-rated base monthly rent

[34] *In re Phillips*, 491 B.R. 255, 260 n. 7 (Bankr. D. Nev. 2013) (holding that Zillow estimates are unreliable and not admissible as a compilation under Fed. R. Evid. 803(17)); *In re DeBilio*, No. BAP CC-13-1441, 2014 WL 4476585, at *7 (B.A.P. 9th Cir. Sept. 11, 2014) (holding that "evidence of value in the form of a print out from the zillow website; zillow, however, does not constitute credible evidence of value."); *In re Darosa*, 442 B.R. 173, 177 (Bankr. D. Mass. 2010) (holding that Zillow "zestimates" are "inherently unreliable").

[35] *United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003) (cleaned up) ("A witness testifying about business operations may testify about inferences that he could draw from his perception of a business's records, or facts or data perceived by him in his corporate capacity."); *Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1193 (3d Cir. 1995) (holding that "this court, like other courts, has commonly interpreted the rule [701] to permit individuals not qualified as experts, but possessing experience or specialized knowledge about particular things, to testify about technical matters that might have been thought to lie within the exclusive province of experts.").

[36] The Murphy Declaration contains a map showing available commercial real estate in the zip code of the Premises. The source of the map and the specific details for each property are unknown. As a result, the map is insufficient to establish the commercial rental market in New York City. *See* D.I. 112 at p. 3 and *supra*, note 34.

[37] The Landlord argues that Article 50 survives termination and/or expiration of the Lease, however, the Court finds that treble damages are not "actual, necessary costs and expenses of preserving the estate." *In re CIS Corp.*, 142 B.R. 640, 642 (S.D.N.Y. 1992) (citations omitted) ("To require the entity to pay any expenses that are not necessary to its preservation or recovery would thus conflict with the goals of bankruptcy law."). Although the Landlord is entitled to payment for occupancy of the Premises, as discussed herein, the treble-rent provision does not have a "clear relationship between the expenditures made and the benefit conferred on the estate [which] must . . . be shown by the movant." *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) (citations omitted).

($25,335.50). The Court will award the Landlord an administrative expense claim for Stub Rent

in the amount of $24,518.23.

   ii.    *"Obligations" under Section 365(d)(3)*

   Conversely, if the Landlord is correct, and the Lease is "unexpired," the Debtor must pay

all "obligations" under section 365(d)(3) which states, in part:

> The trustee shall timely perform all the obligations of the debtor,
> except those specified in section 365(b)(2), arising from and after
> the order for relief under any unexpired lease of nonresidential real
> property, until such lease is assumed or rejected, notwithstanding
> section 503(b)(1) of this title. . .[38]

The Third Circuit has held, "The clear and express intent of § 365(d)(3) is to require the trustee

to perform the lease in accordance with its terms.  To be consistent with this intent, any

interpretation must look to the terms of the lease to determine both the nature of the 'obligation'

and when it 'arises.'"[39]

   The Landlord argues that the Lease is unexpired and the Debtor is obligated to perform

under the Lease, including satisfaction of the "obligations" set forth in Article 50 (providing for

Monthly Treble Damages) and Article 51 (providing for Attorney's Fees).[40]

   In determining an "obligation" under section 365, the Third Circuit explained, "In the

context of a lease contract, ... the most straightforward understanding of an obligation is

something that one is legally required to perform under the terms of the lease and that such an

---

[38] 11 U.S.C. § 365(d)(3).

[39] *Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir. 2001).

[40] The Debtor "recognizes that, during a holdover period, the amount of the administrative rent claim is determined by the rental rate set forth in the contract. . . . This, however, is a presumption which the debtors can rebut by demonstrating the reasonable worth of the premises." D.I. 112 at ¶ 18.

obligation arises when one becomes legally obligated to perform."[41]  The Ninth Circuit has also

held that claims under section 365(d)(3) "are entitled to administrative priority even when they

may exceed the reasonable value of the debtor's actual use of the property."[42]  The Ninth Circuit

reasoned that the "notwithstanding section 503(b)(1)" proviso "exempts the amount of lease

obligations that a trustee must timely pay under § 365(d)(3) from § 503(b)(1)'s limitation of

administrative expenses to the fair value of the debtor's use of the property."[43]  "When the

trustee fails to pay an obligation, the amount accorded administrative priority is similarly not

subject to the § 503(b)(1) limitation."[44]

### iii.    *Liquidated Damages as an "Obligation"*

The Landlord maintains that treble rent, under Article 50, is allowable as liquidated

damages,[45] but the Debtor argues that, in bankruptcy, liquidated damages are considered a

penalty and are unenforceable.

