## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>JLM COUTURE, INC.,<br><br>     Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 23-11659 (JKS)<br><br>**Re: Docket No. 195** |

### MEMORANDUM ORDER WITH RESPECT TO
### JLJ BRICKEN LLC'S MOTION FOR RECONSIDERATION

Before the Court is the *Motion by JLJ Bricken LLC for Reconsideration of Certain Findings of Fact and Conclusions of Law Concerning the Opinion [D.I. 173] and Order [D.I. 174]* [D.I. 195] (the "Reconsideration Motion"). The Landlord[1] seeks reconsideration of the Opinion [D.I. 173] (the "Opinion") and accompanying Order [D.I. 174] (the "Order"), entered May 9, 2024, ruling on the *Motion by Landlord for an Order: (A) Directing Immediate Payment of Post-petition Stipulated Damages Pursuant to 11 U.S.C. § 365(d)(3), (B) Allowing and Directing Immediate Payment of Stub Period Stipulated Damages Pursuant to § 503(b), and (C) Granting Relief from the Automatic Stay to Continue the Landlord-Tenant Action* [D.I. 100] (the "Motion"). The Court having considered the Reconsideration Motion, the Debtor's objection [D.I. 207], and the Landlord's reply [D.I. 209] (the "Reply"); and upon consideration of the record and proceedings before the Court; the Court hereby grants, in part, and denies, in part, the Reconsideration Motion for the reasons set forth herein.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Opinion.

## Jurisdiction

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Legal Standard

2.     "Reconsideration remains a form of relief generally reserved for extraordinary

circumstances."[2]  The purpose of a motion for reconsideration is to "correct manifest errors of

law or fact or to present newly discovered evidence."[3]  A motion for reconsideration under

Bankruptcy Rule 9023:

> may not be used as a vehicle to relitigate issues the Court has
> already decided, nor should Rule 9023 be used to advance
> arguments that a party could have made before judgment, but
> neglected to do so.  However, a prior decision should be
> reconsidered where it appears the Court has overlooked or
> misapprehended some factual matter that might reasonably have
> altered the result reached by the Court.  As this Court has
> previously stated, while it is true that a motion for reconsideration
> should not be used to reargue the facts or applicable law, it is
> appropriate when the facts were presented but overlooked by the
> Court.[4]

3.     A motion to reconsider that asks a court to alter or amend a judgment "should be

granted only where the moving party shows that at least one of the following grounds is present:

(1) an intervening change in the controlling law; (2) the availability of new evidence that was not

available when the court made its initial decision; or (3) the need to correct a clear error of law or

fact or to prevent manifest injustice."[5]  The third ground may apply if the court "failed to discern

---

[2]  *In re Energy Future Holdings Corp.*, 904 F.3d 298, 316 (3d Cir. 2018) (cleaned up; citation omitted).

[3]  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (citation omitted).

[4]  *In re Energy Future Holdings Corp.*, 575 B.R. 616, 628 (Bankr. D. Del. 2017) (cleaned up; citations omitted).

[5]  *Energy Future Holdings Corp.*, 904 F.3d at 311 (cleaned up; citations omitted).

a critical fact that profoundly altered the underlying legal determination."[6]  A motion for reconsideration "is not properly grounded on a request that a court rethink a decision already made."[7]

### Discussion

4.    The Landlord does not allege that there has been an intervening change in controlling law nor does the Landlord claim that new evidence is available.  Instead, the Landlord argues that six "Findings and Conclusions" in the Opinion "contain manifest errors of fact and law."[8]  The Court addresses each of the Landlord's disputed finding seriatim.

5.    Disputed Finding #1.  The Landlord challenges the following sentence in footnote 9 of the Opinion: "The Debtor does not stipulate to any claim in the trebled amount."  Footnote 9 explains the Court's use of the defined term "Monthly Treble Damages."  In the Motion, the Landlord used the defined term "Stipulated Damages."  The Debtor, however, did not agree nor stipulate to the amount of the administrative expense claim or "damages" sought in the Motion. Because the Motion was contested and the amount of claim at issue, the Court stated in footnote 9 that the "Debtor did not stipulate to any claim in the trebled amount" and, consequently, the Court chose not to adopt the Landlord's defined term "Stipulated Damages" and, instead, used the neutral term "Monthly Treble Damages" based on the language in Article 50 of the Lease. There is no dispute that the Debtor signed the Lease (including Article 50), but the Debtor did not stipulate or agree to the amount of any administrative expense claim asserted in the Motion. The Landlord's overreading of the footnote 9 does not meet the standard for reconsideration.

---

[6]  *In re Energy Future Holdings Corp.*, 904 F.3d at 316.

[7]  *Millington v. GEICO*, Civ. No. 14-929, 2015 WL 7194462, *1 (D. Del. Nov. 16, 2015) (citation omitted).

[8]  Reconsideration Motion at ¶ 18.

