# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JLM COUTURE, INC.,<br><br>　　　　Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 23-11659 (JKS)<br><br>**Related D.I. 225** |

## OPINION

This is the third decision in this case related to the landlord JLJ Bricken LLC's (the "Landlord") request for allowance and payment of an administrative expense claim from the debtor JLM Couture, Inc. (the "Debtor").[1] The Landlord was previously awarded an administrative expense claim for post-petition rent and Attorney's Fees. The parties have been unable to reach agreement on the amount of Attorney's Fees or Additional Rent. The Court now considers the *Motion by Landlord for an Order Directing Immediate Payment of Post-Petition Attorneys' Fees and Additional Rent Pursuant to 11 U.S.C. § 365(d)(3)* (D.I. 225) (the "Motion"), the Debtor's objection to the Motion (D.I. 232) (the "Objection"), and the Landlord's reply (D.I. 233) (the "Reply"). The Court will grant, in part, and deny, in part, the Motion.

## FACTUAL BACKGROUND[2]

The Landlord leased to the Debtor (the "Lease") the fifth floor at 225 West 37th Street, New York, NY 10018 (the "Premises"). The Lease was entered into February 26, 2003, and the

---

[1] *In re JLM Couture, Inc.*, 661 B.R. 862 (Bankr. D. Del. 2024) (the "Administrative Expense Opinion"), *on reconsideration in part*, No. 23-11659 (JKS), 2024 WL 3100775 (Bankr. D. Del. June 21, 2024) (the "Reconsideration Memorandum Order" and together with the Administrative Expense Opinion, the "Prior Decisions"). Capitalized terms not defined herein shall have the meaning ascribed to them in the Prior Decisions.

[2] The Court writes for the benefit of the parties and assumes familiarity with the facts. A detailed recitation of the facts is included in the Prior Decisions.

original term was set to expire on February 28, 2013, but was subsequently extended through January 14, 2022.[3] Immediately prior to expiration, the monthly base rent under the Lease was $25,335.50. After January 2022, the Debtor remained in the Premises[4] until February 29, 2024.[5]

The Landlord filed the Original Motion[6] seeking an administrative expense claim at a Monthly Treble Damages rate pursuant to 11 U.S.C. § 365(d)(3), stub rent pursuant to 11 U.S.C. § 503(b), and relief from the automatic stay to pursue the prepetition Landlord-Tenant Action. Following an evidentiary hearing, the Court entered the Administrative Expense Opinion denying the Landlord's requested Monthly Treble Damages and awarding the Landlord an administrative expense claim for Stub Rent, Post-Petition Rent, and February 2024 Rent.[7] The Court also awarded Attorney's Fees, subject to the parties' agreement and/or subsequent order.[8]

The Landlord moved for reconsideration of the Administrative Expense Opinion (the "Reconsideration Motion").[9] As set forth in the Reconsideration Memorandum Order, the Court granted reconsideration, in part, allowing an administrative claim for "the actual electric, sprinkler, and water charges (the "Additional Rent") for the period from the Petition Date

---

[3] *See* D.I. 111 (Motion, Ex. A, as corrected).

[4] The Debtor maintains that the Landlord granted permission for the Debtor to holdover. *See* D.I. 112 at ¶ 5.

[5] D.I. 148 at p. 5, n. 8. On October 2, 2023 (the "Petition Date"), the Debtor filed bankruptcy.

[6] *Motion by Landlord for an Order: (a) Directing Immediate Payment of Post-Petition Stipulated Damages Pursuant to 11 U.S.C. § 365(d)(3), (b) Allowing and Directing Immediate Payment of Stub Period Stipulated Damages Pursuant to § 503(b), and (c) Granting Relief from the Automatic Stay to Continue the Landlord-Tenant Action* (D.I. 100) (the "Original Motion").

[7] *In re JLM Couture, Inc.*, 661 B.R. at 874.

