**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>JLM COUTURE, INC.,<br><br>Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 23-11659 (JKS)<br><br>Hearing Date: August 13, 2025 at 3:00 p.m.<br>Objection Deadline: August 6, 2025 at 4:00 p.m. |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) DISMISSING THE DEBTOR'S CHAPTER 11 CASE AND (II) GRANTING RELATED RELIEF**

JLM Couture, Inc., the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby files this motion (this "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), (i) dismissing the Debtor's chapter 11 case (the "Chapter 11 Case"); (ii) authorizing, but not directing, the Debtor to satisfy the Outstanding Admin Claims (defined below); (iii) approving procedures for the filing and approval of final fee applications (the "Final Fee Applications") for professionals retained in this Chapter 11 Case (the "Professionals"); and (iv) granting related relief. In support of this Motion, the Debtor respectfully state as follows:

**PRELIMINARY STATEMENT**

1. While the Debtor entered bankruptcy with the hopes of restructuring its operations and emerging as a going concern, multiple setbacks in the Debtor's business have forced it to wind down its operations. The Debtor is now running out of funds and can no longer afford to operate. The Debtor is no longer selling inventory in the ordinary course of business and has let go all employees save for a skeleton crew of administrative personnel.

2. After carefully considering the alternatives, the Debtor chose to sell any assets of value and dismiss the Chapter 11 Case. The Debtor has determined that this is the most efficient

and cost-effective method of concluding this Chapter 11 Case. In reaching this conclusion, the Debtor determined that a dismissal would not negatively impact creditors because there are no remaining assets of any value that could be sold and made available for distributions to unsecured creditors and there are insufficient funds to support the administrative costs of pursuing anything but a prompt exit from bankruptcy.

3. The Debtor has no assets to restructure through a chapter 11 plan and therefore is unable to propose a confirmable plan. The Debtor considered exiting the Chapter 11 Case through a chapter 7 process but does not believe there will be any funding available for a chapter 7 trustee to administer the Debtor's estate. Moreover, even if funding were available for a chapter 7 trustee, the Debtor does not believe that the appointment of a chapter 7 trustee would increase the likelihood of a recovery to creditors because there are no meritorious claims or causes of action for a chapter 7 trustee to pursue. Thus, the appointment of a chapter 7 trustee is unlikely to increase the proceeds available for distribution to creditors and would only result in additional trustee fees, commissions, and other related costs.

4. In seeking approval of the dismissal of the Chapter 11 Case, the Debtor is mindful of the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017) and the propriety of "structured" dismissals. Accordingly, the Debtor has already made or will make distributions that comply with sections 507(a) and 726 of the Bankruptcy Code, including by paying administrative expense claims.

5. The Debtor believes that dismissal of the Chapter 11 Case makes the most practical and economic sense given the circumstances of this Chapter 11 Case. Accordingly, the Debtor respectfully requests the dismissal of the Chapter 11 Case and related relief on the terms set forth in the Proposed Order.

**JURISDICTION AND VENUE**

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Standing Order"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consent to the Court's entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter a final order consistent with Article III of the United States Constitution.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory and legal predicates for the relief sought herein are 305(a), 349, 554 and 726 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 1017 and 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 1017-2.

**BACKGROUND**

**A. General Background**

8.      On October 2, 2023 (the "Petition Date"), the Debtor commenced a voluntary case under Chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 case (the "Chapter 11 Case") in the Court.  William Homony has been appointed as Subchapter V Trustee in this case.  No examiner or official committee has yet been appointed in this case.  The Debtor is operating its business as a debtor in possession pursuant to section 1184 of the Bankruptcy Code.

B.  **Specific Background**

9. The Debtor was founded in 1986. For decades, the Debtor was a leader in the bridal design and manufacturing industry, operating as a multi-label bridal house engaged in the design, manufacture, and distribution of bridal gowns and bridesmaids' dresses. The Debtor housed award-winning brands which include Allison Webb, Ti Adora by Allison Webb, Lazaro, Tara Keely by Lazaro, Lazaro Bridesmaids & Formal, Hayley Paige, Blush by Hayley Paige, La Petite Hayley Paige, and Hayley Paige Occasions.