---

[41] *Montgomery Ward Holding Corp.*, 268 F.3d at 209.  *See also In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 479 (Bankr. D. Del. 2006) (*citing Montgomery Ward Holding Corp.*, 268 F.3d at 209).  *Goody's Family Clothing, Inc. v. Mountaineer Property Co. II, LLC (In re Goody's Fam. Clothing, Inc.)*, 401 B.R. 656, 663 (D. Del. 2009), *aff'd sub nom. In re Goody's Fam. Clothing Inc.*, 610 F.3d 812 (3d Cir. 2010) (citations omitted; cleaned up) ("With the 1984 Amendments, however, Congress altered the procedure by allowing commercial landlords to bypass § 503(b), in what is now codified as § 365(d)(3).  Notwithstanding the administrative expense procedure of § 503(b)(1), §365(d)(3) states, debtors shall timely perform all the obligations under any unexpired lease of nonresidential real property that arise between the petition-date and the time the lease is assumed or rejected.  In other words, § 365(d)(3) makes recovery of post-petition rent automatic, rather than requiring landlords to bring, and prove, a § 503(b)(1) administrative expense claim.").

[42] *Cukierman v. Uecker (In re Cukierman)*, 265 F.3d 846, 850 (9th Cir. 2001) (*citing Towers v. Chickering & Gregory (In re Pac.-Atl. Trading Co.)*, 27 F.3d 401, 405 (9th Cir. 1994)).

[43] *Id.* (cleaned up).

[44] *Id.*

[45] *In re Helios & Matheson Analytics, Inc.*, 633 B.R. 115, 119 (Bankr. S.D.N.Y. 2021) (citation omitted; cleaned up) ("Liquidated damages are an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would result from breach of the agreement.").

Section 365(d)(3) states that:

> The trustee shall timely perform all the obligations of the debtor, **except those specified in section 365(b)(2)**, arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.[46]

Section 365(b)(2) provides:

> Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to--
>
> the satisfaction of any **penalty rate or penalty provision** relating to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease.[47]

Therefore, the Court must determine if the Monthly Treble Damages are a "penalty rate" or "penalty provision."[48]

"A liquidated damage provision has its basis in the principle of just compensation for loss. Liquidated damages that constitute a penalty, however, violate public policy, and are unenforceable. A provision which requires damages grossly disproportionate to the amount of actual damages provides for a penalty and is unenforceable."[49] "In the absence of any

---

[46] 11 U.S.C. § 365(d)(3) (emphasis added).

[47] 11 U.S.C. § 365(b)(2)(D) (emphasis added). *See also Helios & Matheson Analytics, Inc.*, 633 B.R. at 119 (citation omitted; cleaned up) ("Generally, contracting parties are free to agree to a liquidated damages clause unless the clause is unconscionable or contrary to public policy.").

[48] *See Eagle Ins. Co. v. BankVest Cap. Corp. (In re BankVest Cap. Corp.)*, 360 F.3d 291, 298 (1st Cir. 2004) (holding that "the legislative history indicates that Congress intended § 365(b)(2)(D) to free debtors from lease provisions requiring the payment of penalty rates"). *Helios & Matheson Analytics, Inc.*, 633 B.R. at 119–20 (citations omitted; cleaned up) ("Such a provision fixing damages in the event of breach is valid if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation. If the amount fixed is plainly or grossly disproportionate to the probable loss, the provision is in the nature of a penalty and thus will not be enforced.").