6.      <u>Disputed Finding #2</u>. The Landlord argues the Court did not address additional rent. Although sparsely presented, the Landlord sought "additional rent"[9] in its Motion. Additionally, the Debtor stipulated to the admission into evidence of, among other things, (i) Exhibit 1, the Lease, and (ii) Exhibit 14, the Lease Ledger identifying additional rent, including electric, sprinkler, and water charges (the "<u>Additional Rent</u>")[10] (the Debtor only stipulated to the accuracy of Exhibit 14).[11] Exhibit 14 reflects prepetition charges from July 2021 through December 2021.[12] The Landlord did not present evidence regarding the actual post-petition Additional Rent.[13]

7.      The Lease, however, provides for Additional Rent, making it an obligation under section 365(d)(3).[14] Furthermore, the Additional Rent, like base rent, is an actual and necessary cost of preserving the estate under section 503(b)(1)(A) of the Bankruptcy Code.[15]

8.      The Court made a mistake by not culling out the Additional Rent charges for the Landlord's administrative claim under sections 365(d)(3) and/or 503(b)(1)(A) for the period from the Petition Date through February 29, 2024. Paragraph 2 of the Order is amended to include the following additional subparagraph:

(d)      The Landlord and the Debtor are directed to confer and submit under certification of counsel a ledger containing the actual

---

[9] D.I. 100, ¶¶ 8, 19. Additional rent was included in the Landlord's use of the term "Stipulated Damages."

[10] *See* D.I. 136 (JLJ Bricken LLC's List of Exhibits).

[11] D.I. 145 (H'rg Tr.) at 11:18-20 ("As far as the spreadsheet at Exhibit 14 we stipulate that it is accurate. We don't stipulate to anything beyond that.").

[12] *See* Ex. 14 (base rent and Additional Rent were used to calculate the Landlord's request for Treble Monthly Damages).

[13] The Landlord attached an updated ledger to its Reply regarding the Additional Rent (D.I. 209, Ex. A), but that ledger was not admitted into evidence.

[14] Ex. 1 (Lease), Art. 12, 29, 30 and 45.

[15] 11 U.S.C. § 503(b)(1)(A). Exhibit 14 sets forth base rent and Additional Rent which the Landlord used to calculate an average monthly rent. The Landlord then used the "average monthly rent" to calculate its sought after "treble rent" under Article 50 of the Lease. Although the Court did not award treble damages, the Additional Rent charges are actual and necessary expenses of administering the Debtor's estate, like the awarded base rent.

electric, sprinkler and water charges (the "Additional Rent") for
the period from the Petition Date through February 29, 2024.
Thereafter, the Court will issue an Amended Order.

9.      Disputed Findings #3-5.  In the disputed findings 3 through 5, the Landlord

argues (a) the lease is unexpired; (b) Article 50 survives termination and/or expiration of the

lease; and (c) Article 50 requires payment of Monthly Treble Damages ("Stipulated Damages" as

defined by the Landlord) as a section 365(d)(3) payment obligation.  With respect to these three

issues, the Reconsideration Motion does not raise any new facts, changes in controlling law, or

clear error of fact or law to support reconsideration.[16]  The Landlord's arguments either were

(a) rejected by the Court in the Opinion, or (b) are new arguments that are not the result of any

change in the law or the availability of new evidence.  Therefore, there is no basis to grant the

Reconsideration Motion as to Disputed Findings #3-5.

10.     Disputed Finding #6.  The Landlord contends that the Court erred in several

respects in determining that the Monthly Treble Damages provision is a penalty and

unenforceable.

11.     The Court further explains its legal analysis with respect to its ruling to address an

argument raised in the Reconsideration Motion; however, this discussion does not change the

Court's ruling.  The Landlord claims that there was no "default triggered by non-compliance with

a nonmonetary obligation under the Lease giving rise to a penalty provision that must be

satisfied."[17]  For the reason explained below, that is incorrect.

---

[16]  While not a clear error, footnote 21 in the Opinion contains a citation error. *See In re JLM Couture, Inc.*, No. 23-11659 (JKS), 2024 WL 2103428, at *4, n. 21 (Bankr. D. Del. May 9, 2024). Footnote 21 in the Opinion is amended to read as follows:

> *In re Goody's Fam. Clothing Inc.*, 610 F.3d 812, 819 (3d Cir. 2010) (quoting *In re ZB Co.*, 302 B.R. 316, 319 (Bankr. D. Del. 2003)).

[17]  *See* Reconsideration Motion at ¶ 34.

12.    Section 365(d)(3) of the Bankruptcy Code provides "[t]he trustee shall timely perform all the obligations of the debtor, *except those specified in section 365(b)(2)*, arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."[18]  Section 365(b)(2) states: "Paragraph (1) of this subsection," which addresses the cure of defaults under a contract or lease that the debtor seeks to assume, "*does not apply to a default* that is a breach of a provision relating to … (d) the satisfaction of *any penalty rate or penalty provision relating to a default* arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease."[19]  Based on the plain language of the statute, this subsection only applies if a default has occurred.