[8] *Id.*

[9] *See* D.I. 195.

through February 29, 2024."[10] The parties were directed to confer and submit a ledger reflecting the actual Additional Rent and, thereafter, the Court would issue an Order.[11]

Having failed to agree on the Attorney's Fees to be awarded or the actual amount of Additional Rent, the Landlord filed the instant Motion.

## JURISDICTION

The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## ANALYSIS

### A. Attorney's Fees

In the Original Motion, the Landlord sought attorney's fees pursuant to Article 51 of the Lease, which provides, in part:

> If Landlord, as a result of a default by Tenant of any of the provisions of this lease . . . makes any expenditures or incurs any obligations for the payment of money, including but not limited to attorney's fees, in instituting, prosecuting or defending any action or proceeding, such sums so paid or obligations so incurred . . . shall be paid by Tenant to Landlord . . . and if Tenant's lease term shall have expired at the time of making such expenditure or incurring such obligations, such sum shall be recoverable by Landlord as damages.[12]

---

[10] *In re JLM Couture, Inc.*, No. 23-11659 (JKS), 2024 WL 3100775 at *3.

[11] *Id.*

[12] Motion, Ex. A (Lease) at Art. 51.

3

The Landlord initially sought Attorney's Fees "in an amount over $10,000" and, in its subsequent Reply, sought "over $20,000." However, neither request was accompanied by an invoice.[13] The Court found that the Debtor remained in the Premises and awarded "reasonable and documented attorney's fees incurred by the Landlord" as provided in Article 51 of the Lease. The Court directed the Landlord provide invoices to the Debtor, and if the parties could not reach an agreement with respect to the reasonableness of the Attorney's Fees, the Court would decide the matter.[14]

The parties were unable to agree on the amount of Attorney's Fees. The Landlord now seeks $94,251 in Attorney's Fees — $64,251 for The Rosner Law Group LLC[15] ("RLG") and $30,000 for John Silverman ("Silverman," and together with RLG, the "Landlord's Counsel").[16]

### i. RLG's Fees

The Court begins its review with the fees of RLG, counsel of record. "An express covenant by a tenant to reimburse his landlord for attorneys' fees expended in connection with proceedings to compel compliance by the tenant with the lease or to recover damages from non-compliance has long been judicially recognized in New York as consistent with public policy

---

[13] *In re Pac-W. Telecomm, Inc.*, 377 B.R. 119, 126 (Bankr. D. Del. 2007) ("The Court will consider the Landlord's request for attorneys' fees upon submission of detailed invoices."). *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (citations omitted) ("The attorney's fee must be reasonable and not in the nature of a penalty or forfeiture.").

[14] *In re JLM Couture, Inc.*, 661 B.R. at 874.

[15] The RLG invoices, for the period December 14, 2023 through July 26, 2024, reflect 166.7 hours of legal services rendered for a total of $66,971.50 in fees and $496.50 in expenses. The Motion, as well as certain invoices, reflect a $3,217.00 voluntary reduction in fees. Consequently, the Landlord seeks Attorney's Fees in the amount of $64,251.00 attributable to RLG ($62,754.50 in fees and $496.50 in expenses). D.I. 225, Ex. B.

[16] *See* D.I. 225, Ex. B and C.

and enforceable."[17] Although attorneys' fees are provided for by contract, "the court must review them for reasonableness."[18] Additionally, while the landlord "may recover attorneys' fees in connection with its collection efforts under the Lease, it is *not entitled to attorneys' fees in connection with litigation of purely bankruptcy law issues.*"[19] "The allowance of claims and objections thereto in bankruptcy proceedings are manifestly 'issues peculiar to bankruptcy law' in contrast to litigation to enforce an agreement."[20]

Under New York law,[21] the reasonableness of attorney's fees is examined considering the (i) complexity of the case, (ii) experience of counsel, (iii) skill exercised in handling the case, and (iv) results obtained.[22]

The Motion outlines the legal services RLG performed on behalf of the Landlord and includes invoices for the period December 14, 2023 through July 26, 2024.[23]

The Debtor objects to RLG's fees arguing they are unreasonable, the Original Motion was straightforward, and the work performed on the "Landlord's behalf was excessive and

---

[17] *In re 2495 Broadway Supermarket, Inc.*, 97 B.R. 765, 766 (Bankr. S.D.N.Y. 1989) (citations omitted).