10. The Debtor is generally regarded as the innovator of the multi-label bridal house and the designers that it assembled and nurtured have won ten (10) Distinctive Excellence in the Bridal Industry awards for design distinction (couture category), and four British Bridal Buyer awards. In 2005, Murphy was the first recipient of French-owned Wedding Dresses Magazine's lifetime achievement award.

11. Despite its success, the Debtor's operations were significantly affected by protracted and contentious litigation with one of its former designers, which substantially hurt the company's sales and caused the Debtor's principals to have spent significant time and effort focusing on issues outside of the operation of the Debtor's business. Compounding the difficulties experienced by the Debtor from these operational issues and by the costs associated with operating in New York City, the Debtor has been hit hard by the general downturn in the wedding gown retail business due to the COVID-19 pandemic. Since early 2020, orders of the Debtor's merchandise have dropped. Additionally, global supply chain issues have caused delays in filling orders.

12. Prior to the Petition Date, the Debtor attempted to solicit interest from investors who would invest in the Debtor. Despite the Debtor's best efforts over a period of multiple years,

it was not able to find a willing investor in part due to the aforementioned litigation. Although that litigation has now been resolved, the Debtor has been unable to return to solvency.

13. At the outset of this bankruptcy case, the Debtor operated nine (9) collections, six (6) of which are bridal lines, two (2) bridesmaid lines and one (1) flower girl line. The Debtor's fashion brands covered a broad spectrum of aspirational to luxury price points. In Spring 2012, the Debtor expanded its presence at the luxury end of the bridal business with the introduction of the Hayley Paige brand and the opening of its flagship store on Robertson Boulevard in West Hollywood, California. The Debtor launched the Allison Webb brand in Spring 2018.

14. Prior to winding down its operations, the Debtor primarily made revenue by selling bridal gowns through authorized retailers and selling excess inventory via Shopify directly to consumers.

    C.    **The Debtor's Prepetition Debt Structure**

15. Prior to the Petition Date, the Debtor obtained that certain small business loan with the United States Small Business Association (the "SBA") dated as of July 23, 2020 (the "SBA Note") with an approximate balance of $150,000 as of the Petition Date. The SBA Note is secured by liens on substantially all assets of the Debtor (collectively, the "Property"). To the extent the Debtor sells merchandise, the Debtor receives income from proceeds of each sale. As of the Petition Date, the Debtor had approximately $151,000 in cash on hand, located in various bank accounts which it used to pay operating expenses of its business and expenses related to the administration of this Chapter 11 Case.

16. The Debtor does not have any other secured loans, but does owe money to various vendors.

**D.     The Sale**

17.     While the Debtor entered bankruptcy with the hopes of restructuring its operations and emerging as a going concern, multiple setbacks in the Debtor's business have forced it to wind down its operations.  The Debtor is now running out of funds and can no longer afford to operate.  The Debtor is no longer selling inventory in the ordinary course of business and has let go all employees save for a skeleton crew of administrative personnel.

18.     On May 22, 2025, the above-captioned Debtor filed the *Debtor's Motion for Entry of an Order Authorizing the Sale of Certain of The Debtor's Assets to the Private Sale Purchaser* [Docket No. 267] (the "Sale Motion") with the United States Bankruptcy Court for the District of Delaware (the "Court").  In an effort to at least pay its administrative expenses before either converting or dismissing its chapter 11 case, the Debtor sought to sell certain of its assets, primarily consisting of intellectual property, causes of action, books and records, and remnant equipment, to a private sale purchaser (the "Purchaser").

19.     On June 16, 2025, *Order Granting Debtor's Motion for Entry of an Order Authorizing the Sale of Certain of the Debtor's Assets to the Private Sale Purchaser* [Docket No. 278] granting the relief requested in the Sale Motion.  Excluded from such sale were the Debtor's cash, remaining inventory, causes of action against non-insiders, tax refunds, stock in non-operating subsidiaries, miscellaneous equipment, and certain receivables.  Other than the Debtor's cash, the excluded assets are of nominal value.