[49] *Trs. of Columbia Univ. in City of N.Y. v. D'Agostino Supermarkets, Inc.*, 162 N.E.3d 727, 731 (N.Y. 2020) (citations omitted; cleaned up).

countervailing public policy concerns, freedom of contract prevails in an arm's length transaction between sophisticated parties."[50]

In determining whether treble rent is allowable under section 365, the Court considers the following cases. In *In re Food City, Inc.*,[51] the court contemplated whether a $250,000 "going dark" fee was a penalty or an obligation under the lease. The *Food City* court found that section 365(d)(3) included obligations such as rent, common area maintenance charges, and trash pick-up but not recovery of liquidated damages, penalties, or other extraordinary fees.[52] The Debtor asserts that the Monthly Treble Damages are a liquidated damages penalty akin to that in *Food City*.

In *In re Joshua Slocum, Ltd.*,[53] the court agreed that "even a modest measure of liquidated damages ... cannot be collected if it is found to be a penalty," but distinguished the *Food City* one time going dark charge from a graduated charge dependent on the duration of a black-out.[54] The *Joshua Slocum* court required evidence to determine whether the "going dark" charge bore a reasonable relationship to the actual damages.[55]

---

[50] *Seymour v. Hovnanian*, 180 N.Y.S.3d 33, 41 (N.Y. App. Div. 2022) (citation omitted, cleaned up). The Landlord argues that New York courts routinely enforce treble rent as litigating damages, citing to the case of *Victoria's Secret*. In that case, the court upheld "summary judgment to defendant landlord on its counterclaim for holdover rent at three times the monthly rent under article 21(A) of the lease after plaintiff tenant failed to vacate upon defendant's termination of the lease for nonpayment." *Victoria's Secret Stores, LLC v. Herald Square Owner LLC*, 181 N.Y.S.3d 531, 532 (N.Y. App. Div. 2022). *Victoria's Secret*, however, is not a bankruptcy case and the court was not bound by section 365(d)(2)(D).

[51] 95 B.R. 451 (Bankr. W.D. Tex. 1988).

[52] *Id.* at 456.

[53] 103 B.R. 601 (Bankr. E.D. Pa. 1989).

[54] *Id.* at 606.

[55] *Id.* at 607; *see In re Orient River Invs., Inc.*, 112 B.R. 126, 129–30 (Bankr. E.D. Pa. 1990) ("The instant claim of the Landlord that over $10,000 in rent-credits should be forfeited by reason of the Debtor's late payment of rents is, in essence, an attempt to impose late charges. However, it is effectively a late charge measured by over thirty (30%) percent of the monthly rents, which is comparable to the draconian penalty for blackouts . . . ").

Like the instant case, in *In re T.R. Acquisition Corp.*,[56] the initial term of the lease ended,

the tenant became a holdover month-to-month tenant, and the lease provided for double-rent for

the holdover period.  The *T.R. Acquisition Corp.* court held the double rent provision was an

unenforceable penalty under New York law, since the remedy was grossly disproportionate to

the actual damages covered by the breach in holding over.  The court explained:

> The question presented, therefore, is whether the provision calling
> for double rent in the event of a failure to vacate is an enforceable
> damages clause or an unenforceable penalty.  Where there is no
> evidence of a gross deviation from actual damages, courts will
> enforce a liquidated damages clause calling for double or even
> treble rent when a tenant fails to timely vacate premises.
> **However, where there is evidence of gross disproportion, a
> damages clause will not be enforced. . . . Because it is possible
> to gauge the actual damages the Landlord sustained
> occasioned by the Tenant's breach in holding over, and
> because the inescapable conclusion is that the double rent
> called for . . . is grossly disproportionate to the actual damages,
> that provision is deemed a penalty for failure to vacate the
> premises and will not be enforced.**[57]

Here, the Debtor presented evidence of the fair market monthly rental rate for the

Premises.[58]  Although the Court did not adopt the Debtor's evidence for purposes of establishing

the applicable rental rate under section 503(b), the Court finds that the Debtor's evidence rebuts

---

[56] 309 B.R. 830 (S.D.N.Y. 2003).