13.    Under New York law, "[w]hen a lease is unambiguous, [courts] look only to the language in the agreement to determine its meaning and the effect of a default by the tenant."[20] But "[c]ase law supports the contention that a tenant's failure to vacate premises upon termination of a lease constitutes a 'default.'"[21]  In reaching the same conclusion, the *Chatanow* court applied language similar to the language in the instant Lease.[22]

14.    Article 17 of the Lease (titled "Default") provides, in pertinent part, the Debtor would be in default under the Lease if the Debtor failed "in fulfilling any of the covenants of this

---

[18]  11 U.S.C. § 365(d)(3) (emphasis added).

[19]  11 U.S.C. § 365(b)(2)(D) (emphasis added).

[20]  *D'Esposito v. Downing St of Flushing Corp.*, 859 N.Y.S.2d 902 (table), No. SP 5723/07, 2008 WL 731775, *2 (N.Y. Dist. Ct. Mar. 19, 2008) (*citing Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (2004) and *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 170 (2002) (further citation omitted)).

[21]  *1414 Holdings, LLC v. Bms-Pso, LLC*, No. 652290/2012, 2013 N.Y. Misc. LEXIS 7382, at *11 (Sup. Ct. Aug. 20, 2013) (*citing Chatanow Assocs., Inc. v. 527 MDN Prop., Inc.*, 555 N.Y.S.2d 50, 50 (App. Div. 1st Dept. 1990) and *Simithis v. 4 Keys Leasing & Maintenance Co.*, 542 N.Y.S.2d 595, 597 (N.Y. Sup. Ct. 1989)).

[22]  *Chatanow Assocs., Inc.*, 555 N.Y.S.2d at 50 (describing a default as the lack of "observance or performance of any term or covenant").

lease other than the covenants for the payment of rent or additional rent." Importantly, the introductory language of the Lease states: "The parties ... hereby covenant as follows" and then lists the various Articles of the Lease. Article 50 provides, "Tenant acknowledges that possession of the demised premises must be surrendered to landlord at the expiration or sooner termination of the term of this lease." Based on Article 50, the Debtor covenanted to surrender the Premises to the Landlord at the expiration or termination of the Lease term. It is undisputed that the Debtor did not surrender the Premises at the expiration of the Lease term in January 2022.[23] The violation of this covenant constitutes a default under the Lease pursuant to the unambiguous language contained in the introductory paragraph and Articles 17 and 50 of the Lease.

15.     As a penalty for failing to surrender the Premises, Article 50 required the Debtor to pay "a sum equal to three times the average rent and additional rent which was payable per month under this lease during the last six months of the term thereof."[24] The Court determined that the "Monthly Treble Damages" were a penalty rate that did not reflect "the Landlord's actual damages or the loss caused by the Debtor's holdover occupancy."[25] This penalty rate was triggered by the Debtor's failure to surrender the Premises at the expiration of the Lease term, which is a non-monetary default. Therefore, the provision requiring the Debtor to pay Monthly Treble Damages was a penalty rate relating to a non-monetary default under the Lease. This places the obligation to pay Monthly Treble Damages squarely within the exception contained in

---

[23] In fact, as set forth in the Opinion, the Landlord filed a Thirty (30) Day Notice of Termination seeking to terminate the tenancy and remove the Debtor from the Premises on or before January 31, 2023. *See* D.I. 100 (Motion at Ex. B (Thirty (30) Day Notice of Termination, dated December 28, 2022); *see also* D.I. 173 (Op. at 2; n. 3) (*In re JLM Couture, Inc.*, No. 23-11659 (JKS), 2024 WL 2103428 at *1, n. 3.

[24] D.I. 139 (Lease) at Art. 50.

[25] Op. at 15 (*In re JLM Couture, Inc.*, No. 23-11659 (JKS), 2024 WL 2103428 at *8).

section 365(b)(2)(D) of the Bankruptcy Code. Because section 365(d)(3) does not require the

Debtor to timely perform obligations that fall under section 365(b)(2), the Debtor was not

obligated to pay the Monthly Treble Damages. Even with the above clarification regarding the

default under the Lease, Disputed Fact #6 fails to meet the standard for reconsideration.

## Conclusion

16.     WHEREFORE, for the reasons set forth above, the Reconsideration Motion is

**granted**, in part, as follows: (i) paragraph 2 of the Order is amended to add subparagraph (d);

and (ii) footnote 21 of the Opinion is amended to correct a citation error. The remainder of the

Reconsideration Motion is **denied** as it is not supported by a manifest error of law or fact or

newly discovered evidence. IT IS SO ORDERED.


Dated: June 21, 2024

J. Kate Stickles
United States Bankruptcy Judge

8