[18] *In re 2495 Broadway Supermarket, Inc.*, 97 B.R. at 767 (citations omitted). *See Coleman v. Nat'l Lease Income Fund 3*, No. 91 CIV. 1827 (JSM), 1991 WL 136037, at *6 (S.D.N.Y. July 15, 1991) (citations omitted); *In re Westview 74th St. Drug Corp.*, 59 B.R. at 757 (holding that "attorney's fee must be reasonable and not in the nature of a penalty or forfeiture").

[19] *In re Child World, Inc.*, 161 B.R. 349, 354 (Bankr. S.D.N.Y. 1993) (emphasis added); *In re Best Products Co.*, 148 B.R. 413, 414 (Bankr. S.D.N.Y. 1992) ("Where litigated issues involve not basic contract enforcement questions, but issues peculiar to bankruptcy law, attorneys' fees will not be awarded absent bad faith or harassment by the losing party.").

[20] *In re Child World, Inc.*, 161 B.R. at 354. *See In re M. Fine Lumber Co., Inc.*, 383 B.R. 565, 569 (Bankr. E.D.N.Y. 2008) (same).

[21] In the Administrative Expense Opinion, the Court held that the Lease was governed by New York law. *In re JLM Couture, Inc.*, No. 23-11659 (JKS), 2024 WL 2103428 at *3.

[22] *In re 2495 Broadway Supermarket, Inc.*, 97 B.R. at 767 (citing J. Rasch, Landlord and Tenant Summary Proceedings, § 358 (Supp.1987)).

[23] D.I. 225, Ex. B.

5

unnecessary."[24] The Debtor contends its counsel billed only a few more hours than the Landlord's Counsel (198.3 versus 155.1) during the same period while addressing all aspects of the Chapter 11 case. The Debtor maintains that the Landlord (i) pursued a meritless position seeking payment of triple rent (noting the Court twice denied that request), (ii) unnecessarily argued the amount of post-petition rent due, and (iii) argued positions that were not novel or difficult, nor required specialized skill. The Debtor contends the Attorney's Fees are not reasonable compared to the results obtained.

The Landlord argues that RLG's fees are not conditioned on the successful outcome of a judicial proceeding. The Landlord contends that the fees incurred were not in connection with a "minor litigation skirmish," but were necessary to defend against the Debtor's plan to continue to avoid paying any post-petition rent. Additionally, the Landlord asserts that Article 51 of the Lease should be broadly interpreted.

As an initial matter, the Court reviews and denies fees incurred in connection with "litigation of purely bankruptcy law issues"[25] that any lawyer would perform for a creditor client. Fees related to the status of the bankruptcy case, the Gutman litigation, the plan, and the joinder in a motion to convert are peculiar to the bankruptcy case, as opposed to litigation related to the Lease, payment of rent, and removal of the Debtor from the Premises which are related to the collection efforts under the Lease. Similarly, the Landlord is not entitled to fees for legal services that are vague such that the Court cannot determine the task performed and/or the

---

[24] D.I. 232 at ¶ 20.
[25] *See* n. 19.

6

subject of the task. On these grounds, the Court denies the Landlord's request for payment of $4,567.50 in RLG's fees as itemized on the attached Addendum (exclusive of the $3,217.00 voluntary reduction).

The Court next examines the reasonableness of the remainder of RLG's fees ($59,683.59) considering the complexity of the case, the experience of counsel, the skill exercised in handling the case, and the results obtained.