20.     The sale contemplated by the Sale Motion closed on June 30, 2025 (the "Closing").

**D.     Post-Sale Accounting & Proposed Final Payments**

21.     Since the Closing, the Debtor has been focused on completing the post-Closing transition and reconciliation, finalizing the reconciliation of its books and records, making

necessary administrative payments, and completing an accounting of its remaining assets to determine what, if any, funds remain to effectuate a wind-down of the Chapter 11 Case.

22. As of the filing of this Motion, the Debtor has $87,286.75 in cash left in the Debtor's accounts (the "Debtor Funds").

23. The Debtor has determined that a small number of administrative expense claims remain and must be paid by the Debtor (the "Outstanding Admin Claims"). Accordingly, a schedule of these Outstanding Admin Claims that the Debtor proposes to satisfy, totaling $149,857, is attached to the Proposed Order as Schedule 1.[1] Based on the Debtor's review of its books and records, the Debtor believes these claims are entitled to administrative priority because they relate to the post-petition operation of the Debtor's business and represent actual and necessary costs and expenses of preserving the Debtor's estates and proceeding with an orderly dismissal of the Chapter 11 Case.

24. After the Outstanding Admin Claims have been satisfied, $0.00 will remain to address the fees and expenses of the Debtor's professionals (the "Professional Fees"). The Debtor estimates that outstanding Professional Fees will be approximately $124,000 as of the dismissal of the Chapter 11 Case. The Professionals have agreed to write off the Professional Fees that exceed the amounts available (the "Professional Fee Write-Off").

25. In light of the claims set forth above, no funds will be available to distribute to holders of general unsecured claims.

---

[1] Unless the Court orders otherwise, the Debtor intends to satisfy such Outstanding Admin Claims in a pro rata fashion.

**RELIEF REQUESTED**

26.  By this Motion, the Debtor seeks entry of an order (i) dismissing the Chapter 11 Case; (ii) authorizing the Debtor to satisfy the Outstanding Admin Claims; (iii) approving procedures for the filing and approval of Final Fee Applications; and (iv) granting related relief.

**BASIS FOR RELIEF**

**A.   The Chapter 11 Case Must Be Dismissed if the Elements for "Cause" Are Shown Under Section 1112(b)(4) of the Bankruptcy Code**

27.  Upon the request of a party in interest, section 1112(b)(1) of the Bankruptcy Code provides that, absent unusual circumstances, a court "shall" dismiss a chapter 11 bankruptcy case (or convert such case to a case under chapter 7) "for cause." 11 U.S.C. § 1112(b)(1). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed the statutory language with respect to conversion or dismissal from permissive to mandatory.[2] *See* H.R. Rep. No. 109-31(I), at 442, *reprinted in* 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances."); *see also Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.)*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) (stating that the amendments to section 1112 limit the court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause); *accord In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice,

---

[2] Prior to the enactment of BAPCPA, a bankruptcy court had the discretion, pursuant to its broad equitable powers, to dispose of a debtor's case, including by means of dismissal. However, a court was *not* mandated to dismiss a case upon the showing of cause. H.R. Rep. No. 95-595, at 405 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, at 117 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787.

and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4)."). For reasons more fully explained below, the Debtor submits that the Court should dismiss the Chapter 11 Case because cause exists. Further, dismissal (and not conversion to a case under chapter 7) is in the best interests of the Debtor, its creditors, and its estate.

**B.     Cause Exists to Dismiss the Chapter 11 Case Because the Debtor has Ceased Business Operations Since Closing and has Insufficient Assets to Confirm a Plan**

28.     Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of sixteen grounds for dismissal. 11 U.S.C. § 1112(b)(4)(A)-(P); *see In re Gateway Access Sols.*, 374 B.R. at 561 ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'") (quoting *First Jersey Nat'l Bank v. Brown (In re Brown)*, 951 F.2d 564, 572 (3d Cir. 1991)); *In re 3 Ram, Inc.*, 343 B.R. 113, 117 (Bankr. E. D. Pa. 2006) ("While the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, [and] not exhaustive has not.") (citation omitted).