[57] *Id.* at 837–38 (citations omitted, emphasis added).

[58] *Koylum, Inc. v. Peksen Realty Corp.*, No. 99 CV 3793 (ADS), 2004 WL 5599307, at *7 (E.D.N.Y. Dec. 2, 2004)
(citations omitted, cleaned up) ("[T]he liquidated amount must bear a reasonable proportion to the probable loss.  If
the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will
not be enforced.  On the other hand, courts will enforce a liquidated-damages clause when the liquidated amount
reasonably measures the anticipated harm.  Where there is no evidence of a gross deviation from actual damages,
courts will enforce a liquidated damages clause calling for double or even treble rent when a tenant fails to timely
vacate premises."); *Federal Realty L.P. v. Choices Women's Med. Ctr.*, 735 N.Y.S.2d 159 (N.Y. App. Div. 2001)
(granting summary judgment enforcing a treble-rent liquidated-damages clause against non-vacating tenant, absent
evidence that sum was grossly disproportionate to the actual damages); *Thirty-third Equities Company, LLC v.
Americo Group, Inc.*, 743 N.Y.S.2d 10 (N.Y App. Div. 2002) (enforcing a liquidated-damages clause obligating the
holdover tenant to pay two and one-half times the monthly rent); *Bates Adver. USA, Inc. v. 498 Seventh, LLC*, 739
N.Y.S.2d 71, 73 (N.Y. App. Div. 2002) (upholding a liquidated-damages clause calling for a one-half rent
abatement per day if the landlord fails to make timely improvements of the premises).

the Monthly Treble Damages asserted by the Landlord.[59]  Additionally, there is nothing in the record relating the treble-multiple to the actual harm suffered by the Landlord.  Absent evidence connecting the three-multiples of rent to the Landlord's actual damages or the loss caused by the Debtor's holdover occupancy, the Court finds no basis for the treble rate.  The Court finds the Monthly Treble Damages provision is a penalty and will not be enforced.

Without doubt, the Landlord is entitled to remuneration for Post-Petition Rent (November and December 2023, and January 2024).  The most reasonable relationship to the damages suffered by the Landlord is the contractual rate of rent in the Lease prior to January 14, 2022.[60]  While this rate may arguably be stale, insufficient evidence was presented regarding any alternative rate upon which this Court could conclude otherwise.  Consequently, the Court will calculate the monthly Post-Petition Rent based on the Lease base monthly rent ($25,335.50) for the three-month period.  The Court will award the Landlord $76,006.50 for November and December 2023 and January 2024 rent.

In light of the foregoing, the contractual rate of rent is the only conclusive evidence of damages.  Thus, whether the Lease is "unexpired" and damages are calculated under section 365, or "expired" and damages are calculated under section 503, the monthly amount is identical.

---

[59] *Helios & Matheson Analytics, Inc.*, 633 B.R. at 120 (citation omitted; cleaned up) ("The burden of demonstrating that a liquidated damages provision is an unenforceable penalty lies on the party seeking to avoid it."). The Debtor asserts that the Court should utilize the "equitable powers Congress granted it in section 365(d) to reduce the Landlord's [administrative claim] to an amount consistent with the post-petition benefit it conferred." D.I. 112 at ¶ 23. The Debtor relies on section 365(d)(5) which is specific to "unexpired lease of personal property." *See* 11 U.S.C. § 365(d)(5). The Lease is a lease for real property *not* personal property so section 365(d)(5) is not applicable.

[60] *In re HQ Glob. Holdings, Inc.*, 282 B.R. 169, 174 (Bankr. D. Del. 2002) (citations omitted, cleaned up) ("There is generally a presumption that the rental value fixed in the lease will control, unless there is convincing evidence that such rental rate is unreasonable.); *In re Mohawk Indus., Inc.*, 54 B.R. 409, 412 (Bankr. D. Mass. 1985) (citations omitted) ("[T]his Court in the absence of any convincing evidence to the contrary, will presume that the rental payment fixed in the lease is reasonable.").