### a. Complexity

The Debtor asserts that the Landlord's request for an administrative expense claim was unreasonable because the Landlord unsuccessfully sought triple rent in the Original Motion and subsequent Reconsideration Motion.

The Court finds that the factual issues were straightforward, but the legal issues were contested and required application of both New York and bankruptcy law. RLG's legal services[26] relate to (i) drafting, researching, and prosecuting the Original Motion and the Reconsideration Motion, including attending a two-hour evidentiary hearing[27] and several status conferences, (ii) researching and preparing a court-ordered post-hearing supplement, (iii) writing letters to the Court regarding the expiration of the section 365(d)(4) deadline and the Debtor's failure to vacate the Premises, and (iv) seeking Attorney's Fees and Additional Rent. RLG's invoices reflect time developing the factual record and researching and applying New York law

---

[26] The RLG invoices (D.I. 225, Ex. B) reflect 166.7 hours of work performed. The Court subtracted time related to issues peculiar to the bankruptcy case, as well as time RLG voluntarily struck from the invoices, but not time related to the Landlord's efforts to obtain payment of its administrative claim and Attorney's Fees and to lift the automatic stay or otherwise regain the Premises.

[27] D.I. 145.

7

and bankruptcy law. The record establishes that the compensation sought is reasonable and warranted considering the issues presented and the circumstances of the case, including Debtor's failure to pay post-petition rent and vacate the Premises.

### b. Experience of Counsel

The Debtor concedes that Mr. Rosner and his associates are experienced members of the Delaware bar.

### c. Skill Exercised in Handling this Case

The Debtor does not specifically address RLG's skill in handling this case, but argues counsel took meritless positions, the issues were not novel, and the work performed was excessive and unnecessary. RLG advocated for its client – seeking to recover rent and reclaim the Premises.

Although resolutions are favored in bankruptcy court, the parties were unable to reach agreement on any of their disputes. This necessitated the Landlord's course of action, which does not impugn RLG's skill but rather the parties' inability to reach consensus.

### d. Results Obtained

The Debtor argues that the Landlord asserted meritless positions spending approximately $95,000 to obtain a $125,000 recovery for the Landlord. The Debtor maintains that the Landlord unsuccessfully argued the treble rent theory in the Original Motion, and then again in the Reconsideration Motion, and argued two conflicting theories of recovery for payment of electricity under the Bankruptcy Code. Conversely, the record also reflects that the Landlord's

efforts resulted in an allowed administrative expense claim for unpaid rent and Additional Rent, and the Debtor vacated the Premises.

The Landlord obtained both monetary and non-monetary results in this litigation. Consideration of the results obtained is neutral.[28] Ultimately, the Lease provides for attorney's fees as a result of the Debtor's default under the provisions of the Lease.[29]

### e. Conclusion as to RLG's Attorney's Fees

For the reasons explained above, the Court denies RLG's fees for services related purely to bankruptcy law issues and grants the balance of RLG's fees ($59,683.50) as reasonable.

### ii. *Silverman Fees*

The Landlord also seeks $30,000 for legal services performed by Silverman at JLJ Property Management LLC, presumed to be in-house counsel for the Landlord.

As an initial matter, the Debtor argues that fees for in-house counsel are not recoverable because in-house counsel did not appear or participate in the litigation before the Court.[30] Under New York law, "attorneys' fees and costs should be awarded for litigation performed by in-house counsel if such fees would be awarded for the same work provided by outside counsel."[31]

---

[28] *See Krumme v. Westpoint Stevens Inc.*, 79 F. Supp. 2d 297, 308 (S.D.N.Y. 1999), *rev'd on other grounds*, 238 F.3d 133 (2d Cir. 2000).

[29] Motion, Ex. A (Lease) at ¶ 51.