29.     One statutory basis to dismiss a case is where a party in interest shows that (a) there has been a "loss" or "diminution" of value of the estate and (b) the debtor does not have a "reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 111(b)(4)(A); *see also In re Photo Promotion Assocs., Inc.*, 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985); *Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (dismissal is warranted where "the absence of financial data and certain sources of income for the [debtors] indicate[d] the absence of a reasonable likelihood of rehabilitation"). Further, the dismissal of a chapter 11 case has been found appropriate where "a feasible plan is not possible." *In re 3 Ram*, 343 B.R. at 117. "If [a]

9

chapter 11 [debtor] cannot achieve . . . reorganization within the statutory requirements of the Bankruptcy Code, then there is no point in expending estate assets on administrative expenses …" *Id.* at 118 (citing, *inter alia*, *In re Brown*, 951 F.2d at 572).

30.     Confirmation of a chapter 11 plan is not feasible in the Chapter 11 Case. The Debtor sought and received approval of the sale to the Purchaser and, pursuant to the Sale Order, the Debtor transferred a significant portion of its assets to the Purchaser upon the Closing of the sale. Without those assets, the Debtor is no longer able to operate/ Post-Closing, the Debtor's estate only exists to effectuate an orderly exit from the Chapter 11 Case. In the interim, the estate continues to accrue professional fees and other *de minimis* administrative expenses. The Debtor no longer has a business to reorganize or assets to distribute to general unsecured creditors, and thus there is no reason to, or ability to, pursue a plan of reorganization or liquidation. Accordingly, cause exists to dismiss the Chapter 11 Case pursuant to section 1112(b)(4) of the Bankruptcy Code and relevant case law.

        **C.**     **Dismissal is in the Best Interests of the Debtor's Creditors and Estate**

31.     Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court must then evaluate whether dismissal is in the best interests of the debtor's creditors and the estate. *See, e.g.*, *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert."). A variety of factors demonstrate that it is in the best interest of the Debtor's estate and its creditors to dismiss the Chapter 11 Case.

32.     *First*, a dismissal of a chapter 11 bankruptcy case satisfies the "best interests of creditors" test where a debtor has nothing to reorganize, and the debtor's assets are fixed and liquidated. *See Camden Ordinance Mfg. Co. of Ark., Inc. v. U.S. Trustee (In re Camden Ordinance*

*Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000) (reorganization to salvage business that ceased business was unfeasible); *Royal Tr. Bank, N.A. v. Brogdon Inv. Co. (In re Brogdon Inv. Co.)*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (court dismissed chapter 11 proceeding in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).

33. The Debtor has nothing left to reorganize because any assets needed to operate the Debtor's business were transferred to the Purchaser at Closing and, other than meager liquid assets, the Debtor's remaining assets are of nominal value. As set forth above, the Debtor does not have any assets available for distributions to unsecured creditors pursuant to a chapter 11 plan or, subsequent to the satisfaction of the outstanding administrative claims, upon conversion of the Chapter 11 Case to chapter 7.

34. *Second*, courts have found that dismissal is in the "best interests of creditors" where an interested party, other than the debtor, supports the dismissal of the debtor's chapter 11 case. *See Camden Ordinance*, 245 B.R. at 798; *In re Mazzocone*, 183 B.R. 402, 414 (Bankr. E.D. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996) (factors weighed more heavily in favor of dismissal of chapter 11 case rather than conversion to chapter 7 where debtor and U.S. Trustee both favored dismissal). Here, it is the Debtor's understanding that the Subchapter V Trustee is generally supportive of the dismissal of the Chapter 11 Case, and the Debtor expects to garner the U.S. Trustee's and the Subchapter V Trustee's full support once they have had a chance to address any questions either may have after this Motion has been filed.