Given this outcome, it unnecessary to delve into complex and disputed issues of New York landlord-tenant law.[61]

### iv.    *Administrative Expense Claim for February 2024 Rent*

The Landlord also seeks a February 2024 Rent pursuant to section 503(b)(1)(A).  Again, whether expired or unexpired, section 503(b) applies.[62]  The Court will award such claim at the contract rate of $25,335.50 per month, based on the analysis above.

### D. Attorney's Fees

In addition, the Landlord seeks $20,000 in attorney's fees pursuant to Article 51 of the Lease, which provides that "if Tenant's lease term shall have expired at the time of making such [attorney's fee] expenditure or incurring such [attorney's fees] obligations, such sum shall be recoverable by Landlord as damages."  The Landlord asserts that these fees are in connection with enforcing the Lease.

Under New York law, "[i]n the absence of a new agreement, ... a tenant who remains on the property after the expiration of a lease, whether the tenant is properly classified as a holdover or a tenant at will, may be subject to the terms of the original lease."[63]  Here, the Debtor

---

[61] As set forth in the pleadings, the Landlord argues, under state law, that the Lease is "unexpired." *See, e.g., Super Nova 330 LLC v. Gazes*, 693 F.3d 138, 142-43 (2d Cir. 2012) ("Under New York law, therefore, while the issuance of a warrant of eviction cancels any existing lease and seemingly terminates the landlord-tenant relationship, the tenant, in fact, retains a residual interest in the lease until the execution of the warrant.  Prior to such execution, the state court may vacate the warrant of eviction for good cause and thereby reinstate the lease."); *In re Payam, Inc.*, 642 B.R. 365, 367 (Bankr. S.D.N.Y. 2022) (hold that "the issuance of the warrant of eviction no longer cancels the nonresidential lease and annuls landlord-tenant relationship. So, upon the filing of the bankruptcy petition, the lease becomes property of the estate, and the automatic stay prevents the landlord from regaining possession unless the stay is lifted.").  The Court need not address state law since the Landlord Claims are determined under the Bankruptcy Code.

[62] The period of occupancy *after* any purported rejection is evaluated under section 503(b)(1)(A).  *Sportsman's Warehouse, Inc.*, 436 B.R. at 315.

[63] *TSNY Mgmt. L.L.C. v. P'ship 93 L.P.*, Case No. 08 cv 1266, 2010 WL 11627255, at *8 (E.D.N.Y. Nov. 1, 2010).

remained in the Premises and is subject to Article 51.  The Court will award reasonable and documented attorney's fees incurred by the Landlord.

The Landlord's demand was not accompanied by a detailed invoice.[64]  The Landlord's counsel shall submit copies of invoices to the Debtor.  If the Debtor objects to the reasonableness of the fees and the parties cannot resolve the objection within 14 days of receipt of the invoices, then the Debtor shall file with the Court and serve on the Landlord, U.S. Trustee, and Subchapter V Trustee an objection to the fees, and the Court will decide the matter.

### E.  Relief from Stay/Immediate Surrender

Lastly, by the Motion, the Landlord requests relief from the automatic stay to pursue the Landlord-Tenant Action.  The Debtor vacated the Premises on February 29, 2024.  As a result, the relief requested related to the automatic stay is moot, and the Court need not address the issue.

---

[64] *In re Pac-W. Telecomm, Inc.*, 377 B.R. 119, 126 (Bankr. D. Del. 2007) ("The Court will consider the Landlord's request for attorneys' fees upon submission of detailed invoices."). *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (citations omitted) ("The attorney's fee must be reasonable and not in the nature of a penalty or forfeiture.").

## CONCLUSION

As set forth above, the Motion will be granted, in part, and denied, in part.  The Landlord is entitled to: (a) Stub Rent in the amount of $24,518.23; (b) Post-Petition Rent in the amount of $76,006.50; (c) February 2024 Rent in the amount of $25,335.50; and (d) Attorney's Fees upon agreement or a subsequent Order of the Court.

An Order will be issued.

Dated: May 9, 2024

J. Kate Stickles
United States Bankruptcy Judge