[30] The Debtor contends that Silverman is in-house counsel and the Landlord does not dispute this statement. The Silverman Invoice does not contain any reference to the name Silverman, but rather: "JLJ Property Management LLC, 225 W. 37th St., Suite 900, NY, NY 10018." D.I. 225, Ex C. The RLG invoices are addressed to John E. Silverman, JLJ Bricken LLC, 225 West 37th Street, New York, NY 10018. Further, the RLG invoices reference communications with J. Silverman as "client." D.I. 225, Ex B.

[31] *In re China Fishery Grp. Ltd. (Cayman)*, No. 16-11895 (JLG), 2023 WL 1087064, at *51 (Bankr. S.D.N.Y. Jan. 27, 2023) (cleaned up; citations omitted) (rejecting the argument that in-house counsel fees are overhead).

"Courts in [the Second] Circuit have routinely allowed attorneys' fees for in-house counsel at a reasonable rate."[32]

Silverman did not enter an appearance for the Landlord, nor present before the Court. RLG is the only counsel who signed pleadings and presented argument on behalf of the Landlord. Additionally, Silverman was not identified as counsel for the Landlord prior to submission of its invoice.[33] Nevertheless, the Court analyzes the Silverman invoice to determine whether the Landlord is entitled to reimbursement for legal services provided by Silverman.

The Silverman invoice, in the amount of $30,000, is a three-sentence, lumped description of legal services with a date of service from "10/10/23 – 7/19/23." The invoice does not contain the name or credentials of the professional(s) who provided legal services, the applicable billing rate (hourly, flat fee, contingent fee, or otherwise), or the number of hours billed by any professional. There are no indicia that time was kept contemporaneously because there are no references to time spent per task or the date on which any task was performed.[34] Additionally, the Court cannot determine which legal services are related to the Landlord dispute versus general bankruptcy matters. Tasks such as researching provisions of the bankruptcy code, preparing for, and attending the 341 meeting of creditors, and researching and reviewing the

---

[32] *In re China Fishery Grp. Ltd. (Cayman)*, No. 16-11895 (JLG), 2023 WL 1087064 at *51 (citations omitted).

[33] Motion, Ex. C.

[34] *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987) (citations omitted) ("The burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested."). *See also Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 841 (2d Cir. 1993) (cleaned up) ("Where adequate contemporaneous time records have not been kept, the court should not award the full amount requested.").

Gutman litigation are not related to the Landlord dispute; but rather, are peculiar to bankruptcy law.[35]

Simply stated, there is no way to determine the nature of the services performed, the need for the services, the amount of time required for the services, or the reasonableness of the services. The Court finds that adequate contemporaneous time records were not kept. The invoice is entirely insufficient to support a fee.[36]

Despite the Landlord having requested reimbursement for Attorney's Fees and the Court having provided an ample opportunity for the Landlord to supplement the record and submit detailed invoices, the Landlord has not met its burden with respect to Silverman. Consequently, the Landlord's request for payment of the Silverman invoice is denied.

**B. Additional Rent**

As set forth in the Reconsideration Order, the Court awarded the Landlord "actual electric, sprinkler and water charges" (the "Additional Rent") for the period from the Petition Date (October 2, 2023) through February 29, 2024.

*i. Sprinkler Charges*

The Landlord requests $993.55 for sprinkler charges for October 2, 2023 through February 29, 2024, at the contract rate of $200 per month.[37] The Debtor does not oppose the sprinkler charge. Such amount is actual, reasonable, and consistent with the Court's Reconsideration Memorandum Order.

---

[35] *In re Child World, Inc.*, 161 B.R. at 354; *In re M. Fine Lumber Co., Inc.*, 383 B.R. at 569 (same).

[36] *See* n. 34.

[37] *See* Lease Modification Agreement ¶ 7(b) ("The monthly sprinkler charge as set forth in Article 30 shall be $200.").