35. *Third*, a court may find dismissal to be in the "best interests of the creditors" where a debtor demonstrates the ability to oversee its own liquidation. *See Camden Ordinance*, 245 B.R. at 798; *Mazzocone,* 183 B.R. at 412 ("Only when a Chapter 11 debtor has no intention or ability to . . . perform its own liquidation . . . should a debtor be permitted to remain in bankruptcy …").

As set forth above, the Debtor has already liquidated a significant portion of its assets and plans to satisfy all administrative expense claims, other than the consensual Professional Fee Write-Off, prior to the dismissal of the Chapter 11 Case. Any remaining assets would either be abandoned to the Debtor's pre-petition secured lender, the SBA, or sold at liquidation value. Should the Debtor be able to monetize any of its remaining assets after dismissal, the proceeds will be used to pay down the Debtor's pre-petition secured debt as the SBA continues to hold a lien on such assets and such lien will not be extinguished by dismissal of the Debtor's Chapter 11 Case.

36. *Fourth*, and finally, dismissal is appropriate where it will maximize the value of the Debtor's estate because the alternative—conversion to a chapter 7 liquidation and appointment of a trustee—is (a) unnecessary and would provide no benefit to creditors and (b) would impose significant additional administrative costs upon the Debtor's estate without any meaningful source of funds to satisfy such costs.

37. The outstanding chapter 11 administrative claims exceed the available funds and, accordingly, a chapter 7 trustee would not have any funds to satisfy claims arising after conversion to cases under chapter 7 of the Bankruptcy Code if the chapter 11 administrative claims are satisfied. Further, as noted earlier, a significant portion of the Debtor's assets have been sold to the Purchaser pursuant to the Sale Order. Taken together, unsecured creditors would not receive greater recoveries in a chapter 7 liquidation than they would in a dismissal because, in either case, their recovery would be zero. For these reasons, the Debtor submits that a dismissal pursuant to section 1112 of the Bankruptcy Code is in the best interests of the Debtor's creditors and estate.

**D. Dismissal of the Chapter 11 Case Is Warranted Under Section 305(a) of the Bankruptcy Code as Well.**

38. Cause also exists to dismiss the Chapter 11 Case pursuant to section 305(a) of the Bankruptcy Code, which provides that the "court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if— (1) the interests of creditors and the debtor would be better served by such dismissal or suspension …" 11 U.S.C. § 305(a). Dismissal under section 305(a) is an extraordinary remedy, and dismissal is only appropriate where the court finds that both creditors and the debtor would be better served by dismissal. *In re AMC Inv'rs, LLC*, 406 B.R. 478, 487-88 (Bankr. D. Del. 2009).

39. Whether dismissal is appropriate under this provision is determined on a case-by-case basis and rests within the sound discretion of the bankruptcy court. *In re Sky Grp. Int'l, Inc.*, 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989). Many factors are considered when determining the best interests of creditors and the debtor, including (a) the economy and efficiency of administration, (b) whether federal proceedings are necessary to reach a just and equitable solution, (c) whether there is an alternative means of achieving an equitable distribution of assets, and (d) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement that better serves all interests in the case. *AMC Inv'rs*, 406 B.R. at 488.

40. Here, cause exists for dismissal under section 305 of the Bankruptcy Code. The Debtor has sold any and all assets of any value. While the Debtor still does hold some assets, the value of those assets is negligible compared to the expenses related to marketing those assets for sale while administrative expenses continue to accrue. As such, any recovery, if any, would be highly speculative as to both timing and size of recovery such that the Debtor should not expend further estate resources pursuing such efforts. Likewise, the Debtor is unable to confirm a

liquidating plan and, under the circumstances, conversion to chapter 7 would impose additional administrative costs without corresponding benefit to the Debtor's creditors or its estate. As such, dismissal of the Chapter 11 Case as set forth in this Motion provides the most efficient, cost-effective method of effectuating the wind-down of the Debtor's estate while ensuring payment of all administrative expense claims other than the consensual Professional Fee Write-Off.