11

### ii. Water Charges

The Landlord requests $993.55 for water charges for October 2, 2023 through February 29, 2024, at the contract rate of $200 per month.[38] The Debtor does not oppose the water charge. Such amount is actual, reasonable, and consistent with the Court's Reconsideration Memorandum Order.

### iii. Electric Charges

The Landlord requests payment for the following electricity charges:

| Service Period | Alleged Invoice Date[39] | Invoice Amount |
|---|---|---|
| 08/16/2023–09/15/2023 | 11/01/2023 | $4,737.43 |
| 09/15/2023–10/17/2023 (Petition Date 10/02/2023) | 12/01/2023 | $3,161.70 |
| 10/17/2023–11/15/2023 | 01/01/2024 | $2,173.62 |
| 11/15/2023–12/18/2023 | 02/01/2024 | $1,617.23 |
| 12/18/2023–01/17/2024 | [Post-rejection date] | $1,642.45 |
| 01/17/2024–02/15/2024 | [Post-rejection date] | $1,881.45 |
| 02/15/2024–03/18/2024 | [Post-rejection date] | $959.85[40] |
| Total | | $16,173.73 |

The Court has identified two separate legal theories as the basis for the Landlord's request for electricity charges – and the Landlord seeks recovery under both. First, applying the Third Circuit's decision in *In re Montgomery Ward Holding Corp.*,[41] the Landlord seeks

---

[38] *See* Lease Modification Agreement ¶ 7(a) ("The monthly water charge as set forth in Article 29 shall be $200.").

[39] The Landlord attached the electric bills as Ex. D to the Motion. The invoices contain a service period, but the Court is unable to identify the invoice date on any of the attached bills. Some of the bills contain a handwritten month notation but nothing indicates who made the handwritten notation nor whether that notation is accurate. The Landlord also attached its Occupant Ledger, Ex. E. Again, nothing thereon reflects the actual invoice date for the electric charges. The Occupant Ledger contains a date; however, nothing indicates whether the date is an invoice date.

[40] The Landlord stated that the invoice amount for this period is $2,191.66. However, the amount was reduced to $958.85 because the Debtor vacated the Premises on 02/29/2024. *See* D.I. 225 at n. 3.

[41] *Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 212 (3d Cir. 2001) (holding that the debtor's lease obligation to reimburse the landlord for tax payments arose post-petition and prior to rejection).

12

payment for electricity based on the post-petition "invoice" date that includes electricity used prior to the Petition Date (August 16, 2023 through December 18, 2023). Second, applying section 503(b), the Landlord seeks payment for the actual and necessary cost of electricity from the Petition Date through the rejection date (October 2, 2023 through February 29, 2024). At bottom, the Landlord seeks recovery for electricity charges for August 16, 2023 through February 29, 2024. In addition, the Landlord seeks a 30% upcharge for electricity as set forth in the Lease.

Under the first theory, the Landlord relies on *Montgomery Ward* to support its position that all obligations are enforceable and payable when due. In *Montgomery Ward*, the Third Circuit explained that the purpose of section 365(d)(3) "is to require the trustee to perform the lease in accordance with its terms."[42] Here, the Court never found that the Lease was "unexpired" (or "expired") as of the Petition Date. Rather, in the Administrative Expense Opinion, the Court explained that the calculation of the post-petition rent was the same whether the Lease was unexpired and analyzed under sections 365(d)(3) or expired and analyzed under 503(b).[43]

Now, the expiration of the Lease is a distinction with a difference as to the outcome of the electricity charges.[44] The Court illustrates the difference between the application of sections 365(d)(3) and 503(b) to the electricity charges:

---

[42] *Montgomery Ward*, 268 F.3d at 209. *See also In re Pac-W. Telecomm, Inc.*, 377 B.R. at 124.

[43] *In re JLM Couture, Inc.*, 661 B.R. at 873.

[44] *In re JLM Couture, Inc.*, 661 B.R. at 866 ("[T]he Court finds that whether the Lease was expired or unexpired is a distinction without a difference to the outcome . . . .").