### E. The Proposed Distributions Comply with Applicable Law.

41. The Supreme Court has acknowledged that structured dismissals, which approve distributions to creditors, among other things, are "increasingly common." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017). As discussed above, the Debtor believes that all administrative expense claims will be paid when the payments described above are authorized by the Court. The Debtor submits that these proposed distributions comply with applicable law governing distributions of estate property in connection with a dismissal.

### G. The Court Should Approve Procedures for Final Fee Applications

42. In connection with winding down the Debtor's estates and the dismissal of this Chapter 11 Case, and notwithstanding any provisions to the contrary in any previous compensation orders, the Debtor seeks the Court's approval of procedures for the final payment of Professional Fees and expenses incurred by the Debtor's professionals on behalf of the Debtor's estate throughout this Chapter 11 Case until such time as it is dismissed.

43. Specifically, the Debtor requests that the Court schedule a final omnibus fee hearing (the "Final Fee Hearing") and further requests that the Court require all professionals retained in this Chapter 11 Case that have not already obtained final allowance of their fees and expenses to file final requests for allowance and payment of all fees and expenses incurred during this Chapter 11 Case (*i.e.*, the "Final Fee Applications"), no later than fourteen days after entry of the Proposed

Order with objections to the Final Fee Applications to be filed and served on counsel for the Debtor and such applicable Professional by 4:00 p.m. (prevailing Eastern Time) no later than fourteen days after such Final Fee Application is filed.

**H. All Prior Releases, Stipulations, Settlements, Rulings, Orders, and Judgments Should Remain Binding and Should Continue to Have Full Force and Effect.**

44. The dismissal of a chapter 11 case ordinarily vacates all orders previously entered by the bankruptcy court and restores all parties to the prepetition status quo. 11 U.S.C. § 349(b). A bankruptcy court may, however, "for cause, order[] otherwise…" *Id.* Courts in this jurisdiction have regularly maintained the enforceability of orders, including those approving releases and settlements, after a dismissal, notwithstanding section 349 of the Bankruptcy Code. *See, e.g., In re Craftworks Parent, LLC*, Case No. 20-10475 (BLS) (Bankr. D. Del. Oct. 23, 2020) [Docket No. 756] (giving continued effect to all prior orders, releases, stipulations, settlements, rulings, orders, and judgements entered throughout the pendency of the chapter 11 cases); *In re F+W Media, Inc.*, Case No. 19-10479 (KG) (Bankr. D. Del. Oct. 2, 2019) [Docket No. 488] (same); *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW) (Bankr. D. Del. Mar. 29, 2019) [Docket No. 1488] (same); *In re Sunco Liquidation, Inc.*, No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017) [Docket No. 865] (giving continued effect to orders entered throughout the pendency of the chapter 11 cases); *In re Old Towing Co.*, Case No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017) [Docket No. 381] (giving continued effect to 363 sale order and any releases, injunctions and successor liability provisions provided for in such sale); *In re TAH Winddown, Inc.*, Case No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017) [Docket No. 408] (giving orders, releases, and injunctions continuing effect).

45.     Through the Chapter 11 Case, the Debtor has resolved certain disputes and sold or otherwise transferred certain assets. Following entry of the Sale Order, the Debtor pursued an orderly wind-down of the Chapter 11 Case. Given all of these facts and circumstances, ample cause exists to allow all prior orders, releases, stipulations, settlements, rulings, and judgments entered by the Court in connection with the Chapter 11 Case to be given continued effect, notwithstanding the requested dismissal, unless otherwise provided by a subsequent stipulation with the same party or parties.

**NOTICE**

46.     The Debtor will provide notice of this Motion to: (i) the U.S. Trustee; (ii) the Subchapter V Trustee, (iii) the Debtor's twenty (20) largest unsecured creditors; and (iv) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submit that no other or further notice is necessary.

**CONCLUSION**

WHEREFORE, the Debtor respectfully request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: July 21, 2025
    Wilmington, Delaware

CROSS & SIMON, LLC

*/s/ Kevin S. Mann*
Kevin S. Mann (No. 4576)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
kmann@crosslaw.com

*Counsel to the Debtor*