If the Lease was "unexpired" as of the Petition Date, and the electricity charges examined under section 365(d)(3) (*Montgomery Ward* and its progeny), the electricity charges equate to $11,326.98:

| Invoice Date | Invoice Amount |
|---|---|
| 11/01/2023 | $4,373.43 |
| 12/01/2023 | $3,161.70 |
| 01/01/2024 | $2,173.62 |
| 02/01/2024 | $1,618.23 |
| **Total** | **$11,326.98** |

On the other hand, if the Lease is "expired" and the electricity charges examined under section 503(b), the Landlord would be entitled to the actual and necessary cost of electricity to preserve the estate for the period from the Petition Date through the date the Debtor vacated the Premises (October 2, 2023 through February 29, 2024); the Landlord would not be entitled to the 30% surcharge in the Lease. Thus, under section 503(b), the electricity charges equate to $6,865.29.

| Usage Period | Invoice Amount | Minus the 30% Surcharge |
|---|---|---|
| 10/02/2023–10/17/2023 | $1,532.94[45] | $1,073.06 |
| 10/17/2023–11/15/2023 | $2,173.62 | $1,521.53 |
| 11/15/2023–12/16/2023 | $1,618.23 | $1,132.76 |
| 12/18/2023–01/17/2024 | $1,642.45 | $1,149.72 |
| 01/17/2024–02/15/2024 | $1,881.45 | $1,317.02 |
| 02/15/2024–02/29/2024 | $958.85[46] | $671.20 |
| **Total** | | **$6,865.29** |

---

[45] The invoice amount for this period is $3,161.70. However, the Court reduced the amount to reflect the amount from the Petition Date to the end of the period (($3,161.70/33) x 16 = $1,532.95).

[46] The invoice amount for this period is $2,191.66. However, the Landlord reduced the request to $958.85 because the Debtor vacated the Premises on 02/29/2024 (($2,191.66/32) x 14 = $958.85).

14

The Court finds that the Lease expired in January 2022.[47] Adopting the *Super Nova* line of cases there was nothing to resurrect at the time the Landlord filed the Notice of Eviction.[48] Although the Debtor was in possession of the Premises after January 2022, there was no Lease in place between the Debtor and the Landlord.

This ruling is also consistent with the plain language of the Reconsideration Order that awarded the "actual electric . . . charges . . . for the period from the Petition Date through February 29, 2024."[49]

As a result, the Court will award the Landlord $6,865.29 for actual electric charges between the Petition Date and the date the Debtor vacated the Premises.

---

[47] *Casamento v. Juaregui*, 88 A.D.3d 345, 347, 929 N.Y.S.2d 286, 288 (2011) (tenant continued to reside in the premises after the expiration of the lease term, the tenancy implied continuation on the same terms as those in the original lease while tenant remained in possession); *490 Owners Corp. v. Israel*, 729 N.Y.S.2d 819, 820 (App. Term 2001) (lease provided for recovery of attorney's fees upon tenant's default).

[48] *Super Nova 330 LLC v. Gazes*, 693 F.3d 138, 142-43 (2d Cir. 2012) ("Under New York law, therefore, while the issuance of a warrant of eviction cancels any existing lease and seemingly terminates the landlord-tenant relationship, the tenant, in fact, retains a residual interest in the lease until the execution of the warrant. Prior to such execution, the state court may vacate the warrant of eviction for good cause and thereby reinstate the lease."); *In re Payam, Inc.*, 642 B.R. 365, 367 (Bankr. S.D.N.Y. 2022) (holding that "the issuance of the warrant of eviction no longer cancels the nonresidential lease and annuls landlord-tenant relationship. So, upon the filing of the bankruptcy petition, the lease becomes property of the estate, and the automatic stay prevents the landlord from regaining possession unless the stay is lifted.").

[49] *In re JLM Couture, Inc.*, No. 23-11659 (JKS), 2024 WL 3100775, at *3 (Bankr. D. Del. June 21, 2024).

## CONCLUSION

As set forth above, the Motion will be granted, in part, and denied, in part. The Landlord is entitled to administrative expense claims in the following amounts:

    (a) RLG fees in the amount of $59,683.50;

    (b) Sprinkler charges in the amount of $993.55;

    (c) Water charges in the amount of $993.55; and

    (d) Electricity charges in the amount of $6,865.29.

The remainder of the Motion will be denied.

An Order will be issued.[50]

Dated: December 23, 2024

                                                    J. Kate Stickles
                                                    United States Bankruptcy Judge

---

[50] In the Reconsideration Memorandum Order the Court referred to issuing an "Amended Order;" as the Court is ruling upon Additional Rent (not addressed in the Administrative Expense Opinion) as well as Attorney's Fees, the Court will issue a final Order. *See In re JLM Couture, Inc.*, No. 23-11659 (JKS), 2024 WL 3100775 at *3.

**Addendum**

## RLG FEE REDUCTION ANALYSIS

| Date | Hours | Reductions | RLG Voluntary Reduction |
|---|---|---|---|
| 12.14.2023 | 0.5 | $247.50 | |
| 1.22.2024 | 0.1 | $49.50 | |
| 1.22.2024 | 0.3 | $75.00 | |
| 1.24.2024 | 0.4 | $198.00 | |
| 1.25.2024 | 0.2 | $50.00 | |
| 1.25.2024 | 0.9 | $445.50 | |
| 1.29.2024 | 0.2 | $50.00 | |
| 1.30.2024 | 0.3 | $148.50 | |
| 1.31.2024 | 1.5 | $375.00 | |
| 2.2.2024 | 0.7 | $346.50 | |
| 2.6.2024 | 1.9 | $940.50 | |
| 2.6.2024 | 0.3 | $75.00 | |
| 2.12.2024 | 0.9 | $445.50 | |
| 2.14.2024 | 0.3 | $148.50 | |
| 3.4.2024 | 1.7 | $841.50 | $841.50 |
| 3.13.2024 | 0.5 | $125.00 | $125.00 |
| 3.27.2024 | 0.1 | $49.50 | |
| 3.29.2024 | 0.4 | $198.00 | $198.00 |
| 4.12.2024 | 0.4 | $198.00 | $198.00 |
| 4.12.2024 | 0.7 | $175.00 | $175.00 |
| 4.15.2024 | 0.4 | $198.00 | $198.00 |
| 4.16.2024 | 0.2 | $50.00 | $50.00 |
| 4.16.2024 | 0.6 | $150.00 | $150.00 |
| 4.16.2024 | 0.2 | $50.00 | |
| 4.17.2024 | 0.7 | $346.50 | $346.50 |
| 4.17.2024 | 0.4 | $100.00 | $100.00 |
| 4.22.2024 | 0.2 | $99.00 | $99.00 |
| 5.3.2024 | 0.4 | $198.00 | $198.00 |
| 5.6.2024 | 0.4 | $198.00 | $198.00 |
| 5.6.2024 | 0.8 | $340.00 | $340.00 |
| 5.9.2024 | 0.3 | $127.50 | |
| 5.10.2024 | 0.2 | $50.00 | |
| 5.15.2024 | 0.1 | $49.50 | |
| 5.16.2024 | 0.2 | $50.00 | |
| 5.17.2024 | 0.2 | $50.00 | |
| 5.24.2024 | 0.2 | $50.00 | |
| 6.5.2024 | 0.4 | $198.00 | |
| 6.6.2024 | 0.4 | $198.00 | |
| 6.18.2024 | 0.3 | $75.00 | |
| 7.11.2024 | 0.1 | $25.00 | |
| **TOTAL** | | **$7,784.50** | **$3,217.00** |